UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNI-TOP ASIA INVESTMENT LIMITED,<br><br>                           Petitioner ,<br><br>            v.<br><br>SINOPEC INTERNATIONAL PETROLEUM EXPLORATION AND PRODUCTION CORPORATION,<br><br>                     Respondent. | Civ. Action No.   20-1770 |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM AN INTERNATIONAL ARBITRAL AWARD

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

INTRODUCTION ...................................................................................................... 1

JURISDICTION AND VENUE ................................................................................ 4

THE PARTIES ........................................................................................................... 6

     A.    Petitioner UNI-TOP Asia Investment Limited ....................................... 6

     B.    Respondent Sinopec International Petroleum Exploration and Production Corp.... 6

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 7

     A.    The Agency Agreement .......................................................................... 7

     B.    The First CIETAC Arbitration and Award ........................................... 10

     C.    The Second CIETAC Arbitration and Award....................................... 11

     D.    The Chinese Litigation and Beijing Court Decision............................. 14

LEGAL STANDARD................................................................................................ 15

ARGUMENT ............................................................................................................. 16

     A.    The Requirements in the New York Convention and Section 207 of the FAA Have Been Satisfied................................................................. 17

     B.    There Are No Grounds in Article V of the New York Convention to Refuse Recognition or Enforcement of the Award........................................... 18

CONCLUSION.......................................................................................................... 22

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Camp v. Kollen*, 567 F. Supp. 2d 170 (D.D.C. 2008)................................................ 26

*Century Int'l Arms, Ltd. v. Federal State Unitary Enterprise State Corp. 'Rosvoorouzheinie'*, 172 F. Supp. 2d 79 (D.D.C. 2001)...................................... 26

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........................ 27

*Chromalloy Aeroservices v. Arab Republic of Egypt*, 939 F. Supp. 907 (D.D.C. 1996) ...........................................................................8, 21, 22, 26, 27, 28

*Corporation Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 962 F. Supp. 2d 642 (S.D.N.Y 2013) ................................... 28

*Diag Human S.E. v. Czech Republic – Ministry of Health*, 907 F.3d 606 (D.C. Cir. 2018) .................................................................................................22, 27

*Fordham v. Fannie Mae*, 49 F. Supp. 3d 77 (D.D.C. 2014) ...........................................26

*Haynes v. DC Water Is Life*, 271 F. Supp. 3d 142 (D.D.C. 2017).................................26

*Int'l Trading and Industrial Investment Co. v. DynCorp Aerospace Technology*, 763 F. Supp. 2d 12 (D.D.C. 2011) ......................................................................22

*Interdigital Communications Corp. v. Federal Insurance Co.*, 308 Fed. App'x 593 (3d Cir. 2009) .......................................................................................................27

*Jifry v. FAA,* 370 F.3d 1174 (D.C. Cir. 2004)...............................................................10

*John Hancock Mutual Life Insurance Co. v. Olick*, 151 F.3d 132 (3d Cir. 1998).........................27

*Marlowe v. Argentine Naval Comm'n*, 604 F.Supp. 703 (D.D.C. 1985)  ......................10

*M.B.L. Intern. Contractors, Inc. v. Republic of Trinidad and Tobago*, 725 F.Supp. 52 (1989) (D.D.C. 1989) .....................................................................................10

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985) .....................26

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129 (2d Cir. 1996).................................................................................27

*Sanders v. Washington Metropolitan Area Transit Authority*, 819 F.2d 1151 (D.C. Cir. 1987) .........................................................................................................26

*Schattner v. Girard, Inc.*, 668 F.2d 1366 (D.C. Cir. 1981)...........................................26

*Seetransport Wiking Trader v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) .................................................................................................................10

*Spier v Calzaturificio Tecnica*, S.P.A. 71 F. Supp. 2d 279 (S.D.N.Y. 1999) ..............27

*TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007)...............23, 28

*TMR Energy Ltd. v. State Property Fund of Ukraine* 411 F.3d 296 (D.C. Cir. 2005) ...................................................................................................................10

*United States v. Verdugo-Urquidez,* 494 U.S. 259 (1990)............................................10

## STATUTES, RULES, AND REGULATIONS

9 U.S.C. §§ 1 *et seq*...........................................................................................................5

9 U.S.C. §§ 201 et seq........................................................................................................9

9 U.S.C. § 203 ...............................................................................................................8

9 U.S.C. § 204 .............................................................................................................11

9 U.S.C. § 207 ......................................................................................................21, 28

28 U.S.C. § 1330 ...........................................................................................................9

28 U.S.C § 1391(f) ......................................................................................................11

28 U.S.C. § 1603(a)-(b) .................................................................................................9

28 U.S.C. § 1605 ...........................................................................................................9

28 U.S.C. § 1606 ...........................................................................................................9

28 U.S.C. § 1607 ...........................................................................................................9

China's Contract Law Article 45 ...............................................................17, 18, 20, 21

Chinese Arbitration Law Article 9 ...................................................................19, 20, 21

Chinese Arbitration Law Article 70 .............................................................................21

Civil Procedure Law Article 274(1)(4) .......................................................................21

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* and the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), petitioner UNI-TOP Asia Investment Limited ("UNI-TOP") brings this petition to confirm a final arbitral award issued by an arbitral tribunal, seated in Beijing, China, under the auspices of the China International Economic and Trade Arbitration Commission ("CIETAC") on June 30, 2017 (the "Award").[1]

## INTRODUCTION

The Award arises from an arbitration (the "Arbitration") brought by UNI-TOP, a British Virgin Islands ("BVI") company, against Sinopec International Petroleum Exploration and Production Corporation ("SIPC," and together with UNI-TOP, the "Parties"), a company that is indirectly wholly-owned by, and is an organ, agency or instrumentality of, the People's Republic of China.  UNI-TOP brought the Arbitration against SIPC pursuant to an arbitration agreement in the Parties' Agency Agreement dated March 4, 2005.  In the Arbitration, UNI-TOP claimed that SIPC breached its obligations under the Agency Agreement by failing to pay UNI-TOP a commission for assisting SIPC in acquiring shares in PetroKazakhstan Incorporated ("PK"), a Canadian corporation in the oil and gas sector.

After nearly two years of proceedings in the Arbitration, the tribunal issued a unanimous final award in favor of UNI-TOP, finding, among other things, that SIPC had breached its obligation to pay UNI-TOP the commission to which it was entitled under the Agency Agreement.  The tribunal directed SIPC to pay UNI-TOP $21,380,102 in damages, plus

---

[1] A duly certified copy of the Award (with a certified translation) is attached as Exhibit A hereto.

simple interest, and to reimburse UNI-TOP for certain legal fees and administrative fees related to the arbitration.[2]  Given the parties' mutual commitment, in the Agency Agreement, that "[t]he result of the arbitration [would be] ***the final resolution of the dispute and there shall be no litigation***,"[3] SIPC was obligated to comply with the Award, treat it as a "final resolution" of the dispute, and refrain from litigation in any court related to the Award.

Rather than honor its commitments, however, SIPC has sought to frustrate and delay the enforcement of the Award.  Most egregiously, SIPC initiated litigation before the Beijing Fourth Intermediate People's Court (the "Beijing Court") seeking to have the Award set aside on various baseless grounds, in defiance of the parties' express agreement that the Award would be "the final resolution of any dispute," after which "there shall be no litigation."

In the Beijing Court, SIPC claimed that the tribunal's decision violated the principle of *res judicata* because it allegedly failed to take into account a prior arbitral award issued in a prior proceeding between the Parties (the "First CIETAC Award") that had denied UNI-TOP the commission it sought on the ground that a condition precedent to payment of the commission had not yet been satisfied.[4]  But SIPC had already made that same meritless claim in the Arbitration and the arbitral tribunal had considered and rejected it on the ground that new facts and evidence, that came into existence after the First CIETAC Award, justified a subsequent arbitration and a different result.

---

[2] *See* Award, pp. 49-50, attached as Exhibit A.
[3] *See* Agency Agreement, Article 10.3.1.  A duly certified copy of the Agency Agreement, which includes the arbitration agreement at issue, is attached as Exhibit B.
[4] *See* Beijing Decision, pp. 4-6, attached as Exhibit D.

The Beijing Court ignored the finality of the Arbitration, disregarded the fact that the tribunal in the Arbitration had considered and rejected SIPC's *res judicata* argument, reexamined the factual and legal issues that were the subject of the Arbitration, and set aside the Award on the basis of its own factual and legal analysis of the *res judicata* issue.  In doing so, the Beijing Court improperly intruded into the merits of the Arbitration and made substantive factual and legal finding at odds with those made by the arbitral tribunal.  For that reason, the Beijing Court's decision was plainly improper and in violation of China's obligations under the New York Convention, which does not permit national courts to revisit the merits and factual findings of an arbitral tribunal in this manner.

UNI-TOP brings this petition in this Court to confirm the Award issued by the arbitral tribunal in the Arbitration so that it may finally enforce the tribunal's judgment against SIPC's assets.  UNI-TOP respectfully submits that the conditions in the New York Convention and the FAA for recognition and enforcement of the Award have all been satisfied, and that there is no basis on which this Court should decline to recognize and enforce the Award.  In particular, UNI-TOP respectfully submits that the Beijing Court's decision to set aside the Award—by delving improperly into the merits of the Award and reversing the tribunal's decision to produce a new outcome in favor of an organ, agency, or instrumentality of the Chinese government—is entitled to no deference by this Court and should not cause the Court to decline recognition and enforcement of the Award under Article V(1)(e) of the Convention.

U.S. public policy supports UNI-TOP's petition and counsels strongly in favor of recognition and enforcement of the Award.  Conversely, a refusal to enforce the Award on the basis of the Beijing Court's decision—in the face of SIPC's blatant violation of its contractual promise to treat the Award as final and not to commence litigation to challenge the result of the

Arbitration—would violate U.S. public policy concerning the finality and enforceability of international arbitral awards.  Although a U.S. court will not enforce arbitral awards that have been annulled at the arbitral seat in all circumstances, this case presents almost exactly the factual predicate that this Court has already held will satisfy the applicable standard.  *See Chromalloy Aeroservices v. Arab Republic of Egypt*, 939 F. Supp. 907 (D.D.C. 1996).  UNI-Top respectfully submits that, consistent with *Chromalloy*, this Court should confirm the Award so that UNI-TOP may enforce it against SIPC and finally receive the compensation to which a duly constituted arbitral tribunal has determined it is entitled.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to 9 U.S.C. §§ 201 and 203, which provides that actions or proceedings falling under the New York Convention arise under the laws and treaties of the United States and are subject to the original jurisdiction of the district courts of the United States.  The United States is a party to the New York Convention (codified at 9 U.S.C. §§ 201 et seq.) and the recognition and enforcement of the Award in this matter is governed by that Convention.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1605(a)(6), which provide that federal district courts have original jurisdiction over actions against a foreign state (or its agency, instrumentality or organ) in an action to confirm an award made pursuant to an agreement to arbitrate which is governed by a treaty in force for the United States calling for the recognition and enforcement of arbitral awards.

This Court has personal jurisdiction over SIPC as an agency, instrumentality, or organ of the People's Republic of China under 28 U.S.C. § 1330(b), which confers personal jurisdiction over a foreign state (including its agencies or instrumentalities) "as to every claim for

4

relief" for which the foreign state does not enjoy sovereign immunity under 28 U.S.C. §§ 1605–

1607, and over which the Court has subject matter jurisdiction.  SIPC is an agency,

instrumentality, or organ of the People's Republic of China or political sub-division thereof.  28

U.S.C. § 1603(a)-(b).   SIPC is also an agency, instrumentality, or organ of the People's Republic

of China because a majority of its shares are owned by China Petroleum & Chemical

Corporation ("Sinopec"), which is a "foreign state or a political subdivision thereof" for purposes

of 28 U.S.C. § 1603(a)-(b).

SIPC is not required to show minimum contacts because it is not a "person" within

the meaning of the due process clause of the U.S. Constitution.  The People's Republic of China

exerts sufficient control over SIPC to make it an agent of the state and foreign states are not

"persons" under the U.S. Constitution.  *TMR Energy Ltd. v. State Property Fund of Ukraine* 411

F.3d 296, 301–302 (D.C. Cir. 2005).   In any event, SIPC has waived its right to challenge

personal jurisdiction because the People's Republic of China is a signatory to the New York

Convention.  28 U.S.C. §§ 1605(a)(1) and 1605(a)6.  *M.B.L. Intern. Contractors, Inc. v. Republic*

*of Trinidad and Tobago*, 725 F.Supp. 52  (D.D.C. 1989) (quoting, with approval, *Marlowe v.*

*Argentine Naval Comm'n*, 604 F.Supp. 703, 710 (D.D.C. 1985) ("'[b]ecause the FSIA governs

both personal and subject matter jurisdiction ... [Respondent's] implicit waiver of immunity

under § 1605(a)(1) constituted a waiver of the defense of lack of personal jurisdiction'

notwithstanding the absence of minimum contacts otherwise required.")).

SIPC is not immune from the jurisdiction of this Court for the purposes of this Petition

because the FSIA includes an express exception to immunity to foreign states (or their agencies

instrumentalities, or organs) in an action to confirm an arbitral award under the New York

Convention.   28 U.S.C. § 1605(a)(6).  In any event, SIPC has waived any immunity it might seek to assert in the underlying Agency Agreement.[5]  28 U.S.C. § 1605(a)(1).

Venue is proper in this district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f) (civil actions against a foreign state in the United States District Court for the District of Columbia).

## THE PARTIES

I.        Petitioner UNI-TOP Asia Investment Limited

Petitioner UNI-TOP is a company organized under the laws of the British Virgin Islands ("BVI"), with its principal place of business in OMC Chambers, Road Town, Tortola, British Virgin Islands.  UNI-TOP is a party to the Agency Agreement, dated March 4, 2005, that is the subject of the Award.  UNI-TOP is an affiliate of Universal Petroleum Development Company Limited ("Universal Petroleum"), a Hong Kong company that is engaged in the business of trading crude oil and refined oil products.  Universal Petroleum has had a trading relationship with PK and other entities in the oil and gas sector in Kazakhstan since 2002.

II.       Respondent Sinopec International Petroleum Exploration and Production Corp.

Respondent SIPC is an agency, instrumentality, or organ of the People's Republic of China.  It is organized as a corporation under the laws of the People's Republic of China, with its purported principal place of business in Beijing, People's Republic of China.  SIPC is a subsidiary of Sinopec, the world's largest oil refining, gas and petrochemical conglomerate by revenue.  Sinopec owns 90.42% of SIPC and wholly controls SIPC with and for the Chinese state.  Sinopec is a wholly owned and wholly controlled agency or instrumentality of the Chinese

_____

[5] Agency Agreement, Article 10.3.2, attached as Exhibit B.  Waiver exists here because the People's Republic of China is a party to the New York Convention and SIPC agreed to arbitration subject to the New York Convention.

state; it is managed and controlled by China's State-owned Assets Supervision and

Administration Commission ("SASAC"), a ministerial-level commission of the State Council of

the People's Republic of China.[6]  The State Council performs state functions similar to the

executive-branch "Cabinet" in this country.  SIPC's other shareholders are indirectly wholly-

owned and controlled by the State Council.  SIPC is a party to the Agency Agreement with UNI-

TOP that is the subject of the Award.

## FACTUAL AND PROCEDURAL BACKGROUND

I.        The Agency Agreement

This dispute arises out of an Agency Agreement entered into between UNI-TOP and

SIPC (the "Parties") on March 4, 2005.  Through its commercial dealings with PK, a Canadian

corporation with oil and gas assets in Kazakhstan, UNI-TOP became aware, in September 2004,

of the opportunity to acquire shares in PK and apprised SIPC of this opportunity.  Under the

Agency Agreement, SIPC appointed UNI-TOP and its affiliates to act as its exclusive agent to

assist SIPC in acquiring shares in PK.

In Clause 3.1 of the Agency Agreement, UNI-TOP agreed to use its best efforts and

devote sufficient time and attention to assist SIPC in the acquisition of shares in PK.  UNI-TOP

also agreed, among other things, to assist SIPC in acquiring information about PK, in negotiating

the terms of any acquisition of shares, and in advising SIPC concerning the financial, legal and

other aspects of the acquisition.[7]  In exchange, SIPC agreed to compensate UNI-TOP in the form

---

[6] Award, p. 37, attached as Exhibit A.
[7] Agency Agreement, Clauses 3.2 and 3.3, attached as Exhibit B.

of a commission upon "completion of the transaction within [SIPC's] target price."[8]  The amount

of the commission was to be calculated as a percentage of the transaction.[9]

      In Clause 10.3 of the Agency Agreement, SIPC and UNI-TOP agreed that any disputes

arising out of the Agency Agreement would be submitted to CIETAC arbitration in Beijing.

Importantly, in Clause 10.3.1 of the Agency Agreement, the parties agreed that "[t]he result of

the arbitration [would be] the final resolution of any dispute and there shall be no litigation."

The Parties thus expressly agreed not to take any steps, after the issuance of an award, to seek to

have that award annulled or modified through litigation in any a national court.

      After the Agency Agreement was executed, UNI-TOP carried out its obligations in

accordance with the terms of the agreement.  This included, among other things, introducing

SIPC to PK through UNI-TOP's connections, coordinating correspondence and negotiations

between SIPC and PK, and arranging in-person meetings between the parties in Kazakhstan and

the U.K. to further their negotiations.[10]

      During UNI-TOP's performance of the Agency Agreement, the China National

Petroleum Corporation ("CNPC") also indicated its intention to acquire shares in PK.  Both SIPC

and CNPC are indirectly wholly owned and controlled by the SASAC, a ministerial-level

commission under the State Council of the People's Republic of China.  Through the

intervention and coordination of the People's Republic of China National Development and

Reform Commission ("NDRC")—another ministerial-level commission under the State Council

that decides on and approves oil and gas investment projects by state-owned oil and gas

---

[8] Agency Agreement, Clause 5, attached as Exhibit B.
[9] Agency Agreement, Clause 5.1, attached as Exhibit B.
[10] Award, pp. 34-38, attached as Exhibit A.

companies in China—CNPC and Sinopec agreed that, based on the previous work that had been done by Sinopec, CNPC, rather than SIPC, would acquire shares in PK.  At a meeting coordinated by the NDRC, CNPC and Sinopec also agreed, as part of the coordinated arrangement, that CNPC would transfer certain PK shares to the Sinopec group or provide some other form of equivalent compensation.[11]

In August 2005, based on the work performed by UNI-TOP in accordance with the Agency Agreement, and with the agreement of the Sinopec group, CNPC successfully acquired, through a subsidiary, 100% of PK's shares for a total purchase price of US$4.18 billion.  On March 21, 2006, at a meeting coordinated by the NDRC, CNPC and Sinopec met and agreed that, absent any legal obstacles, CNPC would transfer its shares in PK to Sinopec; alternatively, CNPC would transfer interests in another overseas project to the Sinopec Group.[12]  On July 5, 2006, CNPC sold 33% of the shares in PK to a subsidiary of the Kazakhstani national oil company.  On August 23, 2006, CNPC sold its remaining 67% stake in PK to CNPC's indirect subsidiary, Pervinage Holding B.V., a wholly-owned subsidiary of China National Oil and Gas Exploration and Development Corporation ("CNODC"), which is in turn wholly-owned by CNPC.  Thereafter, on May 17, 2007, Sinopec and CNPC agreed to establish a working group for the transfer of the shares in PK from Pervinage Holding B.V. to Sinopec by the end of 2007.[13]

Recognizing that the successful acquisition of PK's shares was due to UNI-TOP's efforts and that UNI-TOP was therefore entitled to the commission due under the Agency

---

[11] First CIETAC Award, p. 27, attached as Exhibit C.
[12] First CIETAC Award, p. 27, attached as Exhibit C.
[13] Award, pp. 6-8, 44-45, attached as Exhibit A.

Agreement, SIPC agreed to several extensions of the Agency Agreement even after CNPC had acquired shares in PK: first on March 2, 2007,[14] then on March 14, 2008,[15] and a final time on June 13, 2008.[16]

II.        The First CIETAC Arbitration and Award

Despite UNI-TOP's introduction of SIPC to PK, and its fulfilment of all of its obligations under the Agency Agreement, SIPC repeatedly refused to pay UNI-TOP the commission due under the Agency Agreement.  UNI-TOP made multiple demands for payment of the commission since the completion of the acquisition.[17]

On August 30, 2012, after years of discussions between the parties, UNI-TOP commenced an arbitration against SIPC under the auspices of CIETAC in Beijing (the "First CIETAC Arbitration").  Among other things, UNI-TOP requested that the arbitral tribunal order SIPC to pay $21,540,000 in agency commissions, which was calculated based on the agreed formula in Clause 5.1 of the Agency Agreement.[18]  An arbitral tribunal consisting of three arbitrators was constituted on December 4, 2012, and an oral hearing was held in Beijing on February 6, 2013.[19]

In an award dated December 30, 2013 (the "First CIETAC Award"), the arbitral tribunal in the First CIETAC Arbitration held, among other things, that the conditions for the payment of the commission under the Agency Agreement had not yet been met and dismissed

---

[14] A copy of the Extension Agreement dated March 2, 2007, is attached as Exhibit E.
[15] A copy of the Second Extension Agreement dated March 14, 2008, is attached as Exhibit F.
[16] A copy of the Supplementary Agreement dated June 13, 2008, is attached as Exhibit G.
[17] First CIETAC Award, p. 28, attached as Exhibit C.
[18] On a deal price of US$4.18 billion, Clause 5.1 of the Agency Agreement provided for the calculation of agency commissions on the following basis:  1% of the first US$ 1 billion, plus 0.5% of the second US$ 1 billion, plus 0.3% of the remaining US$2.18 billion.
[19] First CIETAC Award, pp. 1-2, attached as Exhibit C.

UNI-TOP's claim for a commission on that basis.[20]  Specifically, the tribunal held that the condition for payment in Clause 5 of the Agency Agreement—that "the deal is completed within [SIPC's] target price"—had not yet been met because the tribunal was not prepared to treat the acquisition of PK shares by CNPC as an acquisition of PK shares by SIPC.[21]  The arbitral tribunal held that UNI-TOP was not entitled to claim its commission "for the time being," but would be entitled to do so "after [SIPC] actually obtains the rights and interests resulting from the acquisition of [PK] or compensation of other related rights."[22]

III.     The Second CIETAC Arbitration and Award

Following the issuance of the First CIETAC Award, UNI-TOP repeatedly asked SIPC and CNPC to confirm the transfer of shares in PK from CNPC to SIPC.  As explained above, both SIPC and CNPC are entities indirectly wholly owned by the SASAC, an agency, instrumentality, or political subdivision or organ of the People's Republic of China, and acted in close collaboration, at the coordination of NDRC (another an agency, instrumentality, political subdivision or organ of the People's Republic of China), in relation to the purchase of PK shares.

UNI-TOP received no response to its requests for confirmation.[23]  UNI-TOP also asked CNPC to disclose its negotiations with SIPC regarding the PK project, but again did not receive a response.  Thereafter, UNI-TOP's lawyers requested information from PetroChina Company Limited, a subsidiary of CNPC listed on the Hong Kong Stock Exchange, regarding interests in PK held by the Sinopec Group.  PetroChina Company Limited refused to provide

---

[20] First CIETAC Award, pp. 71-73, attached as Exhibit C.  UNI-TOP also brought other claims besides its claims for the agency commission, and those were also dismissed in the First CIETAC Award.
[21] First CIETAC Award, pp. 71-73, attached as Exhibit C.
[22] First CIETAC Award, p. 73, attached as Exhibit C.
[23] Award, p. 8, attached as Exhibit A.

information on the ground that all relevant disclosures required by statute supposedly had already been made in 2006, and that no other information was required to be disclosed.[24]

In the face of this stonewalling by SIPC, CNPC and related Chinese state-owned enterprises and companies, UNI-TOP commenced a second CIETAC arbitration against SIPC, seated in Beijing, on September 30, 2015.  UNI-TOP claimed that the condition for payment of the commission under the Agency Agreement should be deemed satisfied, pursuant to Article 45(2) of China's Contract Law, because of SIPC's refusal to perform its obligations in order to avoid satisfying a condition precedent to payment.[25]  In particular, UNI-TOP claimed that the condition precedent should be deemed satisfied as of August 14, 2014, *i.e.*, 7 months and 14 days after the First CIETAC Award.[26]  UNI-TOP contended that this was a reasonable time for completion of the transfer of shares given that, at their meeting on May 17, 2007, SIPC acknowledged that it was possible to finish the transfer of shares from CNPC to SIPC by the end of that year.[27]  On this basis, UNI-TOP requested that the arbitral tribunal direct SIPC to pay UNI-TOP, among other things, $21,540,000 in commissions due.[28]

On June 30, 2017, the arbitral tribunal issued the Award.  In the Award, the tribunal determined that UNI-TOP was entitled to its commission under the Agency Agreement because the condition precedent for payment should be deemed satisfied as a matter of Chinese law.[29]

---

[24] Award, p. 9, attached as Exhibit A.

[25] Award, pp. 10, 15-16, attached as Exhibit A.

[26] Award, p. 16, attached as Exhibit A.

[27] Award, p. 16, attached as Exhibit A.

[28] Award, p. 17, attached as Exhibit A.

[29] In particular, citing Article 45(2) of the Chinese Contract Law, the arbitral tribunal found that the condition precedent to payment under the Agency Agreement was deemed satisfied because UNI-TOP had performed its obligations as agent and the satisfaction of the condition was in SIPC's control and not UNI-TOP's control.  *See* Award, pp. 41-44, attached as Exhibit A.

The tribunal based this decision on its factual finding that, after the issuance of the First CIETAC Award, SIPC had deliberately frustrated the satisfaction of the condition for payment.[30]

In rendering its Award, the tribunal dismissed, among other things, SIPC's contention that the Second CIETAC Arbitration violated the principle of finality of arbitral awards under Article 9 of the Chinese Arbitration Law.[31]  The arbitral tribunal accepted UNI-TOP's submission that UNI-TOP's claim in the Arbitration was based on new facts and evidence that arose after the issuance of the First CIETAC Award and therefore did not violate the principle of *res judicata*.[32]  In its Award, the tribunal noted that, while the First CIETAC Award had rejected UNI-TOP's claim for a commission, it had also made clear that UNI-TOP would be entitled to make such a claim in the future when the condition precedent for payment had been satisfied.[33]

In the Award, the tribunal ordered SIPC to pay UNI-TOP $21,380,102, which was calculated based on UNI-TOP's claim for $21,540,000 in commissions less upfront fees of $159,898 already paid by SIPC.[34]  The tribunal also ordered SIPC to pay simple interest on the sum of $21,380,102 from August 14, 2014 until the date of actual payment based on the benchmark interest rate published by the People's Bank of China.  The tribunal further ordered SIPC to compensate UNI-TOP for its legal fees to the amount of RMB 300,000 and

---

[30] Award, pp. 42-44, attached as Exhibit A.
[31] In the Award, the arbitral tribunal also dismissed SIPC's baseless procedural objections challenging the authority of UNI-TOP's representatives to represent UNI-TOP in the arbitration.  *See* Award, pp. 20-21, attached as Exhibit A.
[32] Award, pp. 29-30, attached as Exhibit A.
[33] Award, p. 31-33, attached as Exhibit A.
[34] Award, p. 48-50, attached as Exhibit A.

HK$ 259,865 and to separately pay to UNI-TOP the amount of $254,498.70 for the arbitration

fees paid in advance by UNI-TOP.[35]

IV.    The Chinese Litigation and Beijing Court Decision

    On July 24, 2017, in blatant violation of SIPC's contractual commitment in the

Agency Agreement to treat the Award as final and not to engage in post-award litigation, SIPC

commenced a litigation in the Beijing Court to annul the Award.  In that litigation, SIPC

asserted, among other things, that the Award was a "repeat award" that addressed the same

dispute decided by the arbitral tribunal in the First CIETAC Arbitration.[36]  According to SIPC,

this violated the principle of finality of arbitral awards under Article 9 of the Chinese Arbitration

Law and the CIETAC Arbitration Rules.  SIPC argued, in particular, that the Award had wrongly

applied the requirements of Article 45 of the Chinese Contract Law and wrongly held that the

condition precedent for payment of agent remuneration under the Agency Agreement had been

satisfied.[37]  In effect, SIPC asked the Beijing Court to consider, on the merits, the legal and

factual issues decided by the arbitral tribunal in the Arbitration and to reverse the arbitrators'

decision and Award.  SIPC also argued that enforcement of the award would cause serious losses

to state-owned assets and serious damage to the state-owned assets management system.

    On April 17, 2020, almost three years after SIPC commenced litigation (unusually

long for an annulment proceeding in China), the Beijing Court issued a decision annulling the

Award (the "Beijing Decision").[38]  In the Beijing Decision, the Beijing Court disagreed with the

---

[35] Award, pp. 49-50, attached as Exhibit A.
[36] SIPC also relied on other grounds to seek annulment of the Award, which were rejected. *See* Beijing Decision, p. 37, attached as Exhibit D.
[37] Beijing Decision, pp. 6-13, attached as Exhibit D.
[38] A copy of the Beijing Decision is attached as Exhibit D.

tribunal's factual finding that the Award was based on new facts that arose after the First CIETAC Award, concluding instead that no new facts that had arisen justified holding in UNI-TOP's favor.[39]  Although the Beijing Court asserted that it was undertaking only a "procedural review of the parties, the subject matter at issue, and the arbitration claims,"[40] and thus supposedly was not reviewing the merits of the Second CIETAC Arbitration, the Beijing Court did review the merits of the Arbitration.  Based on its conclusion that the arbitrators had erred in finding that new facts had arisen that justified the payment of UNI-TOP's commission pursuant to Article 45 of the Chinese Contract Law, the Beijing Court set aside the Award.[41]

## LEGAL STANDARD

Articles III, IV and V of the New York Convention and Section 207 of the FAA, 9 U.S.C. § 207, address the confirmation of arbitral awards which, like the Award at issue here, are subject to the New York Convention.  Under Section 207 of the FAA, this Court "shall confirm the award" where any party applies to confirm an award "[w]ithin three years" after such award is made, unless it finds a "ground[] for refusal or deferral of recognition or enforcement" in the New York Convention.  This Court has held that it "*must* grant" a petition to enforce an arbitral award subject to the New York Convention unless a respondent can prove a ground for refusal set out in Article V of the New York Convention.  *Chromalloy*, 939 F. Supp. at 909.

The exclusive grounds for refusal of recognition or enforcement of a Convention award are set forth in Article V of the New York Convention.[42]  Article V sets forth "only

---

[39] Beijing Decision, pp. 38-40, attached as Exhibit D.
[40] Beijing Decision, p. 39, attached as Exhibit D.
[41] Beijing Decision, pp. 40-41, attached as Exhibit D (citing Articles 9 and 70 of the Chinese Arbitration Law and Article 274(1)(4) of the Civil Procedure Law).
[42] A copy of the Convention is attached as Exhibit [5].

several narrow circumstances when a court may deny confirmation of an arbitral award," and "these are tightly construed."  *See Diag Human S.E.*, 907 F.3d 606, 609 (D.C. Cir. 2018); *Int'l Trading and Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011).

As Article V(1) makes clear, the burden is on the "party against whom [the award] is invoked" to establish that recognition and enforcement of the award should be refused on the basis of one or more of these grounds.  *See Diag Human S.E.*, 907 F.3d at 609.  Here, there is no basis for concluding that any of the narrowly-drafted exceptions under Article V of the New York Convention is applicable.

Article V(1)(e) of the New York Convention provides that the Court "may" refuse to enforce an award that "has been set aside or suspended by a competent authority of the country in which … that award was made."  The language of Article V(1)(e) of the New York Convention, in combination with Article VII of the New York Convention—which provides that the "provisions of the present Convention shall not … deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law . . . of the country where such award is sought to be relied upon"—gives discretion to U.S. courts, in certain compelling circumstances, to enforce an arbitral award that has been annulled at the arbitral seat.  *See Chromalloy*, 939 F. Supp. at 914  Although the Court of Appeals in this Circuit has made clear that the discretion afforded to courts under Article V(1)(e) is circumscribed, it has recognized that "there is a narrow public policy gloss on Article V(1)(e)" through which courts may proceed to enforce an award annulled at the seat where to do otherwise would offend United States public policy.  *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 939 (D.C. Cir. 2007).

## ARGUMENT

16

UNI-TOP respectfully submits that this Court must confirm the Award because all of the requirements of the New York Convention and Federal Arbitration Act with respect to the Award have been met and to decline to enforce the Award as a result of the Beijing Court's manifestly improper decision to set it aside—and SIPC's clear violation of its contractual commitment to honor the Award as "the final resolution of [the Parties'] dispute"—would violate the clear U.S. public policy in favor of final and binding arbitration of commercial disputes.

I.   <u>The Requirements in the New York Convention and Section 207 of the FAA Have Been Satisfied</u>

Each of the formal requirements of Article IV of the New York Convention and Section 207 of the FAA has been met with respect to the Award.  In accordance with Article IV(1) of the New York Convention, petitioner UNI-TOP has supplied a duly certified copy of the Award and a duly certified copy of the arbitration agreement in the Agency Agreement.[43]  In accordance with Article IV(2) of the New York Convention, petitioner UNI-TOP has supplied a translation of the Award and the Agency Agreement certified by an official or sworn translator.[44]

In accordance with Section 207 of the FAA, this petition has been filed within three years after the Award was made, on June 30, 2017.   The Award is also an arbitral award falling under the New York Convention because it was made in the People's Republic of China and "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial," between parties that are not citizens of the United States.  Therefore, in accordance with Section 207 of the FAA, this Court "shall confirm" the Award unless SIPC can make a

---

[43] Award, attached as Exhibit A; Agency Agreement, attached as Exhibit B.
[44] Award, attached as Exhibit A; Agency Agreement, attached as Exhibit B.

showing that the Award comes within one of the very narrow set of exceptions set out in Article V of the New York Convention.

II.  There Are No Grounds in Article V of the New York Convention to Refuse Recognition or Enforcement of the Award

There are no grounds in Article V of the New York Convention that would justify refusing recognition or enforcement of the Award.  Although the Court has discretion under Article V(1)(e) to refuse recognition and enforcement of an award that has been annulled at the arbitral seat, UNI-TOP respectfully submits that this case presents one of the unusual circumstances in which declining to confirm an otherwise fully enforceable award in deference to an annulment decision at the seat of the arbitration is foreclosed by U.S. public policy.

Most significantly, the Beijing Decision was obtained by SIPC in flagrant breach of the Parties' express agreement in the Agency Agreement that any award resulting from an arbitration under that agreement would be "***the final resolution of [the Parties'] dispute***" that "***there shall be no litigation***" in connection with the Award.[45]  In addition, SIPC's initiation of litigation violated the CIETAC Arbitration Rules, which were incorporated into the Agency Agreement by virtue of Clause 10.3.2, and which also expressly state that arbitral awards issued by a CIETAC tribunal shall be "***final and binding*** upon both parties" and "***[n]either party may bring a lawsuit before a court or make a request to any other organization for revision of the award***."[46]  The Beijing Court compounded the harm arising from these breaches when it allowed SIPC to relitigate the merits of the Arbitration, made factual and legal findings contrary to those made by the arbitral tribunal, and issued a judgment contrary to the Award in the Arbitration.

---

[45] *See* Agency Agreement, Article 10.3.2, attached as Exhibit B.
[46] A copy of the CIETAC Arbitration Rules is attached as Exhibit H.

Under these circumstances, the Beijing Decision should not serve as a basis for this Court to refuse recognition and enforcement of the Award under Article V(1)(e) of the New York Convention.  Because the Beijing Decision arose directly from SIPC's violation of an express contractual provision and applicable arbitration rule prohibiting any post-award litigation challenging the result of the arbitration, refusing enforcement of the Award on the basis of that decision would violate the U.S. public policy favoring the final and binding arbitration of commercial disputes.  Moreover, the Beijing Decision is itself offensive to the principle of *res judicata*, as it reexamined the merits of the Arbitration and supplanted its own judgment on the merits for that of the arbitration tribunal.  In these circumstances, the Court should decline to recognize the Beijing Decision on grounds of U.S. public policy and proceed to enforce the Award.  *See Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzheinie'*, 172 F. Supp. 2d 79, 95-96 (D.D.C. 2001) ("The decisions of binding arbitration proceedings are final decisions on the merits for purposes of res judicata.") (citing *Schattner v. Girard, Inc.*, 668 F.2d 1366, 1368 (D.C. Cir. 1981))); *see also Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1157 (D.C. Cir. 1987); *Haynes v. DC Water Is Life*, 271 F. Supp. 3d 142, 161 (D.D.C. 2017); *Fordham v. Fannie Mae*, 49 F. Supp. 3d 77, 83 (D.D.C. 2014); *Camp v. Kollen*, 567 F. Supp. 2d 170, 173-74 (D.D.C. 2008).

In a prior case presenting substantially similar facts, this Court declined to recognize a national court decision annulling an arbitral award where the contract containing the arbitration agreement also contained an express provision prohibiting any post-award litigation challenging the result of the arbitration.  *Chromalloy*, 939 F. Supp. at 913.  In *Chromalloy*, this Court was asked to enforce an arbitral award that had been annulled by the Egyptian Court of Appeal on the

basis that deferring to the Egyptian court's annulment decision would violate U.S. public policy. *Id.*

The contract at issue in *Chromalloy* contained an arbitration clause providing, among other things, that the decision of the arbitral tribunal "shall be final and binding and cannot be made subject to any appeal or other recourse." *Chromalloy*, 939 F. Supp. at912.  This Court noted that "U.S. public policy in favor of final and binding arbitration of commercial disputes is unmistakable, and supported by treaty, by statute and by case law." *Id.* at 913 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  This Court then concluded that recognizing the Egyptian annulment decision, and refusing to enforce the award on that basis, would "violate this clear U.S. public policy" because the parties had expressly excluded any post-award review by the Egyptian courts by agreeing that the decision of the arbitrators "shall be final and binding and cannot be made subject to any appeal or other recourse."  *Id.* at 913; *see also Spier v Calzaturificio Tecnica*, S.P.A. 71 F. Supp. 2d 279, 287 (S.D.N.Y. 1999) (recognizing "Egypt's repudiation of its contractual promise not to appeal an arbitral award" as the "decisive circumstance" in *Chromalloy* that "justif[ied] the district court's enforcement of the Egyptian award").

The facts of this case warrant the same result reached by this Court in *Chromalloy*.  As in Chromalloy, the Parties here expressly agreed in Clause 10.3.1 of the Agency Agreement that any award resulting from an arbitration would be "***the final resolution of [the Parties'] dispute***" that "***there shall be no litigation***" in connection with the Award.[47]  As in *Chromalloy*, the Award

---

[47] *See* Agency Agreement, Article 10.3.1, attached as Exhibit B.

is fully valid and enforceable in the United States and there is no basis under the FAA or the New York Convention not to enforce it.[48]

The only question before the Court, therefore, is whether the fact that a court at the seat of the arbitration set aside the award—notwithstanding the clear contractual language and arbitral rule prohibiting such a post-award challenge—should cause this Court to refuse enforcement of an otherwise valid award.  This Court in *Chromalloy* answered that question clearly:  to refuse enforcement of the Award in these circumstances would constitute a clear violation of U.S. public policy in favor of final and binding arbitration of commercial disputes. *Chromalloy*, 939 F. Supp. at 913.  This Court's decision in *Chromalloy* remains good law,[49] is on all fours with this case, and compels the same outcome here.

_____

[48] For example, U.S. courts have long recognized that a *res judicata* defense to an arbitrable claim is a "component of the dispute on the merits and must be considered by the arbitrator, not the court."  *Interdigital Commc'ns Corp. v. Fed. Ins. Co.*, 308 Fed. Appx. 593, 596 (3d Cir. 2009) (citing *Chiron Corp. v. Ortho Diag. Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000)); *see also John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 140 (3d Cir. 1998); *Diag Human S.E. v. Czech Republic – Ministry of Health*, 907 F.3d 606, 610 (D.C. Cir. 2018) ("Diag Human attacks the underlying merits of the review panel's decision, particularly its discussion of res judicata, as 'plainly wrong under Czech law.'  But we do not sit in judgment of the reasoning of the arbitral decision.  Mistakes of law by the arbitral panel are not ours to correct.").  When the respondent's claim of preclusion is used as a legal defense to the party's claim, "[i]t is as much related to the merits as such affirmative defenses as a time limit in the arbitration agreement or laches."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 136 (2d Cir. 1996).  This is particularly true where the arbitration agreement is, as here, sufficiently broad to encompass disputes regarding the preclusive effect of prior arbitrations.  *See id.* (where the arbitration provision covered "[a]ll disputes which may arise under or in connection with this policy"); *see also* Agency Agreement, Clause 10.3.2, attached as Exhibit B.

[49] See *Termorio S.A. E.S.P. v. Electranta* S.P., 487 F.3d 928, 937 (D.C. Cir. 2007) (declining to refuse recognition of Colombian court judgment annulling arbitral award on grounds of public policy, but noting that its facts were "plainly distinguishable" from *Chromalloy* because there was no "breach of the express contractual agreement not to take any appeal from the arbitration award"); *Corporation Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Prod.*, 962 F. Supp. 2d 642, 656-657 (S.D.N.Y. 2013) (noting that *Chromalloy* remains good law and that the *TermoRio* court "recognized that a district court should hesitate to defer to a judgment of nullification that conflicts with fundamental notions of fairness").

In these circumstances, UNI-TOP respectfully requests that this Court follow the reasoning in *Chromalloy* and exercise its discretion to recognize and enforce the Award in accordance with the FAA and the New York Convention.

## CONCLUSION

For all of the foregoing reasons, UNI-TOP respectfully requests that this Court grant:

a. an Order pursuant to 9 U.S.C. § 207 and Article III of the New York Convention confirming, recognizing, and enforcing the Award and entering Judgment thereon;

b. a Judgment in favor of UNI-TOP and against SIPC in the amount awarded to UNI-TOP in the Award, $21,380,102, plus simple  interest at the benchmark interest rate published by the People's Bank of China, running from August 14, 2014;

c. a Judgment in favor of UNI-TOP and against SIPC for the costs ordered in the Award, amounting to RMB 300,000, HK$ 259,865 and US$ 254,498.70.

d. an Award of UNI-TOP's costs of this civil proceeding, including reasonable attorneys' fees incurred in bringing this proceeding;

e. an Order retaining jurisdiction of this Court over the matter for any proceedings as may be necessary to enforce the Award and any further awards or judgments, which may be obtained by UNI-TOP against SIPC; and

f. any other relief that this Court deems necessary and proper.

Dated: June 29, 2020

Respectfully Submitted,

**WILMER CUTLER PICKERING HALE and DORR LLP**

s/ David W. Bowker

David W. Bowker
David.Bowker@wilmerhale.com
1875 Pennsylvania Avenue, NW
Washington, DC 20006
USA
Tel: +1 202 663 6000
Fax: +1 202 663 6363

John V.H. Pierce (*pro hac vice pending*)
John.Pierce@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
United States of America
Tel: +1 212 230 8829
Fax: +1 212 230 8888

Gary Born (*pro hac vice pending*)
Gary.Born@wilmerhale.com
Jonathan Lim (*pro hac vice pending*)
Jonathan.Lim@wilmerhale.com
49 Park Lane
London W1K 1PS
United Kingdom
Tel: +44 (0)20 7872 1000
Fax: +44 (0)20 7839 3537