# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNI-TOP ASIA INVESTMENT LIMITED,                 )
OMC Chambers, RoadTown,                          )
Tortola, British Virgin Islands                  )
                                                 )
    Petitioner,                              )
                                                 )    No. _____
    v.                                       )
                                                 )
SINOPEC INTERNATIONAL PETROLEUM                  )
EXPLORATION AND PRODUCTION CORPORATION           )
1st Floor, No. 6 Huixin East Street, Chaoyang District )
Beijing, People's Republic of China              )
                                                 )
    Respondent.                              )

I, (Ms. Yuan XING), hereby affirm as follows:

1.  I am an attorney at Bejing Huanzhong & Partners (北京市环中律师事务所), counsel to petitioner UNI-TOP Asia Investment Limited ("UNI-TOP") in the China International Economic and Trade Arbitration Commission ("CIETAC") arbitration between UNI-TOP and respondent Sinopec International Petroleum Exploration and Production Corporation ("SIPC").

2.  Attached hereto as Exhibit A is a true and correct copy of an arbitration award issued by a CIETAC arbitration panel on June 30, 2017.

3.  Attached hereto as Exhibit B is a true and correct copy of the Agency Agreement signed

Place: _Beijing , China_

Date: _2020. 6. 28_

_[signature]_

Signature

# SPIRIT

北京思必锐翻译有限责任公司

Beijing Spirit Translation Co.,Ltd.

Date: June 28, 2020

To Whom It May Concern:

## COMPETENCY CERTIFICATE FOR LU MIMI

I hereby certify that, it is my belief that, Lu Mimi, translator of Beijing Spirit Translation Co., Ltd. of Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, Chaoyang District, Beijing, China, is competent to translate into English the following documents (in Chinese) delivered to you.

1. Arbitral Award [2017] CIETAC BJ AWARD NO. 0836 ([2017] 中国贸仲京裁字第 0836 号裁决书)

2. Agency Agreement (代理协议) effective March 4. 2005



Your faithfully

He Xue

He Xue

Managed of Translation Department

Beijing Spirit Translation Co., Ltd.

# SPIRIT

北京思必锐翻译有限责任公司
Beijing Spirit Translation Co.,Ltd.

Date: June 28, 2020

To Whom It May Concern:

## COMPETENCY CERTIFICATE FOR LU MIMI

I, Lu Mimi, translator of Beijing Spirit Translation Co., Ltd. of Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, Chaoyang District, Beijing, China, hereby certify that the English translations of the documents listed below (in Chinese) are, to the best of my knowledge and belief, correct and accurate translations.

1. Arbitral Award [2017] CIETAC BJ AWARD NO. 0836 ([2017] 中国贸仲京裁字第 0836 号裁决书)

2. Agency Agreement (代理协议) effective March 4. 2005

Your faithfully



Lu Mimi

# SPIRIT

北京思必锐翻译有限责任公司

Beijing Spirit Translation Co.,Ltd.

### QUALIFICATION CERTIFICATE FOR LU MIMI



中华人民共和国

翻译专业

资格（水平）证书

Qualification Certificate
of Translation Proficiency
The People's Republic of China

| | |
|---|---|
| 姓名：<br>Full Name **鲁弥弥** | 语　种：**英语**<br>Language |
| 性别：　**女**<br>Sex | 资格级别：　**二级笔译**<br>Qualification Level　Translator Level II |
| 出生年月：　**1991年01月**<br>Date of Birth | 专业类别：<br>Professional Type |
| | 批准日期：**2015年05月24日**<br>Approval Date |



Authorized by
China Foreign Languages
Publishing & Distribution Administration

签发单位盖章：
Issued by

签发日期：**2016** 年 **4** 月 **21** 日
Issued on

编号：**14002970**
No.



# SPIRIT

北京思必锐翻译有限责任公司

Beijing Spirit Translation Co.,Ltd.

*Below is the translation of the above Qualification Certificate for Lu Mimi:*

Full name: Lu Mimi

Sex: Female

Date of Birth: January 1991

Language: English

Qualification Level:Translator Level II

Professional Type:



(Official Seal of China Foreign Language Publishing & Distribution Administration)

Implementation and Management Department for China Accreditation Test for Translators and interpreters

No.:14002970



Issued by:

Beijing Municipal Human Resources and Social Security Bureau Special Seal for Professional Title (I)

Issued on: April 21,2016

裁决书

**Arbitral Award**



中 国 国 际 经 济 贸 易 仲 裁 委 员 会
CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

# CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

## ARBITRAL AWARD

Claimant:      UNI-TOP Asia Investment Limited

Address:      OMC Chambers, RoadTown, Tortola, British Virgin Islands

Represented by:      WAMG Xuehua, LIU Jing, XING Yuan, ZHAO Xue, LI Haitao, and CHEN Xiaofeng of Beijing Huanzhong & Partners

Respondent:      Sinopec International Petroleum Exploration and Production Corporation

Address:      1st Floor, 6 Huixin East Street, Chanyang District, Beijing, China

Represented by:      DAI Yue, LI Yan of King & Wood Mallesons, Beijing Office
LI Amin, LIU Lingyun of King &Wood Mallesons, Shanghai Office

Beijing

June 30, 2017

*[Page 1 of Chinese Original]*

# ARBITRAL AWARD

## [2017] CIETAC BJ AWARD NO. 0836

China International Economic and Trade Arbitration Commission ("**CIETAC**") accepted this case in relation to performance of the Agency Agreement dated March 4, 2005 by and between the Claimant, UNI-TOP Asia Investment Limited ("**Claimant**") and the Respondent Sinopec International Petroleum Exploration and Production Corp. ("**Respondent**", collectively the "**Parties**"), in accordance with the arbitration clause stipulated therein as well as the written Request for Arbitration submitted by the Claimant to the CIETAC on September 30, 2015. The case number is E20160333.

The Arbitration Rules of the CIETAC effective January 1, 2015 ("**Arbitration Rules**") was applied to this arbitration case.

On April 18, 2016, according to the addresses provided by the Claimant in the Request for Arbitration, the CIETAC Arbitration Court couriered, via express delivery, the Notice of Arbitration, the Arbitration Rules and the Panel of Arbitrators to the Parties, and the Request for Arbitration and its attachments to the Respondent. The above-mentioned documents sent to the Respondent were duly delivered on April 20, 2016.

The Claimant nominated Ms. GAO Yu as arbitrator. As the Respondent failed to nominate or entrust the Chairman of the CIETAC to appoint an arbitrator within the prescribed time limit, the

*[Page 2 of Chinese Original]*

Chairman of the CIETAC appointed Ms. TIAN Hui as arbitrator according to the Arbitration Rules. As the Parties failed to jointly nominate a presiding arbitrator or jointly entrust the Chairman of the CIETAC to appoint a presiding arbitrator within the prescribed time limit, the Chairman of the CIETAC appointed Mr. LIU Kaixiang as the presiding arbitrator in accordance with the Arbitration Rules. On June 1, 2016, the three arbitrators, after signing the Declarations of Independence, formed the arbitral tribunal ("**Tribunal**") to hear this case.

On June 1, 2016, the CIETAC Arbitration Court couriered, via express delivery, the Notice of Formation of Tribunal and the Declarations signed by the arbitrators attached thereto to both Parties. The above-mentioned documents were duly delivered to the Respondent on June 4, 2016.

On June 20, 2016, the Claimant submitted the Request for Disclosure of Evidence Disclosure of Evidence Request [*sic*], List of Supplementary Evidence and its attachments. On June 22, 2016, the CIETAC Arbitration Court couriered, via express delivery, the above-mentioned documents to the Respondent, which were duly delivered on June 24, 2016.

After consultation with the CIETAC Arbitration Court, the Tribunal decided to hold an oral hearing over the case on August 2, 2016 in Beijing. On June 23, 2016, the CIETAC Arbitration Court couriered, via express delivery, the Notice of Hearing to both Parties. The above-mentioned documents were duly delivered to the Respondent on June 25, 2016.

On August 2, 2016, the Tribunal held the oral hearing in Beijing as scheduled. Authorized representatives of the Claimant attended the hearing. The Respondent failed to attend the hearing without explanation after effective services of the notices. According to Article 39.2 of Arbitration Rules

*[Page 3 of Chinese Original]*

the Tribunal proceeded with the hearing by default. The Claimant submitted the Amended Request for Arbitration, the List of Attachments and its attachments, and the List of Supplementary Evidence and its attachments at the oral hearing. In addition, the Claimant submitted the business registration information of the Respondent which indicated that the legal representative was different from the information submitted by the Claimant previously. The Claimant stated its claims to the Tribunal, the factual background and legal basis, presented the originals of the evidence, and answered enquiries raised by the Tribunal.

On August 3, 2016, the CIETAC Arbitration Court forwarded, via express delivery, to the Respondent the above-mentioned documents submitted by the Claimant at the oral hearing, together with a written report of the oral hearing, and informed the Respondent that any opinion or evidence pertaining to the case or any request for a second hearing shall be submitted in writing by the Respondent. Meanwhile, the   Claimant was required to pay the advance on costs for the amended claims.

Afterwards, the Claimant paid the advance on costs.

On August 10, 2016, the Respondent submitted the Power of Attorney, the Certificate of Legal Representative, and a copy of the Business License. On August 18, 2016, the Respondent submitted its Requests for Re-delivery of Documents, Re-appointment of Arbitrators, and Suspension of the Arbitration Proceedings. On August 23, 2016, the CIETAC Arbitration Court forwarded the above-mentioned documents to the Parties respectively.

On September 1, 2016, the Claimant submitted its Reply to the Respondent's Procedural Objections and Related Documents. On September 8, 2016, the CIETAC Arbitration Court forwarded, via express delivery, the above-mentioned documents to the Respondent.

*[Page 4 of Chinese Original]*

On September 19, 2016, the Respondent submitted its Reply to the Claimant's Reply to the Respondent's Procedural Objections and Related Documents. On September 22, 2016, the CIETAC Arbitration Court forwarded, via express delivery, the above-mentioned document to the Claimant.

On September 28, 2016, the Claimant submitted its Comments on "the Respondent's Reply to the Claimant's Reply to the Respondent's Objections and Related Documents". On October 12, 2016, the CIETAC Arbitration Court forwarded, via express delivery, to the Respondent the above-mentioned documents. In addition, the CIETAC Arbitration Court notified both Parties that: 1. Previously, CIETAC had sent the Respondent all the letters and documents relating to this case including the Notice of Arbitration, the Claimant's Request for Arbitration, the Notice of Formation of Tribunal, and the Notice of Hearing.  According to the records of the express service company, the above-mentioned documents had been signed for by the Respondent and stamped with its mail receipt-and-dispatch chop. Therefore, the Respondent's Requests for Re-delivery of Documents, Re-selection of Arbitrators, and Suspension of the Arbitration Proceedings were dismissed, and this arbitration shall continue. 2. The Claimant had additionally paid USD 818,329.00 as the advance on arbitration fees for the amended claims, therefore, the Tribunal decided to exercise its jurisdiction over such amended claims, together with those unamended claims of the Claimant. 3. A copy of the List of Supplementary Evidence of the Claimant (III) and the supplementary evidence submitted by the Claimant were forwarded to the Respondent with the letter. The Respondent was required to submit 5 copies of its Statement of Defence, and the relevant evidence, in writing to the Claimant's amended claims within 30 days, and was informed that   failure to submit the written Statement of Defence would not affect the continuation of the arbitral proceedings in this case.

*[Page 5 of Chinese Original]*

On October 17, 2016, the representatives of the Respondent received from CIETAC the copies of the Request for Disclosure of Evidence, the List of Supplementary Evidence and its attachments, Request for Arbitration and its attachments.

On November 14, 2016, the Respondent submitted its Reply to (2016) CIETAC BJ No. 038481 Notice, the Opinions on the Claimant's Evidence, and the Statement of Defence and its attachments. On November 15, 2016, the CIETAC Arbitration Court forwarded, via express delivery, the above-mentioned documents to the Claimant.

On December 2, 2016, the Claimant submitted its Comments on the Respondent's Reply dated November 11, 2016 to (2016) CIETAC BJ No. 038481 Notice.

After consultation with the CIETAC Arbitration Court, the Tribunal decided to commence the second oral hearing on December 23, 2016 in Beijing. On December 6, 2016, the CIETAC Arbitration Court forwarded, via express delivery, the Notice of Oral Hearing to both Parties, and forwarded to the Respondent the above-mentioned documents submitted by the Claimant.

On December 23, 2016, the second oral hearing was held by the Tribunal in Beijing. Both the Claimant and the Respondent attended the hearing. Before the hearing, after being inquired by the Tribunal, both Parties confirmed they had no objection to the Tribunal constituted by the three arbitrators in this case. During the hearing, the Claimant stated its claims and the facts and grounds on which they are based, the Respondent stated its defence, both Parties made submissions on their evidence, presented the originals of the relevant evidence, and answered the questions raised by the Tribunal.

*[Page 6 of Chinese Original]*

After the oral hearing, both Parties submitted their supplementary materials, the CIETAC Arbitration Court forwarded the documents respectively.

Due to the status of the proceedings and upon the application for the Tribunal, the President of the CIETAC Arbitration Court agreed to postpone the time limit to issue an award to July 1, 2017.

The CIETAC Arbitration Court properly served the Claimant and the Respondent with all written notices and documents in accordance with Article 8 of the Arbitration Rules.

This case is now closed. The Tribunal renders this Award based on the written evidence and documents, and the facts ascertained in the hearings, in accordance with relevant provisions of the Arbitration Rules. The factual background, the Tribunal's opinions and the award are set out as follows:

## I.   Factual Background

### A.   The Claimant's Case and Claims

The Claimant alleges that on March 4, 2015, the Claimant entered into the Agency Agreement with the Respondent under which the Claimant would be exclusively entrusted by the Respondent to assist the Respondent in, directly or indirectly through affiliated companies of the Respondent, obtaining the shares of PetroKazakhstan Inc. ("**PK Inc.**"), in accordance with relevant laws or regulations, and assist the Respondent in obtaining relevant government approvals. After the completion of the transaction, the Respondent is obligated to pay an agency commission to the Claimant provided under Article 5.2 of the Agency Agreement and the right of sales agency provided under Article 7.2 of the same.

[*Page 7 of Chinese Original*]

During the performance of the Agency Agreement, China National Petroleum Corporation ("**CNPC**") indicated its intention to purchase the shares of PK Inc. as well. Subsequently, through the coordination of the National Development and Reform Commission ("**NDRC**"), CNPC and China Petrochemical Corporation ("**SINOPEC**", the parent company of the Respondent) agreed that based on the preparatory work that had been done by SINOPEC, CNPC would acquire PK Inc. After CNPC completed the acquisition, CNPC would transfer part of the shares of PK Inc to SINOPEC. In August 2005, CNPC completed the negotiation on the acquisition of PK Inc., and 100% shares of PK Inc. were priced at US$ 4.18 billion. On October 26, 2005, CNPC obtained approval from a Canadian district court for purchasing 100% shares of PK Inc. through its subsidiary, and the transaction was completed.

On July 5, 2006, as a result of Kazakhstan government's exercise of the preemptive right, CNPC sold 33% of the shares of PK Inc. to KMGS (full name: Kazmunaigas PKI Finance B.V.), a wholly-owned subsidiary of KMG Inc. (full name: JSC National Company Kazmunaigaz).

On August 23, 2006, CNPC sold 67% shares of PK Inc. to Pervinage Holding B.V., a wholly owned subsidiary of China National Oil and Gas Exploration and Development Corporation ("**CNODC**"). This transaction was completed. The website of PK Inc. shows that CNODC is the shareholder that holds 67% shares of PK Inc.

After CNPC had purchased all the shares of PK Inc. on October 26, 2005, it engaged in negotiations on the transfer of the remaining shares with SINOPEC and the Respondent.

*[Page 8 of Chinese Original]*

The negotiations included (1) a March 21, 2006 meeting between CNPC and SINOPEC, under the coordination of the NDRC, which was documented on a meeting minutes issued on May 16, 2006, and (2) a Meeting Minutes of Special Session signed by CNPC and SINOPEC on May 17, 2007, which further clarified the arrangement about the transfer of the shares of PK Inc..

After CNPC completed the acquisition of the shares of PK Inc. on October 26, 2005, the Respondent and the Claimant signed the Extension Agreement on March 2, 2007 and the Second Extension Agreement on March 14, 2008. Since 2005 until the Claimant initiated the first arbitration, the Claimant repeatedly requested the Respondent to perform the Agency Agreement, pay the agency commission and grant the right of sales agency or compensate the loss. However, the Respondent refused to perform the obligations under the Agency Agreement on the grounds that CNPC did not transfer the shares of PK Inc. or compensate other rights and interest to SINOPEC. In these circumstances, the Claimant initiated a CIETAC arbitration on August 31, 2012 ("**Previous Arbitration**").

After the issuance of the previous award on December 30, 2013, the Claimant repeatedly requested the Respondent to disclose information in relation to its claims for interest or compensation against CNPC, so as to confirm whether the condition for the commission and grant of interest or compensation under Article 7.2 of the Agency Agreement was satisfied. However, the Respondent and SINOPEC failed to respond to the Claimant. At the same time, the Claimant appointed a lawyer to send a letter to CNPC, requesting CNPC to disclose negotiations with the Respondent on the PK project, but CNPC refused to respond to the Claimant as well.

*[Page 9 of Chinese Original]*

Because the Respondent, SINOPEC and CNPC failed to respond to the Claimant's request for the above-mentioned disclosure, from August to October 2015, Tony Kan & Co. wrote thrice to PetroChina Company Limited, who actually held 67% shares of PK Inc., taking the position that PetroChina Company Limited should disclose and explain the information about the interests owned by SINOPEC in the PK project. PetroChina Company Limited replied that the transaction of CNPC acquiring the Kazakhstan PK project in 2006 had fulfilled the statutory requirements of information disclosure, and there was no information which was required to be disclosed which remained undisclosed. As such, the Claimant referred this dispute to arbitration.

The Claimant's main arguments are summarized as follows:

1. The principle of *res judicata* shall not apply to this case

The Claimant submits that Article 248 of the Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China ("**Judicial Interpretation of the Civil Procedure Law**") stipulated "*where new facts occur after a judgment/ruling comes into legal effect, and the party concerned files a new lawsuit, the competent people's court shall accept the new lawsuit in accordance with the law.*" Referring to the said provision and by comparing the Previous Arbitration with this case, it can be found that new facts occurred after the previous award was rendered. The Claimant commenced this arbitration based on such new facts.

The previous tribunal held that the Claimant was entitled to request the Respondent to pay the agency commission and the anticipated interests, however the condition for such obligations was not satisfied. Consequently, the previous tribunal did not uphold the Claimant's claim for the commission "in accordance with the relevant provision of the Agency Agreement for the time being" (see the last paragraph of page 72 and the first paragraph of page 73 of the previous award).

After the previous award was rendered, the Respondent was indolent in claiming for the interests or the compensation against CNPC.

[*Page 10 of Chinese Original*]

Further, when the Claimant requested the Respondent to provide specific information about the Respondent's claims for the interests or compensation against CNPC, the Respondent refused to do so, which breached the obligation under the Agency Agreement and the previous award, and substantively hindered the satisfaction of the condition, and thereby making it impossible for the Claimant to obtain the agency commission and the right of sales agency or any compensation. The Claimant contends that the condition for the Respondent's obligation under the Agency Agreement and the previous award shall be deemed satisfied, in accordance with Article 45(2) of the Contract Law and Article 75 of Some Provisions of the Supreme People's Court on Evidence in Civil Procedures. The Claimant commenced this arbitration on the basis of new facts, which is not subject to the principle of *res judicata*.

2.   The Agency Agreement has not been terminated and is still valid

The Claimant submits that after the Second Extension Agreement expired on December 31, 2008, the Respondent never refused to perform the obligations under the Agency Agreement on the ground that the Agency Agreement had expired, instead, the Respondent admitted that the Respondent was obligated to pay the agency commission in accordance with the existing agreement between both Parties. During several communications, the Respondent agreed to pay the commission and compensation for the loss of the agency rights. However, the Respondent believed that such payment should be due only after it had obtained the interest of the project (i.e. shares or any other compensation) from CNPC. As such, the Agency Agreement is still valid, the Respondent remains obligated to perform the obligation under the Agency Agreement. Both parties have agreed by verbal communication and conduct to perform the Agency Agreement.

Even if the Agency Agreement expired (which is denied by the Claimant), the Respondent is still obligated to perform the obligations of paying the agency commission and the loss of the sales agency right under the Agency Agreement. Article 98 of the Contract Law of the People's Republic of China ("**Contract Law**")

*[Page 11 of Chinese Original]*

stipulates: "*termination of rights and obligations under a contract shall not affect the validity of its clauses regarding settlement and liquidation.*" Therefore, the Respondent's argument that its obligation to pay the agency commission has been discharged is without any legal basis.

3.   The Claimant completed the agency affairs under the Agency Agreement, and the Respondent is obligated to pay the agency commission and grant the right of sales agency.

(1)   The previous tribunal has concluded that the Claimant had performed the obligations under the Agency Agreement, and the Respondent has an obligation to pay the commission under the Agency Agreement. The only issue was whether the condition for the payment of the agency commission was satisfied.

The previous award concluded: "*after the Respondent actually obtains the rights and interests resulting from the acquisition of the shares of PKZ Inc. or compensation of other related rights and interests, the Claimant is entitled to claim for the commission, and the Respondent is obligated to pay the commission under the Agency Agreement.*" It follows that the previous award did conclude that the Respondent has an obligation to pay the agency commission to the Claimant, but the condition for such payment was not satisfied at the time when the award was rendered.

(2)   In the acquisition of PK Inc., CNPC and the Respondent have an affiliated relationship and shall be regarded as a group with common interests. When CNPC completed the acquisition of the shares of PK Inc., the Respondent's purpose under the Agency Agreement was achieved.

①   According to the facts and the relevant laws, CNPC and the Respondent had an affiliated relationship in acquiring PK Inc. The Report on the Matters Concerning the PK Project issued by the Respondent in 2007 ("**Report**") provides detailed description about the relationship between the Respondent and CNPC in the process of acquiring PK Inc. The said Report indicates that

[*Page 12 of Chinese Original*]

under the coordination of the NDRC, the Respondent and CNPC reached an agreement that CNPC would bid for the project alone and transfer the shares to the Respondent after it won the bid. The Report clearly proves that, in the process of acquiring PK Inc., the Respondent and CNPC had an affiliated relationship and constituted a group with common interests. Article 216(4) of the Company Law of the People's Republic of China ("**Company Law**") provides that: *"affiliation refers to a relationship between a controlling shareholder, a de facto controller, directors, supervisors or senior officers of a company and an enterprise directly or indirectly controlled by him as well as any other relationship that may lead to a transfer of the interests of the company."* It is clear that the Respondent and CNPC had an affiliated relationship which would lead to the transfer of corporate interests.

② In accordance with Article 2.1 of the Agency Agreement, based on the agency service provided by the Claimant, regardless of whether it was the Respondent or an affiliated company of the Respondent who successfully acquired the shares of PK Inc., the purpose of the Agency Agreement was achieved, and the Respondent should perform the obligation of paying the agency commission provided under Article 5.1 of the Agency Agreement and grant the Claimant the anticipated right of sales agency under Article 7.2 of the same.

4.   The payment of the agency commission is conditional on the Respondent obtaining PK Inc.'s interest from CNPC

The Claimant contends that in accordance with the Agency Agreement, the condition for the payment of the agency commission was satisfied on October 26, 2005. The condition for the payment of the agency commission was the completion of the transaction according to Article 2.1 of the Agency Agreement. The evidence in this case shows that the Respondent's affiliated company, CNPC, has purchased the shares of PK Inc. in August 2005, and obtained the approval from the Canadian court on October 26, 2005, which completed the transaction. Consequently, the Claimant submits that as per the Agency Agreement, since October 26, 2005,

[*Page 13 of Chinese Original*]

the condition for the payment of agency commission had been satisfied. However, the Claimant changed the condition for the payment of agency commission in its correspondence with Mr. ZHOU Baixiu, the former general manager of the Respondent, namely that the agency commission would be paid after the Respondent obtained the rights and interests of PK Inc. from CNPC.

5.   The Respondent is obliged to facilitate the satisfaction of the condition to payment

(1)  Based on the supplementary construction of the Agency Agreement, the Respondent is obliged to facilitate the satisfaction of the condition

Under the Agency Agreement and the two extensions, there was no specific provision on whether the Respondent was obligated to claim for the shares of PK Inc. or compensation from CNPC. In these circumstances, there is a gap in the contract. To facilitate the performance of the Agency Agreement, a supplementary construction shall be given to the Agency Agreement. In the probabilistic perspective, if the Respondent fails to proactively exercise right of recourse, it is more likely that CNPC would not fulfill its obligation to transfer the shares or provide compensation. Under these circumstances, it would be impossible to satisfy the condition for the payment of the agency commission under the Agency Agreement. The rights and obligations under the Agency Agreement would be severely imbalanced, which would be contrary with the overriding principle of fairness under the Contract Law. Taking into account the supplementary construction of the Agency Agreement and the overriding principle of fairness under the Contract Law, the Respondent is obligated to claim for the shares or seek compensation from CNPC.

(2)  In accordance with the previous award and the agreement between the Parties, the Respondent is obligated to facilitate the satisfaction of the condition for the payment of the agency commission

Within the terms of the Agency Agreement, the Respondent is obligated to pay the agency commission and interests to the Claimant, provided that the Claimant had fulfilled its obligation as the agent. According to

13

*[Page 14 of Chinese Original]*

the previous award, it was merely held that there was a condition on the timing of the payment of the agency commission, and after satisfaction of such a condition, the Respondent shall fulfil its obligation. The said condition refers to the event that the Respondent obtains shares arising from the acquisition of PK Inc. or compensation in any other form from CNPC. If the Respondent abandons the project of acquiring PK or abandons its claim for compensation against CNPC, such should be regarded as hindering the satisfaction of such a payment condition, and the Respondent shall be held liable for the losses incurred by the Claimant arising therefrom.

6.     The Respondent failed to fulfill its obligation in facilitating the satisfaction of the payment condition

The Claimant alleges that, on the basis of the evidence in this case or the Respondent's submissions, the Respondent cannot prove that it has fulfilled its obligation to facilitate the satisfaction of the payment condition – namely to proactively request the shares or compensation from CNPC.

(1)   Since the previous award was rendered, there is no evidence proving that the Respondent has ever requested the shares or compensation from CNPC.

After the previous award was rendered on December 30, 2013, the Claimant repeatedly requested the Respondent to disclose the information about its claim for the shares or compensation against CNPC, but has not received any response from the Respondent and SINOPEC. In addition, the Claimant authorized a lawyer to write to CNPC, requesting the disclosure of the relevant information about the negotiation between CNPC and the Respondent regarding the PK project. But CNPC did not give the Claimant any response and represented that it had gone through the statutory disclosure process over its acquisition of the assets in the Kazakhstan PK project in 2006, no situation existed for the disclosure of SINOPEC's interests in the PK project.

(2)   The Respondent admits in the Statement of Defence that it has not claimed for the shares or compensation against CNPC.

[*Page 15 of Chinese Original*]

The Respondent admits in its Statement of Defence that after the previous award took effect, it never engaged in any negotiation with CNPC about the transfer of the shares of PK Inc. The Respondent alleges that "*it is neither a breach of contract nor violation of law and it is totally reasonable and proper that it did not negotiate with CNPC about the transfer of the shares of PK Inc. after the previous award took effect.*" At the second hearing, on the Claimant's close enquiry, the Respondent contended that it had made a call to CNPC claiming the shares or compensation, but it failed to provide any evidence to prove this contention.

7.    The Respondent's failure to fulfill the obligation to satisfy the condition leads to a consequence that the condition has been deemed satisfied.

(1)   Referring to Article 45 of the Contract Law, the Respondent's refusal to take actions which it is otherwise obligated to shall be viewed as prevention of satisfaction of the condition, which leads to a consequence that the payment condition shall be deemed satisfied.

Since CNPC obtained the shares of PK Inc. in August 2005, especially after the previous award was rendered in December 2013, the Respondent refused to disclose anything about SINOPEC's claim for the shares against CNPC. In addition, there is no evidence proving that the Respondent has taken any action to claim for the shares or compensation against CNPC. Furthermore, the Respondent admits in its Statement of Defence that it never claimed for rights and interests or compensation against CNPC at all. The Respondent's indolence or even abandonment of claiming for rights and interests or compensation against CNPC constitutes a breach of obligation set out in the Agency Agreement and the previous award. The Respondent has substantively prevented the satisfaction of the condition despite of the Claimant's contractual rights and the rights under the previous award, making it impossible for the Claimant to realise its rights under the Agency Agreement.

*[Page 16 of Chinese Original]*

Pursuant to Article 45(2) of the Contract Law, the Respondent should have, since the date when the condition was satisfied, paid the agency commission and granted the right of sales agency to the Claimant or compensated the loss incurred by the Claimant, to fulfil its obligations defined by the Agency Agreement and the previous award.

(2)   The condition was satisfied no later than August 14, 2014.

In accordance with the Meeting Minutes dated May 17, 2007, *"the working group of both parties set goals to finish the transfer of the shares within this year."* Thus the Respondent has acknowledged that the reasonable time limit for finishing the transfer of the shares shall be 7 months and 14 days. On this basis, the condition defined under the Agency Agreement and the previous award shall be deemed satisfied on August 14, 2014, *i.e.*, 7 months and 14 days after the previous award was rendered.

8.    The condition for the Respondent to grant the right of sales agency to the Claimant has been satisfied under the Agency Agreement, thus the Respondent shall compensate the Claimant for the loss of anticipated profit.

Pursuant to the Agency Agreement, there are two conditions for granting the right of sales agency: the first one is a substantial condition, namely *"after the transaction"* provided under Article 7, to be precise, after the transfer of the shares on October 26, 2005. However, the Respondent has not given such right to the Claimant hitherto; the second condition is a procedural condition, namely, *"otherwise agreed"* provided under Article 7.2, which only refers to specific terms of the sales agency which need to be agreed otherwise, rather than whether to grant such a right to the Claimant.

The Claimant tried many times to discuss the right of sales agency under Article 7.2 with the Respondent

*[Page 17 of Chinese Original]*

(by repeatedly claiming for compensation for loss of right against the Respondent), but the Respondent refused to discuss. The Respondent is liable for failing to discuss the agency commercial terms and shall assume the full responsibility under Article 7.2.

The Claimant contends that in accordance with Articles 107 and 113 of the Contract Law, it has fulfilled the obligation under the Agency Agreement, but the Respondent has failed to grant the right of sales agency to the Claimant, in breach of the Agency Agreement, and shall be liable for the loss incurred by the Claimant arising therefrom. The amount shall be equal to the anticipated profit the Claimant would have obtained if it received such a right.

On this basis, the Claimant's amended claims are as follows:

1. Declaration that the condition for the payment of the commission under the Agency Agreement entered into between the Claimant and the Respondent on March 4, 2005 has been satisfied;

2. An order that the Respondent shall pay the commission under the Agency Agreement in an amount of US$ 21,540,000 and the overdue interest from August 14, 2014 to the date of actual payment (currently calculated to August 14, 2016 as US$ 3,239,715.42);

3. An order that the Respondent shall compensate the loss of sales agency in an amount of US$ 133,634,359.5 under the Agency Agreement;

4. An order that the Respondent shall bear the attorney fees including: RMB 300,000, HK$ 259,865, and 10% of the amount of the compensation the Claimant receives from the Respondent;

*[Page 18 of Chinese Original]*

    5.  An order that the Respondent shall bear all of the arbitration fees; and

    6.  Other relief the tribunal may consider appropriate.

The Claimant made an explanation on the calculation of the overdue interests as follows: the Claimant alleges that it has incurred loss of interests arising from the Respondent's default on the payment of the agency commission. The Claimant requests to set August 14, 2014 as the date when the condition for such payment was satisfied. Therefore, the overdue interest accrues from August 14, 2014 till the date when the payment is actually made. The principal sum shall be the amount of the agency commission payable to the Claimant. The interest rate shall be the corresponding overdue lending interest rate published by the People's Bank of China (50% above the benchmark lending interest rate). As of August 14, 2016, the loss of interests amounted to US$ 3,239,715.42. Such amount is still growing and shall be calculated till the date when the payment is actually made.

**B. The Respondent objects to the claims filed by the Claimant with the following defence:**

    1.  The Claimant referred the same dispute to arbitration once again, which was contrary to the "final and binding award" principle and thus undermining the authority of the previous award and prejudicing the interest of the Respondent.

The Respondent argues that, in accordance with Article 9 of the Arbitration Law, arbitration adopts the "final and binding award" principle. The Claimant previously applied for arbitration to CIETAC on August 30, 2012 based on the Agency Agreement, claiming for the agency commission and the loss of anticipated interest against the Respondent. The arbitral tribunal rendered its award on December 30, 2013, namely the [2013] CIETAC BJ No. 0907 Award (**"Effective Award"**), dismissing all the claims of the Claimant (**"Previous Case"**, the previous case and the present case are collectively referred to as the **"two cases"**). After the Effective Award was rendered, the

[*Page 19 of Chinese Original*]

Claimant commenced this arbitration again, constituting the reference of the same dispute to repeated arbitration.

The parties and the subject matter of the two cases are identical, and the claims are substantively the same in the two cases. In addition, the Claimant's claims in the second arbitration cannot base on the allegation that the Respondent "was indolent in" claiming for the shares or compensation against CNPC after the Previous Arbitration .

(1) As determined in the Effective Award (see pp 71-72), the payment shall be made after completion of acquisition of PK Inc., as well as after the completion of the transfer and change of the shares. According to this determination, the payment shall not be made until the Respondent actually obtains the shares or compensation from CNPC, regardless of whether the Respondent was indolent in claiming for such shares or compensation against CNPC after the Effective Award. The Effective Award concluded that the only factual basis, on which the Claimant is entitled to the agency commission, is that the Respondent obtains the shares of PK Inc.

(2) The Effective Award dismissed all the claims raised by the Claimant, and did not make a ruling that the Respondent was obligated to claim for the shares or compensation against CNPC. Therefore, the Claimant distorted and misunderstood the Effective Award by filing this arbitration on the ground that the Respondent was indolent in claiming for such shares or compensation against CNPC.

There is no legal basis for the Claimant to request for determination on the matter which has been dealt with in the Effective Award.

2.   The obligation to pay the agency commission has no contractual basis as the Agency Agreement had expired

After the expiration of the Agency Agreement, LAU Fong, the Claimant's person in charge, contacted ZHOU Baixiu in 2009, when ZHOU Baixiu had retired from its former position in the Respondent and was neither the person in charge nor an employee of the Respondent. At that time, ZHOU was not legally authorized to

*[Page 20 of Chinese Original]*

express intention on behalf of the Respondent. The communication with LAU Fong cannot prove that the Respondent had reached an agreement with the Claimant to continue performing the Agency Agreement. In particular, the Claimant had sent a letter and made a request to the Respondent after the expiration of the Agency Agreement to apply for an extension of the term of the Agency Agreement, but the Respondent explicitly refused the request. Both parties did not reach any consensus on the continued performance of the Agency Agreement.

Secondly, in this case, no settlement or liquidation clause is set out in the Agency Agreement. The Claimant's claims for the agency commission and compensation for loss of the right of sales agency are made on the basis of the main contract clauses of the Agency Agreement, rather than the so-called settlement and liquidation clause.

3.   The condition for the payment of the agency commission by the Respondent is that the Respondent obtains the shares of PK Inc., but up to now, the Respondent has not received any shares of PK Inc., and thus, is not obligated to pay any agency commission.

The Respondent alleges that the legal nature of the Agency Agreement in this case shall be recognised as a commission contract. The Agency Agreement provides that the payment of the agency commission is conditional on the Respondent obtaining the shares of PK Inc. In accordance with Article 405 of the Contract Law of the People's Republic of China, the Respondent is not obligated to pay any agency commission if it has not obtained such shares. The Effective Award also concluded (see page 71) that the agency commission shall be paid only after the completion of acquisition of PK Inc., as well as the completion of transfer and change of the shares. Up to now, the Respondent has not obtained any shares or other related interests as compensation. As per the Agency Agreement and the Effective Award, the Claimant is not entitled to any agency commission from the Respondent.

(1)  The Respondent and CNPC are not of a group with common interest or in an affiliated relationship. The fact that CNPC obtained the shares of PK Inc. cannot be regarded as that the Respondent obtained the PK

[*Page 21 of Chinese Original*]

Inc. shares.

The Effective Award has already concluded that, in this case, there was no legal relationship of so-called "joint acquisition" between CNPC and SINOPEC. Further, it held the fact that CNPC obtained the shares of PK Inc. shall not be regarded as the Respondent having obtained such shares, and cannot further prove that the condition for the payment of the agency commission has been satisfied. Secondly, Article 217 (4) of the Company Law of the People's Republic of China explicitly stipulates that "*the state-controlled companies shall not be deemed affiliated merely because they are all under the control of the state*", thus the Respondent and CNPC shall not be deemed affiliated enterprises merely because they are all under the control of the state, and are not affiliated companies under the provisions of the Company Law.

(2) The Respondent is not obligated to claim for rights and interests or compensation from CNPC, and thus no circumstances exist as to its indolence in claiming for rights and interests or compensation

The Claimant repeatedly claims in its Amended Request for Arbitration that the previous award confirmed the Respondent has an obligation to grant the Claimant the rights and interests agreed under the Agency Agreement, and an obligation to claim for the rights and interests or compensation from CNPC relating to the PK project. These assertions cannot stand at all:

① The Respondent, as a principal, does not have the obligation to facilitate the completion of the transaction and claim for the rights and interests in PK Inc., but instead enjoys the right to terminate the PK project at will, and thus was not indolent in claiming interests or compensation. In accordance with the relevant provisions of the Contract Law of the People's Republic of China on the commission contracts, the agent shall bear the obligation to complete the entrusted affairs, while the principal has no corresponding obligation. The Agency Agreement in this case is a commission contract, the Respondent as the principal has no statutory obligations to facilitate the completion of the transaction and claim interests against CNPC. Further, in accordance with Articles 399 and 410 of the Contract Law of the People's Republic of China

[*Page 22 of Chinese Original*]

and Article 2.2 of the Agency Agreement, the Respondent assumes no obligation to claim interest against CNPC, on the contrary, it has the right to terminate the PK project at will.

② The Effective Award did not confirm that the Respondent was obligated to facilitate the completion of the transaction and to claim rights and interests against CNPC. The Effective Award did not mention the Respondent's obligations, in particular, there was no mention that the Respondent was obligated to facilitate the completion of the transaction or was obligated to claim for the rights and interests against CNPC, in order to perform its obligations under the Agency Agreement. The Effective Award (see pp 61 to 62) confirmed that the Agency Agreement in this case was a commission contract which stipulated the specific entrusted matters as well as rights and obligations of both parties. Article 4 of the Agency Agreement stipulated that the obligations of the Respondent were to provide relevant information for deciding a reasonable target price, to provide reasonable advice, not to hire another consultant and to pay the agency commission as per the Agency Agreement.

The Effective Award confirmed that the Respondent was not "indolent in" or "did not abandon" claiming for rights and interests against CNPC. It should be noted that, the fact that the Respondent was not indolent in or did not abandon its claim for rights and interests against CNPC, does not mean that the Respondent has the right or even has the obligation to claim for rights and interests in the PK project against CNPC. The tribunal's explanation and reiteration about the condition for the payment of the agency commission under the Agency Agreement highlighted that the Respondent need not pay the agency commission if it does not obtain the rights and interests of the PK Inc.

③ The Respondent never admitted during the Previous Arbitration that it had the obligation to facilitate the completion of the transaction and to claim for rights and interests against CNPC. The fact that the Respondent tried to negotiate with

[*Page 23 of Chinese Original*]

CNPC about the transfer of the shares of PK Inc. cannot lead to a conclusion that the Respondent has a legal obligation towards the Claimant to facilitate the completion of the transaction and to claim for rights and interests against CNPC.

The Meeting Minutes of Special Session is only a record of the meeting, which in itself does not constitute an enforceable contract, and the Respondent did not obtain any rights and interests from CNPC based on the Meeting Minutes. It cannot be concluded that the Respondent has an obligation to claim for rights and interests in PK Inc. against CNPC, on the contrary, it reveals that the Respondent did not reach a legally binding agreement with CNPC on the transfer of the shares of PK Inc., and there was no contractual basis to claim rights and interests in PK Inc. against CNPC.

After CNPC acquired the shares of PK Inc., the Respondent did not abandon the PK project. It still tried to obtain the shares of PK Inc. through a second transfer and continued to hire the Claimant as agent in good faith. However, this goodwill shall not be interpreted maliciously by the Claimant that the Respondent is obligated to claim for the shares of PK Inc. against CNPC and to facilitate the completion of the transaction.

(3)  The Claimant's allegation that the condition for the payment shall be deemed satisfied under Article 45(2) of the Contract Law is clearly an erroneous application of the law.

① Article 45 of the Contract Law applies where there is an attached condition for the validity of the contract, and does not apply to the conditions for the payment agreed by parties. In this case, the Agency Agreement does not have an attached condition for the validity. The condition for the agency commission is actually a condition for payment, thus Article 45 of the Contract Law is not applicable at all.

*[Page 24 of Chinese Original]*

② Even if Article 45 of the Contract Law applies to this case, the Claimant's contention is still untenable, because the Respondent neither "unjustifiably" prevented the satisfaction of the condition, nor prevented the satisfaction of the condition "for its own interests". The conditions for the application of Article 45 of the Contract Law are not met.

③ The third condition of applying Article 45(2) of the Contract Law is that a party must "prevent" the satisfaction of the condition, but the Respondent has not obtained any rights and interests in PK Inc. hitherto, and did not take any measures to avoid the condition to pay the commission. Failing to negotiate with CNPC about the transfer of the shares of PK Inc. after the Effective Award does not constitute the so-called unjustifiable prevention of the satisfaction of the condition.

4. The Claimant's allegation that, it has fulfilled its tasks to complete the acquisition and played a decisive role in the successful acquisition of the PK project, is not in accordance with the facts. The Respondent contends that in this case the Claimant did not submit any evidence to prove that it had assisted the Respondent in completing all the work of the acquisition. The correspondence by emails, SMS records, document receipts, visas and passports previously submitted to the arbitration commission by the Claimant show that what the Claimant has done during the period of the Claimant's participation in the acquisition of PK Inc. was no more than providing services as hotel booking, meeting arrangements and forwarding some materials for the negotiations between the Respondent and PK Inc. The so-called "decisive role in the acquisition of the shares of PK Inc." apparently lacks supporting evidence.

The Claimant's so-called "decisive" role is not in accordance with the facts. In fact, the Claimant has failed to achieve substantive results through its agency, and the Respondent has not obtained any shares of PK Inc. based on the work of the Claimant. What the Claimant

[*Page 25 of Chinese Original*]

has done was a part of early-stage services, which was recognized by the Respondent with written authorization and the Respondent has made all the relevant payments. The Claimant was not entitled to claim, based on the work already paid for by the Respondent, for the agency commission which shall only be paid after the completion of the transaction.

5.   The Claimant's allegation that the Respondent has the right to claim for the shares of PK Inc. or other compensation against CNPC based on the Claimant's work totally disaccords with the facts.

The Claimant submitted the Meeting Minutes of Special Session and Meeting Minutes of the General Office of the National Development and Reform Commission on the coordination of China National Petroleum Corporation and the China Petrochemical Corporation over the transfer of the shares of PK Inc. ("**NDRC Minutes**"), claiming that CNPC has agreed to transfer the shares of PK Inc. or in other overseas projects to SINOPEC, SINOPEC was entitled to claim for such shares or other compensation against CNPC. The Respondent avers that such allegation is untenable:

(1) The Meeting Minutes of Special Session records the arrangement between CNPC and SINOPEC about the negotiations of the transfer of the shares, and the NDRC Minutes is a consultation letter from the NDRC to both CNPC and SINOPEC, which aimed to consult them over the meeting minutes about negotiations of the transfer of the shares of PK Inc. Neither of the two documents was mandatorily enforceable contract and cannot prove that the Respondent has the right to claim for the shares of PK Inc. based on the Claimant's work.

*[Page 26 of Chinese Original]*

(2) The Effective Award confirmed that, neither of the two meeting minutes can prove that SINOPEC has the legal right to request the shares of PK Inc. or compensation based on the Claimant's work.

6. The Claimant is not entitled to request the Respondent to compensate the loss arising from the right of sales agency outside China in respect of crude oil produced by PK Inc.

(1) Article 7.2 of Agency Agreement provides for the arrangements of matters concerning the sales agency on selling PK Inc.'s crude oil after the completion of the transaction. The Respondent has not obtained any shares of PK Inc. yet, so the transaction is not completed. Under this circumstance, the Claimant has no right whatsoever to request the right of sales agency outside China in respect of PK Inc.'s crude oil, and thus has no right to claim for the so-called loss of anticipated profit arising therefrom.

(2) CNPC won the bid and actually acquired the shares of PK Inc., the Respondent has not yet obtained any such shares. It is objectively impossible for the Respondent to grant the right of sales agency outside China in respect of PK Inc.'s crude oil to the Claimant. Therefore, the Respondent shall not compensate the Claimant for the loss of such anticipated profit.

## II. Tribunal's Opinions

Both Parties have submitted a lot of documents and opinions concerning the factual and legal issues of this case. These documents and opinions are kept in the file of this case in forms of evidence, transcripts, evidence examination opinions, submissions and etc. which have been reviewed and fully taken into account by the Tribunal. For documents or opinions which have not been extracted or referred to in the Factual Background, or have been extracted or referred to in the Factual Background but have not been adopted in the Tribunal's Opinions, it does not mean the Tribunal has neglected or acquiesced in any of them.

*[Page 27 of Chinese Original]*

## A. Analysis and decision concerning the procedural objection raised by the Respondent.

The Respondent alleges that the power of attorney issued by the Claimant fails to specify the arbitration institution as well as the case number, and the Claimant fails to provide documents providing that the person who signed the letter had the right to issue relevant authorization at that time. Moreover, the Respondent was unable to raise such a procedural objection within the specified time limit due to the defective service on the Respondent, therefore, the Respondent reserves the right to raise the procedural objection again.

In respect of the objection raised by the Respondent, the Tribunal holds that this objection does not constitute an objection to the arbitration procedures, and thus would not affect the Tribunal's hearing of the case. The reasons are set out as follows:

Firstly, although the Claimant does not specify the arbitration institution and case number in the power of attorney, the power of attorney makes clear indication about the agency issues, which is sufficient to determine that this authorization is directed at the case accepted by CIETAC concerning the Agency Agreement concluded between the Claimant and the Respondent for the acquisition of PK Inc. Thus the authorization of the Claimant is concrete and specific. In fact, the ultimate purpose of specifying the case number and arbitration institution is also to make clear the disputed case and the accepting institution.

The registration materials and relevant information of person in charge of the company submitted by the Claimant show that, the person who signed the power of attorney, Ms. LAU Fong, as the executive director of the Claimant, has the right to sign legal documents on behalf of the Claimant, including issuing the power of attorney. Although the Claimant did not provide

*[Page 28 of Chinese Original]*

any special document to prove the effectiveness of such authorization, it would not affect the Tribunal's decision on the effectiveness and the legitimacy of the power of attorney.

The matters aforesaid belong to format defects in the process of the issuance of the power of attorney, which would not affect the hearing of the case nor the decision on any substantive issues. In the meantime, Article 20 of the Arbitration Law of People's Republic of China ("**Arbitration Law**") stipulates: "*if a party challenges the validity of the arbitration agreement, he may request an arbitration commission to make a decision or apply to a people's court for a ruling. If one party requests the arbitration commission to make a decision and the other party applies to the people's court for a ruling, the people's court shall give a ruling. A party's challenge of the validity of the arbitration agreement shall be raised prior to the arbitration tribunal's first hearing.*"   According to this provision, the ambiguity of the power of attorney and the issue concerning the validity of the authorization, shall not belong to the objection to the validity of the arbitration agreement, and do not constitute the objection to the arbitration procedures. Therefore, the contention raised by the Respondent that it failed to raise such a procedural objection due to the defective service is out of the question.

Secondly, in overseas jurisdictions, the person who has the right to sign the legal documents including the power of attorney, is different from PRC law and customary practices. According to PRC law and customary practices, only the signature of a so-called legal representative is valid without doubt. As for the signature of others apart from the legal representative, it would have legal effect only when provided together with a power of attorney from the legal representative. However, in overseas jurisdictions, the person who has the right to sign legal documents is not limited to a so-called legal representative. A person in charge, directors, executive directors and etc. are also qualified to sign such documents. In this case, the Claimant has provided the power of attorney signed by its executive director, Ms. LAU Fong,

*[Page 29 of Chinese Original]*

appointing attorneys to represent the case. However, the Respondent has not produced any evidence to prove that Ms. LAU Fong is not the executive director of the Claimant. In the hearing, the Tribunal has checked and confirmed the validity of the power of attorney. Therefore, the power of attorney submitted by the Claimant is effective, the entrusted party, namely the attorneys specified in the power of attorney, are entitled to participate in the procedures of the case on behalf of the Claimant.

In conclusion, the objection to the aforesaid matters raised by the Respondent, shall not constitute effective defence, and shall not affect the Tribunal continuing to hear this case.

**B.  Analysis and decision concerning whether this case violates the system called "final and binding award"**

With regard to whether the request for arbitration of this case has violated the "final and binding award" system, the Claimant contends that, the claims raised by the Claimant are based on new facts, and such claims as well as the subject matter of the present case are totally different from those of the previous case. Therefore, it does not constitute a repeated arbitration. The Respondent alleges that, according to Article 9 of the Arbitration Law, arbitration implements a system called "final and binding award". The parties and the subject matter of this arbitration are exactly the same as those in the previous case, and the claims in the two cases are also substantially identical. This case does not belong to the situations where the Claimant is entitled to applying for a second arbitration.

On this dispute, the Tribunal makes the analysis below:

Article 9 of Arbitration Law stipulates: "*if a party applies for arbitration to an arbitration commission or institutes an action in a people's court regarding the same dispute after an arbitration award has been rendered, the arbitration commission or the people's court shall not accept the case.*" The above-mentioned article sets forth the "final and binding award" system of the Arbitration Law, however, there is no specific provision relating to the scope of application of this system. The system is based on the principle of *res judicata*, under the procedure rules. Since the Civil Procedure Law and its relevant judicial interpretation has laid down specific provisions for the application of the principle of *res judicata*,

[*Page 30 of Chinese Original*]

they shall also be referred to when this principle is interpreted and applied in the context of Arbitration Law. Article 247 of the Judicial Interpretation of the Civil Procedure Law stipulates that *"for matters which have already been sued, if a party initiates another court proceeding during the course of the former proceeding, or after a judgment document of the former proceedings takes effect, the latter proceeding constitutes repeated litigation provided that all of the following conditions are met: 1. the parties of the latter are the same as those of the former; 2. the subject matter of dispute of the latter is the same as that of the former; and 3. the claims of the latter are the same as the those in the former, or the claims of the latter essentially deny the result of the former. If a party repeatedly litigates, its case shall not be accepted; if the case has already been accepted, the case shall be rejected, except as otherwise stipulated by law or judicial interpretation."* Article 248 of the same stipulates that *"where new facts occur after a judgment/ruling comes into legal effect, and the party concerned files a new lawsuit, the competent people's court shall accept the new lawsuit in accordance with the law."*

Although the Parties, the subject matter of the dispute, and the claims in this case are nearly the same as those of the Previous Arbitration, the claims raised by the Claimant are based on the facts and the corresponding evidence that the Respondent was indolent in claiming for the shares of PK Inc. and other relevant rights and interests, which occurred after the previous award was rendered. Such facts and relevant evidence shall fall into the category of the "new facts" stipulated in Article 248 of the Judicial Interpretation of the Civil Procedure Law, which allows a party to file another case.

In conclusion, the claims raised by the Claimant neither violate the principle of *res judicata*, nor the "final and binding award" principle. The Tribunal decides to hear the case.

## C. Analysis and decision concerning the application of law in this case

One party in this case is a company located within the territory of China, while the other party is a company located outside

[*Page 31 of Chinese Original*]

the territory of China. Both parties agreed in Article 10.3.2 of the Agency Agreement that "*any disputes arising out of the agreement shall be submitted to arbitration in Beijing by three arbitrators of the CIETAC according to the relevant rules. The language of the arbitration shall be Chinese. This agreement shall be governed by PRC law.*" Therefore, this case shall be heard and decided in accordance with PRC Law, mainly including the Contract Law and the General Principles of the Civil Law.

### D.  Analysis on whether the Respondent shall pay the agency commission to the Claimant

1.  Understandings of how the previous award decided the issue of the payment of the agency commission

Based on the debate at the hearing and the submissions produced by both Parties, it is clear that the Parties have different understandings of the previous tribunal's conclusion on the issue of the payment of the agency commission: the Claimant alleges that the previous award concluded that the Respondent has an obligation to pay the agency commission to the Claimant; and upon satisfaction of the condition for the payment of commission after the award was rendered, the Respondent shall fulfil its obligation to make a payment under the Agency Agreement. However, the Respondent contends that, as per the Effective Award, since the Respondent had not actually acquired the shares of PK Inc. or compensation in any other form, the Respondent shall not pay the agency commission, and the Respondent does not have the obligation to pay the agency commission after the award was rendered. The previous award which is effective and binding provides guidance for subsequent related cases, it is therefore necessary for the Tribunal to clarify such discrepancy about the previous award between the Parties prior to hearing this case, and analyze the merits and legal effects of the previous award. The Tribunal's analysis is as follows:

The previous award stated that "*In conclusion, the Arbitral Tribunal does not agree that the condition for paying the commission has been satisfied. In circumstances where the Respondent has not actually obtained*

*[Page 32 of Chinese Original]*

*the rights and interests resulting from the acquisition of the shares of PKZ Inc. or compensation of other related rights and interests, the Claimant's claim for agency commission lacks legal basis, which the Arbitral Tribunal does not support. Yet, after the Respondent actually obtains the rights and interests resulting from the acquisition of the shares of PKZ Inc. or compensation of other related rights and interests, the Claimant is entitled to claim for the commission, and the Respondent is obligated to pay the commission under the Agency Agreement. Therefore, the Arbitral Tribunal also refuses the Claimant's claim on other compensation arising from the payment of the agency commission under relevant clauses of the Agency Agreement for the time being."* (see Page 72 of the previous award) The Tribunal notes that, in the above-mentioned analysis, although the previous award clearly rejected the Claimant's claim for the agency commission, the basis of such rejection was that the tribunal did not believe *"the payment condition for the agency commission has been satisfied"*. In addition, based on its expression following *"however"* and the wording of *"for the time being"* , it can be concluded that the previous award did not reject the Claimant's right of claiming for the agency commission, when the condition for such payment is satisfied in the future.

Therefore, based on the analysis, logical structure and systematic interpretation of the previous award in its entirety, the Tribunal holds that the conclusion contained in the previous award relating to the payment of the agency commission shall be interpreted as follows: (1) the Claimant is entitled to claim for the agency commission under the Agency Agreement; (2) the payment of agency commission is conditional on the event that the Respondent actually obtains the interest or compensation in any other form resulting from the acquisition of the shares of PK Inc.; (3) when the previous award was rendered, the Claimant was not entitled to request the agency commission or other compensation arising therefrom, because the condition for the payment of agency commission had not yet satisfied; (4) after the award was rendered,

*[Page 33 of Chinese Original]*

the Claimant still has the right to claim for the agency commission or other compensation arising therefrom, provided that the condition for such payment is satisfied.

Therefore, the Respondent's contention that, the previous award has confirmed that the Respondent was not obligated to pay the agency commission and such obligation has been discharged after the award was rendered, is rejected by the Tribunal.

2.   Analysis and determination on whether the payment of the agency commission has a contractual basis

The Claimant alleges that, both parties agreed, by way of verbal communication and by conduct, to continue performance of the Agency Agreement, and the Respondent's obligations to pay the agency commission and the loss of the right of sales agency shall not be affected by the term of the Agency Agreement. The Respondent contends that the term of the Agency Agreement has already expired, the condition for the payment of agency commission was not met within the term of the Agency Agreement, and the rights and obligations under the Agency Agreement have already been terminated, so the Claimant's claims have no contractual bases.

In respect of this issue, the Tribunal holds that, the expiry of the Agency Agreement will not affect the Respondent's obligation to pay the agency commission. The reasons are as follows:

The term of the Agency Agreement refers to the term of validity of the agent's conduct and the authority of the agent, namely that only acts of the agent during the term of the Agency Agreement can be legally attributed to the Respondent. Therefore, the expiration of the Agency Agreement only means that the Claimant no longer has the rights and obligations to conduct legal actions on behalf of the Respondent, that is to say, the Claimant could no longer deal with any relevant matters concerning the acquisition of PK Inc. on behalf of the Respondent after the expiration of the Agency Agreement. However, the obligation to pay the agency commission is

*[Page 34 of Chinese Original]*

irrelevant to the term of the Agency Agreement. In other words, the Respondent's obligation to pay the agency commission during the performance of the Agency Agreement would not be terminated due to the expiration of the Agency Agreement, and the time to perform such an obligation depends on when the condition for the payment of the agency commission is satisfied.

3.   Analysis and determination concerning whether the Claimant has performed the obligations as the agent

The Claimant alleges that it has completed agency affairs, thus it is entitled to request the agency commission and other fees. However, the Respondent contends that the Respondent has not obtained any interests in PK Inc. based on the work of the Claimant, on the contrary, the Claimant failed to assist the Respondent in getting the opportunity for exclusive negotiations and obtaining the shares of PK Inc. through such negotiations, and consequently, the shares of PK Inc. were finally obtained by CNPC.

In respect of this issue, the Tribunal holds that, the Claimant has already performed the obligations as the agent in accordance with the Agency Agreement. The reasons are as follows:

Pursuant to the principles of the civil and commercial law and relevant provisions of the General Principles of the Civil Law and the Contract Law, a commission contract is a kind of agreement that an agent accepts entrustment of a principal, and conducts legal acts on behalf of the principal with a third party to complete the entrusted affairs. Generally speaking, unless the commission contract explicitly provides that payment of agency commission is contingent on the principal obtaining a specific right or interest, the principal is obligated to pay the agency commission and all other reasonable fees, provided that the agent has completed the agency affairs. The object of a commission contract is not the rights or interests obtained by a principal, but an agent's agency acts. A commission contract is a typical contract on work done, rather than the delivery of the subject matter.

*[Page 35 of Chinese Original]*

Furthermore, even if a commission contract stipulates that the payment of agency commission is contingent on the principal obtaining a specific right or interest, if an agent has completed agency affairs as agreed and the fact that a principal has not obtained such a right or interest is due to reasons attributable to a third party not the agent, the agent is not subjectively at fault, the agent's right to request the agency commission shall not be affected or excluded. Article 121 of the Contract Law provides that *"where a party's breach of contract is attributable to a third party, it shall nevertheless be liable to the other party for breach of contract. Any dispute between the party and such a third party shall be resolved in accordance with the law or the agreement between them."* Although this article is about liquidated damage, it reflects the principle of the privity of contract, which is also applicable to the analysis and determination on the Parties' rights and obligations in the present case.

Pursuant to the above principles of the civil and commercial law, contract law, and relevant provisions, failure to achieve the purpose of the Agency Agreement does not mean the Claimant did not perform the obligations as the agent, or complete the agency affairs. The purpose of the Agency Agreement is set out in Article 2.1 of the Agency Agreement, that is the agent assists the principal in obtaining the shares of PK Inc. directly or indirectly through affiliated companies according to relevant laws or regulations, and obtaining relevant government approvals. Article 3 of the Agency Agreement stipulates the obligations of the agent, including: establishing a relationship with the management of PK Inc., assisting the principal in the analysis, organization, negotiation and influence of the project, as well as assisting the principal in acquiring information etc. Therefore, by analyzing the clauses of the Agency Agreement, it could be concluded that the obligations of the agent are different from the ultimate purpose of the Agency Agreement. The process of performing the obligations as the agent is an essential guarantee of the achievement of the agency goal, and in most cases, achievement of agency goal depends on whether an agent has duly dealt with agency affairs in good faith in accordance with the agreement.

*[Page 36 of Chinese Original]*

However, this does not exclude that in some exceptional circumstances, where the ultimate purpose of an agency contract could not be reached due to force majeure, or faults attributable to the principal or any third party, notwithstanding that the agent has performed its obligations.

Judging from the specific provisions of the commission contract, the Tribunal holds that the agent has performed its obligations. As mentioned above, the Agency Agreement belongs to a commission contract in its legal nature. Article 399 of the Contract Law provides that *"an agent shall handle entrusted affairs in accordance with instructions of a principal."* Thus it can be seen that, the specific requirement under the Contract Law with respect to an agent's performance of obligation is to *"handle entrusted affairs in accordance with instructions of a principal"*, rather than to achieve the purpose of the commission contract. Based on a series of relevant evidence about the performance of the Agency Agreement submitted by the Claimant, the Claimant dealt with relevant affairs relating to the acquisition of PK Inc. strictly in accordance with the Respondent's instructions during the term of the agency. Even when the Respondent gave up bidding and the shares of PK Inc. were acquired by CNPC after coordination, the Claimant still continued to deal with the follow-up matters in accordance with the Respondent's instructions. After the completion of the acquisition of the shares of PK Inc, the Extension Agreement and the Second Extension Agreement as well as the Supplemental Agreement to the Agency Agreement signed by and between the Claimant and the Respondent all indicate that, the Respondent in fact acknowledged that the Claimant had performed the obligations as the agent, and the Respondent continuously maintained the agency relationship between the Parties. The Respondent had never raised any objection to the Claimant's work as agent. Judging from the result of the performance of obligations as the agent, CNPC's successful acquisition of the shares of PK Inc was indeed based on the Claimant's performance of obligations and the agency affairs that had been completed in the early stages. This also indicates that the Claimant has duly and diligently

*[Page 37 of Chinese Original]*

performed the obligations under the Agency Agreement and completed the agency affairs.

Based on the evidence submitted by both Parties, failure to achieve the purpose of the Agency Agreement is irrelevant to the Claimant's conduct as the agent. Although the internal documents submitted by the Claimant such as the NDRC Minutes, the Meeting Minutes of Special Session, and the Report could not prove that *"CNPC and SINOPEC established a written legal relationship concerning the acquisition of the shares of PK Inc. during the course of the acquisition of the shares of PK Inc., and reached an agreement on the issues such as allocation of rights and obligations, undertaking of risks and responsibilities, sharing of financing fees* (see page 71 of the previous award)*"*, it was sufficient to prove that the reason why the Respondent failed to acquire the shares of PK Inc. was not because of the Claimant's failure in assisting the Respondent in acquiring exclusive negotiations status and obtaining the shares of PK Inc. through such negotiations, as alleged by the Respondent. On the contrary, it was due to the Respondent itself or a third party that the Respondent gave up acquiring the shares of PK Inc.

The Tribunal clearly notices that, the Respondent in this case is one of the subsidiaries of SINOPEC, and SINOPEC and CNPC are both large state-owned enterprises managed by the State-owned Assets Supervision and Administration Commission of the State Council ("**SASAC**") and subject to the management and instruction of the competent authority. At the beginning, SINOPEC was the prospective acquirer of PK Inc. However, due to the intervention and coordination of the NDRC during the acquisition, it was determined that the acquisition shall be finally completed by CNPC. In addition, in the meeting for coordination held by the NDRC, it was specified that CNPC shall transfer certain shares to SINOPEC, or compensate SINOPEC rights or interests in other form after the completion of acquisition. In fact, CNPC actually completed the acquisition of the shares of PK Inc. Whether it transferred certain shares or compensated SINOPEC

[*Page 38 of Chinese Original*]

according to the instruction and coordination of the competent authority has nothing to do with the Claimant as the agent, much less under the control and influence of the Claimant. If the Respondent gave up the right of claiming for shares or compensation due to the management system of a state-owned company, or because the competent authority (a third party) did not approve such a transfer of shares or compensation, the Respondent's refusal to pay the agency commission on those grounds obviously lacks legal bases and is also unreasonable.

In conclusion, the Tribunal holds that the Claimant has already performed the obligations as the agent in accordance with the Agency Agreement and completed the agency affairs. Even if the Respondent has not actually obtained the shares of PK Inc. and failed to achieve the purpose of the Agency Agreement, it cannot be denied that the agent has performed its obligations as the agent.

4.   Determination on whether the Respondent has obtained the shares of PK Inc.

The Claimant alleges in its submissions that the Respondent was affiliated with CNPC and both of them were of a group with common interest during the acquisition of PK Inc. Pursuant to Article 2.1 of the Agency Agreement, as an affiliated company of the Respondent, the fact that CNPC had completed the acquisition of PK Inc. shall be deemed that the agent had completed its obligations under the Agency Agreement and the Respondent's purpose had already fulfilled.

The previous award has made a decision concerning this issue as follow: *"without clear evidence demonstrating the alliance between the above two groups, the Arbitral Tribunal could not come to the conclusion that there exists joint bidding or joint acquisition in this case."* (See Page 71 in the previous award)    The previous award has already denied the legal

*[Page 39 of Chinese Original]*

relationship of joint bidding or joint acquisition between the Respondent and CNPC. Article 216(4) of the Company Law stipulates that "*affiliation refers to a relationship between a controlling shareholder, a de facto controller, directors, supervisors or senior officers of a company and an enterprise directly or indirectly controlled by him as well as any other relationship that may lead to a transfer of the interests of the company. However, the state-controlled companies shall not be deemed affiliated merely because they are all under the control of the state.*" In accordance with this provision, firstly, as state-owned companies, CNPC and SINOPEC do not have affiliated relationship merely due to the state's control. Secondly, the previous award has concluded that the Respondent had no legal relationship in writing with CNPC concerning the acquisition of PK Inc. The Claimant has not provided sufficient evidence to prove that there exists other relationship between the Claimant and CNPC which could cause the transfer of company's interests. Therefore, there exists no affiliated relationship as defined in the Article 216 of the Company Law.

Therefore, the Tribunal finds that no relationship of joint-bidding or joint-acquisition existed between the Respondent and CNPC, nor is the Respondent affiliated to CNPC. The fact that CNPC has acquired the shares of PK Inc. does not necessarily mean that the Respondent has done so.

However, as analyzed in the previous section, although CNPC's acquisition of the shares of PK Inc. cannot be seen as the Respondent's acquisition of the shares in PK Inc., it cannot be denied that the Claimant has fully performed its obligations as the agent and duly completed the agency affairs. The Respondent's failure to obtain the shares of PK Inc. was attributable to a third party, which cannot be used as a ground to deny the Claimant's right to the agency

*[Page 40 of Chinese Original]*

commission.

5.  Analysis on whether the Respondent is obligated to pay the agency commission

In terms of this issue, the Claimant contends that pursuant to the previous award and the Agency Agreement, the Respondent was obligated to pay the commission and to facilitate the satisfaction of the payment condition. The legal consequence of failing to perform the obligation to facilitate the satisfaction of such a condition is that the condition for the payment of the commission is deemed satisfied, and thus the Respondent shall pay the commission. However, the Respondent argues that according to the Agency Agreement and the previous award, the payment of the commission is conditional on the Respondent obtaining the shares of PK Inc., and the Respondent does not have any obligation to facilitate the transaction as well as to claim the interest pertaining to such shares from CNPC. The Respondent has not acquired the shares of PK Inc. since the previous award was rendered, and thus is not obligated to pay any commission. This is the focus of the dispute between the parties in this case, the Tribunal analyzes in detail as follows:

(1) Pursuant to the previous award and the Agency Agreement, the Claimant is entitled to claim for the agency commission.

As stated above, the Tribunal holds that the previous award has confirmed that the Claimant was entitled to request the agency commission and any other compensation, and upon the satisfaction of the payment condition, the Claimant can claim for the agency commission and other compensation arising therefrom. The Claimant has fully performed, as per the Agency Agreement, its obligation of assisting the Respondent in acquiring the shares of PK Inc. The Respondent is obligated to pay the commission to the Claimant, considering that any contract shall be based on mutual benefits between the parties.   Article 405 of the Contract Law provides that: *"when an agent has satisfied the entrusted*

*[Page 41 of Chinese Original]*

*affairs, a principal shall pay agency commission to the agent. If the commission contract is terminated or the entrusted affairs cannot be satisfied due to reasons not attributable to the agent, the principal shall pay corresponding agency commission to the agent. If the parties have stipulated otherwise, such stipulations shall govern."* Therefore, the Respondent shall pay the agency commission to the Claimant, even though the Respondent failed to acquire the shares of PK Inc. to achieve the purpose of the agency due to the reasons attributable to itself or any third party.

(2) The payment of the commission was conditional, and the condition shall be deemed satisfied since the Respondent hindered the satisfaction of such a condition.

Pursuant to the previous award and the Agency Agreement, the payment of the commission is conditional. Such a condition was expressly provided for under Article 5.1 of the Agency Agreement, which says that *"upon completion of the transaction within the target price range ascertained by the Company"*, that is to say, the Respondent obtains the shares of PK Inc. The previous award also confirmed that the condition was attached to the payment of the commission. It said that *"Based on the debates during the hearings and post-hearing submissions in writing made by both parties, the Arbitral Tribunal holds that the payment of the commission is subject to a condition, and the condition is exactly the completion of the transaction."* (see page 65 of the previous award) Based on the hearings and the evidence submitted by the Respondent, the previous award further held that the aforementioned condition was not satisfied during the Previous Arbitration, and the allegation that the Respondent was indolent in performing its contractual obligation and hindered the satisfaction of such a condition was not the truth. It said that *"there is no evidence establishing that the Respondent had been intentionally indolent in performing the contractual obligations, had abandoned the opportunity to acquire the shares of PK Inc., or concealed the joint acquisition between the Respondent and CNPC and thus losing the right to acquire the shares of PK Inc."* (see page 76 of the previous award)

Since the payment of the commission is conditional, it is significant for the Tribunal to determine

*[Page 42 of Chinese Original]*

whether the condition has been satisfied. In order to achieve the objective of the Agency Agreement, both Parties are obliged to facilitate the satisfaction of the condition. In relation to obtaining the shares in PK Inc. or other compensation for the interest, the Claimant is completely irrelevant to the satisfaction of the condition, the Claimant can perform no conduct that has any influential value. On the contrary, the satisfaction of the condition completely depends on the Respondent's conduct. If the Respondent did not proactively claim for the shares or compensation pertaining thereto in any other form, or abandon its right or failed to obtain such shares or compensation due to its management system as a state-owned company, or even was indolent in exercising its right, which render the condition unsatisfied, the condition shall be deemed satisfied based on the principle of adverse inference and the spirit embodied in Article 45(2) of the Contract Law.

Furthermore, the Tribunal finds that the Respondent is obligated to facilitate the satisfaction of the condition for the payment of the agency commission. The Respondent is obligated to facilitate the satisfaction of the condition for the payment of the agency commission, namely to obtain the shares of PK Inc. to complete this transaction. The contractual basis of this is the Agency Agreement. Article 5.1 of the Agency Agreement expressly provides that the Respondent shall pay the agency commission to the Claimant after the transaction is completed at a target price. As analyzed above, the Claimant has fully performed its contractual obligations under the Agency Agreement, and is entitled to claim for the commission and the Respondent is obligated to pay such commission. Under normal circumstances, the principal would have acquired the shares of PK Inc., completed the transaction, and satisfied the condition through the agent's agency conduct. However, because of issues on the part of the principal, namely the Respondent abandoned the acquisition and CNPC acquiring the shares of PK Inc. under the coordination of the NDRC, as a result, in the final stages

*[Page 43 of Chinese Original]*

SINOPEC failed to acquire the shares of PK Inc. in the acquisition process, which caused that the Claimant, who had performed its obligations as the agent, to not receive the corresponding agency commission because the payment condition had not been satisfied. Therefore, the principal has an obligation to claim for the shares of PK Inc. or compensation in any other form to facilitate the satisfaction of the payment condition against CNPC. Such obligation arose from the specific provisions on the payment of the commission under the Agency Agreement, because the satisfaction of the condition was a requisite for the Respondent to pay the commission.

The Respondent was indolent in claiming the shares of PK Inc. or compensation in any other form, which means that the Respondent deliberately prevented the satisfaction of the condition to pay the commission, so such condition shall be deemed satisfied. Article 45(2) of the Contract Law provides that *"where either party, for the sake of its own interests, unjustifiably prevents the satisfaction of the aforesaid conditions, the conditions shall be deemed satisfied; where either party unjustifiably hastens the satisfaction of the conditions, the conditions shall be deemed not satisfied."* This provision is applicable to a contract with conditions for its validity, and the legal presumption of deemed satisfaction of condition stipulated in this article deals with the validity of the contract. The condition for the payment of the agency commission in the present case is a condition for performing a contract. However, based on the spirit and principle behind Article 45(2) of the Contract Law, it can be applied by analogy when it comes to the performance of a contract. Article 45(2) of the Contract Law aims to particularly protect the expectant right of the parties, as well as to adversely infer the satisfaction or non-satisfaction of the condition against parties acting in bad faith. The legitimate expectation as to the satisfaction of a condition shall be equally protected by law, regardless of whether such condition concerns the validity of a contract or performance of a contract.

*[Page 44 of Chinese Original]*

Thus, the principle of adverse inference shall be equally applicable to conditions to the performance of contract. In this case, firstly, not only did the Respondent fail to prove that it has ever claimed for the shares of PK Inc. or compensation in any other form against CNPC, it even admitted in the Statement of Defence and during the hearing that it was not obligated to request such shares or compensation from CNPC and to report relevant information to the Claimant; secondly, CNPC also states that the Respondent has never requested such shares or compensation from it. In the stock exchange statutory disclosure on its acquisition of the assets in Kazakhstan in the PK project in 2006, there was nothing showing that the Respondent had interests in PK Inc. The evidence above demonstrates that the Respondent should have requested, but on the contrary, was indolent in claiming for the shares of PK Inc. or the compensation in any other form, and thus, improperly prevented the satisfaction of the condition for the payment of the commission. The motivation or intention behind the Respondent's indolence is not regulated by law. In circumstances where the Respondent's subjective intent cannot be ascertained, one can only infer from the Respondent's objective conduct in preventing the satisfaction of the condition that such was motivated by its self-interest. Therefore, with applying Article 45(2) of the Contract Law by analogy, the Tribunal finds that the condition for the payment of the commission has been satisfied.

Given that both Parties did not reach any agreement on the time limit within which the Respondent should claim for the shares of PK Inc. or the compensation in any other form against CNPC, the Respondent should have done so within a "reasonable period of time". According to the wording "*the working group of both parties set goals to finish the transfer of the shares within this year.*" in the Meeting Minutes of Special Session signed by Sinopec and CNPC on May 17 2007 and submitted by the Claimant,

44

*[Page 45 of Chinese Original]*

the Respondent estimated that it would take 7 months and 14 days to complete the transfer of the shares of PK Inc. Such can also be adopted as a reference to determine the "reasonable period of time". Therefore, the condition for the payment of the commission was satisfied on the day when the reasonable period of time needed for the Respondent to claim for the shares of PK Inc. or compensation in any other form expired, after the previous award was rendered, namely, on August 14, 2014.

(3) According to the doctrine of privity of contract, the Respondent shall perform the contractual obligation of paying the commission to the Claimant.

Suppose that the Respondent did not abandon its right to request the shares of PK Inc. or compensation in any other form from CNPC, according to the doctrine of privity of contract, the Respondent shall still pay the commission to the Claimant. Article 121 of the Contract Law provides that *"where a party's breach of contract is attributable to a third party, it shall nevertheless be liable to the other party for breach of contract. Any dispute between the party and such a third party shall be resolved in accordance with the law or the agreement between them."* This Article emphasizes the privity of contract, which means that any contract lawfully concluded is legally binding on both the contractual parties, either of whom shall perform contractual obligation or assume liabilities for breach of contract, except as the Contract Law provides otherwise. Even if a breach of contract is due to a third party, a party is still liable to the other party. In this case, the Claimant has performed all the obligations as the agent under the Agency Agreement, while the Respondent gave up bidding for the shares of PK Inc. after discussion with CNPC because of the internal coordination of the government, which caused the shares of PK Inc. were acquired by CNPC and the Respondent did not complete the acquisition of the shares of PK Inc. per the Agency Agreement. The Respondent further refused to pay the commission to the Claimant on this basis. In accordance with

*[Page 46 of Chinese Original]*

Article 121 of the Contract Law, the Respondent shall assume the liability for the breach of contract by paying the commission to the Claimant. In terms of the legal relationship between the Respondent and the third party, namely CNPC, it shall be settled separately in accordance with the internal agreement between them.

To conclude, the Tribunal finds that the Respondent shall pay such commission to the Claimant as per the Agency Agreement and the condition for the payment of the agency commission has been satisfied.

### E. Analysis on whether the Respondent is obligated to compensate the loss of anticipated profit suffered by the Claimant arising from the Respondent's failure to grant the right of sales agency

The Claimant contends that the underlying purpose of the Agency Agreement has been satisfied after CNPC acquired the shares of PK Inc., the Respondent was obligated to grant the Claimant the right of sales agency under Article 7.2 of the Agency Agreement. However, the Respondent has not fulfilled or cannot fulfill such an obligation, and thus, shall compensate the loss of anticipated interest incurred by the Claimant arising from the Respondent's failure to grant such a right. The Respondent argues that Article 7.2 of the Agency Agreement provides for the sales agency of crude oil produced by PK Inc., but the Respondent has not obtained any shares of PK Inc. up to now. Therefore, the Claimant is not entitled to request the right of sales agency outside China in terms of crude oil produced by PK Inc., or the loss of anticipated profits pertaining thereto.

The Tribunal holds that the Respondent assumes no obligation to compensate the loss of anticipated profits incurred by the Claimant for the following reasons:

There is no legal and practical likelihood for the Respondent to grant the right of sales agency to the Claimant. Article 110 of the Contract Law provides: *"if a party fails to perform non-pecuniary debt or fails to perform non-pecuniary debt as contracted,*

*[Page 47 of Chinese Original]*

*the other party may demand the performance, except in any of the following situations:(1) legally or practically the performance is impossible;……"* Under Article 7.2 of the Agency Agreement, the Extension Agreement and the Second Extension Agreement, it was clearly provided that the Respondent would grant the Claimant the right of sales agency after the Respondent obtained the shares of PK Inc. Pursuant to these clauses, granting the Claimant the right of sales agency is a next-step arrangement regarding the legal relationship between the Parties, in case that the Respondent successfully acquires the shares of PK Inc. Since that the Respondent cannot obtain and legally dispose of such shares now, the Parties' rights and obligation come to rest on the situation where the Claimant has assisted in acquiring such shares, and the Respondent shall pay for the commission. It turns to be legally impossible to perform the clause regarding the right of sales agency under the Agency Agreement. The requisite for the Claimant 's obtaining the right of sales agency is that the Respondent is in control of the sales and operation of PK Inc. after obtaining its shares. Through the actual operation of PK Inc., the Respondent is able to grant the right of sales agency to the Claimant. However, evidence submitted by the Claimant and the Respondent all prove that this event did not happen and it is legally impossible to happen. It is certain that performance is impossible. Therefore, the Respondent in fact is unable to grant such a right to the Claimant.

The Claimant has completed its contractual obligations as the agent, so the Respondent shall pay the commission to the Claimant. All the labor and expenses paid by the Claimant during the performance of such obligation can be fully compensated by the agency commission. Therefore, even if the Claimant is not granted the right of sales agency of PK Inc.,

*[Page 48 of Chinese Original]*

the performance of the Claimant has been fully compensated, which is in conformity with the principle of fairness in contract law.

In conclusion, the Tribunal finds that it is impossible for the Respondent to grant the Claimant the right of sales agency outside China in respect of the crude oil produced by PK Inc., because the Respondent has never obtained the shares of PK Inc. Therefore, the Claimant is not entitled to request the right of sales agency or the loss of anticipated interest pertaining thereto.

**F.  Analysis on whether the initial expenses which had been paid shall be set off against the commission to be paid by the Respondent.**

Pursuant to Article 5.2 of the Agency Agreement, the Respondent shall pay the initial expenses of US\$ 10,000 per month to the Claimant for the Claimant's activities as the agent. The Respondent alleges that it has paid the initial expenses in an amount of US\$ 159,898 to the Claimant, to which the Claimant raises no objection. Therefore, such an amount is recognized by the Tribunal. The so-called initial expenses in nature are different from the agency commission. The former is costs and expenses in advance paid by the Respondent to support the Claimant's agency activities, which has nothing to do with the success of the agency activities, while the latter is contingent on the successful completion of the agency activities. In the meantime, the Tribunal notices that it is provided under the last sentence of this clause that the fees under the clause shall be fully set off against the commission after the completion of the transaction. Therefore, the upfront fees which had already been paid shall be set off against the commission. Although the Respondent did not raise any counter-claim or set-off claim with regard to this issue in this arbitration, considering that the clause is directly relevant to the claims raised by the Claimant and of significance to determine the amount of the commission, the Tribunal finds that such fees shall be set off against the commission notwithstanding the Respondent not raising any

*[Page 49 of Chinese Original]*

counterclaim on this issue, in order to be in conformity with the true intention of both Parties and the good faith principle in the contract law. As such, the Tribunal decides that the upfront fees totaling US$ 159,898 shall be set off against the commission claimed by the Claimant in the amount of US$ 21,540,000, and the commission after the set-off shall be US$ 21,380,102.

## G. On the claim whether the Respondent shall bear the legal fees in this arbitration

In this case, the fourth claim raised by the Claimant is to request the Respondent to bear the legal fee, which is comprised of three parts, namely, RMB 300,000, HK$ 259,865 and 10% of the amount of the compensation the Claimant receives from the Respondent. Given the Tribunal's decisions above, the Tribunal upholds the claim for the legal fees which has already been incurred by the Claimant, *i.e.,* RMB 300,000 and HKD259,865 and dismisses the amount of "10% of the compensation the Claimant receives from the Respondent", which has not yet been incurred by the Claimant.

## H. On the allocation of the arbitration fee in this arbitration

The fifth claim raised by the Claimant is to request the Respondent to bear the arbitration fee which was paid by the Claimant in advance. Given the Tribunal's decision on the claims, the Tribunal determines that the Claimant shall bear 70% of the total arbitration fee, while the Respondent shall bear 30% of the total arbitration fee.

## III. AWARD

Based on the opinion aforesaid, the Tribunal hereby rules:

1. that the condition for the payment of the agency commission under the Agency Agreement entered into between the Claimant and the Respondent on March 4, 2005

*[Page 50 of Chinese Original]*

has been satisfied;

2. that the Respondent shall pay the Claimant the agency commission under the Agency Agreement in an amount of US$ 21,380,102, and overdue interest arising therefrom and calculated from August 14, 2014 till the date of the actual payment per the benchmark lending interest rate published by the People's Bank of China;

3. that the Respondent shall compensate the Claimant the legal fees in amounts of RMB300,000 and HKD 259,865;

4. that the other claims raised by the Claimant are dismissed; and

5. that the total arbitration fee is in the amount of USD 848,329, 70% of which, i.e., USD593,830.30, shall be borne by the Claimant, while 30% of which, i.e., USD254,498.70, shall be borne by the Respondent. Such a fee shall be deducted from the advance on costs paid by the Claimant, and the Respondent shall separately pay USD 254,498.7 to the Claimant to make up for the arbitration fee paid in advance by the Claimant for the Respondent.

This award is final and comes into effect on the date when it is rendered.

(The remainder of this page is intentionally left blank)

(The remainder of this page is intentionally left blank)

Presiding Arbitrator: LIU, Kaixiang

Arbitrator: GAO Yu

Arbitrator: TIAN, Hui

June 30, 2017, in Beijing

# 裁 决 书

## Arbitral   Award



中 国 国 际 经 济 贸 易 仲 裁 委 员 会
CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

# 中国国际经济贸易仲裁委员会

# 裁决书

申　请　人：UNI-TOP Asia Investment Limited

地　　　址：OMC Chambers,RoadTown,Tortola,British Virgin Islands

仲裁代理人：王雪华、刘净、刑媛、赵雪、李海涛、陈晓锋

北京市环中律师事务所

被 申 请 人：中国石化集团国际石油勘探开发有限公司

地　　　址：中国北京市朝阳区惠新东街甲 6 号 1 楼

仲裁代理人：戴月、李妍　北京市金杜律师事务所

李阿敏、刘凌云

北京市金杜律师事务所上海分所

北京

二〇一七年六月三十日

# 裁决书

〔2017〕中国贸仲京裁字第 0836 号

中国国际经济贸易仲裁委员会（以下简称"仲裁委员会"）根据申请人 UNI-TOP Asia Investment Limited（以下简称"申请人"）与被申请人中国石化集团国际石油勘探开发有限公司（以下简称"被申请人"，并与申请人合称"双方当事人"）于 2005 年 3 月 4 日签订的《代理协议》中仲裁条款的约定以及申请人于 2015 年 9 月 30 日向仲裁委员会提交的书面仲裁申请，受理了申请人与被申请人因履行上述协议发生的争议案。本案案号为 E20160333。

本案仲裁程序适用仲裁委员会自 2015 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称"《仲裁规则》"）。

2016 年 4 月 18 日，仲裁委员会仲裁院按照申请人在仲裁申请书中提供的地址，以特快专递的方式向双方当事人分别寄送了本案的仲裁通知、《仲裁规则》和《仲裁员名册》，同时向被申请人附寄了申请人提交的仲裁申请书及其附件。经查，寄往被申请人的上述函件已于 2016 年 4 月 20 日妥投。

申请人选定高羽女士担任本案仲裁员。由于被申请人未在规定期限内选定或委托仲裁委员会主任指定仲裁员，仲裁

1

委员会主任根据《仲裁规则》之规定为其指定田辉女士担任本案仲裁员。由于双方未在规定期限内共同选定或共同委托仲裁委员会主任指定首席仲裁员，仲裁委员会主任根据《仲裁规则》之规定指定刘凯湘先生担任本案首席仲裁员。上述三位仲裁员在签署了接受指定的声明书后，于2016年6月1日组成仲裁庭，共同审理本案。

2016年6月1日，仲裁委员会仲裁院以特快专递的方式向双方当事人寄送了本案组庭通知及其所附的仲裁员签署的声明书。经查，寄往被申请人的上述函件已于2016年6月4日妥投。

2016年6月20日，申请人提交了《请求证据披露函》《证据披露请求函》、申请人补充证据目录及其附件。2016年6月22日，仲裁委员会仲裁院以特快专递的方式向被申请人寄送了上述文件。经查，寄往被申请人的上述函件已于2016年6月24日妥投。

经商仲裁委员会仲裁院，仲裁庭决定于2016年8月2日在北京开庭审理本案。2016年6月23日，仲裁委员会仲裁院以特快专递的方式向双方当事人寄送了本案开庭通知。经查，寄往被申请人的上述函件已于2016年6月25日妥投。

2016年8月2日，仲裁庭如期在北京对本案进行了开庭审理。申请人委派仲裁代理人出席了庭审，被申请人经有效通知未派人出庭，也未说明理由。仲裁庭根据《仲裁规则》

第三十九条第（二）款的规定进行了缺席审理。申请人当庭提交了"修订的仲裁申请书""附件清单"及其附件和"补充证据目录"及其附件，并提交了被申请人的工商登记信息，信息表明，被申请人的法定代表人与申请人此前提交的信息不同。申请人向仲裁庭陈述了仲裁请求及所依据的事实和理由，出示了相关证据的原件，就法律问题回答了仲裁庭的提问。

2016年8月3日，仲裁委员会仲裁院以特快专递的方式向被申请人转去申请人当庭提交的上述相关材料，书面通报了开庭审理情况，并告知被申请人如对本案有任何意见和证据材料，或要求再次开庭，均应以书面形式提出；同时要求申请人就其变更请求补交仲裁预付金。

其后，申请人补交了仲裁预付金。

2016年8月10日，被申请人提交了"授权委托书""法定代表人证明书""营业执照复印件"。2016年8月18日，被申请人提交了"要求重新送达文件、选定仲裁员，并中止仲裁程序事宜函"及其附件。2016年8月22日，申请人提交了"关于继续推进仲裁程序的函"。2016年8月23日，仲裁委员会仲裁院向双方当事人分别转递了上述文件。

2016年9月1日，申请人提交了"对被申请人程序异议及相关文件的反驳意见"。2016年9月8日，仲裁委员会仲裁院以特快专递的方式向被申请人转寄了上述材料。

2016 年 9 月 19 日，被申请人提交了"《对被申请人程序异议以及相关文件的反驳意见》的回复意见"。2016 年 9 月 22 日，仲裁委员会仲裁院以特快专递的方式向申请人转寄了上述材料。

2016 年 9 月 28 日，申请人提交了"对《关于：<被申请人程序异议及相关文件的反驳意见>的回复意见》的评论意见"，2016 年 10 月 12 日，仲裁委员会仲裁院以特快专递的方式向被申请人转寄了上述材料，并就本案程序事项函告双方当事人：1.此前仲裁委员会已经按照《仲裁规则》的规定向被申请人寄送了包括仲裁通知、申请人的仲裁申请书、组庭通知、开庭通知等在内的本案全部函件及相关材料。快递公司查单显示，上述文件均已由被申请人签收并加盖邮件收发章。因此，对于被申请人提出的重新送达文件、重新选定仲裁员、中止程序的要求不予同意，本案程序将继续进行。2.申请人已经就其变更的仲裁请求补缴了仲裁预付金 818,329.00 美元，仲裁庭决定受理申请人所提出的变更仲裁请求，并将与申请人未变更的仲裁请求事项一并进行审理。3.随函向被申请人转去申请人提交的 "申请人补充证据目录（三）" 及其所附补充证据各一式一份，请被申请人在收到本函件后 30 天内对申请人变更的仲裁请求一式五份书面提交答辩及相关证据;未提交书面答辩的，不影响本案仲裁程序的继续进行。

2016 年 10 月 17 日，被申请人的代理人在仲裁委员会领取了"请求证据披露函""补充证据目录"及其附件、"仲裁申请书"及其附件的复印件。

2016 年 11 月 14 日，被申请人提交了"关于（2016）贸仲京字第 038481 号通知的答复""质证意见""答辩书"及其附件。2016 年 11 月 15 日，仲裁委员会仲裁院以特快专递的方式向申请人转寄了上述材料。

2016 年 12 月 2 日，申请人提交了"对于被申请人日期为 2016 年 11 月 11 日的《关于:（2016）中国贸仲京字第 038481 号通知的答复》的评论意见"。

经商仲裁委员会仲裁院，仲裁庭决定于 2016 年 12 月 23 日在北京再次开庭审理本案。2016 年 12 月 6 日，仲裁委员会仲裁院以特快专递的方式向双方当事人寄送了本案开庭通知，并向被申请人转去申请人提交的上述材料。

2016 年 12 月 23 日，仲裁庭在北京对本案进行了第二次开庭审理。申请人与被申请人均参加了庭审。庭审开始前，经仲裁庭询问，双方当事人表示对本案三位仲裁员组成的仲裁庭没有异议。庭审中，申请人陈述了其仲裁请求及其所依据的事实与理由，被申请人发表了答辩意见，双方当事人对其证据进行了说明，出示了相关证据的原件，并回答了仲裁庭提出的问题。

庭后双方当事人均提交了补充材料，仲裁委员会仲裁院分别进行了转递。

因仲裁程序进行需要，经仲裁庭申请，仲裁委员会仲裁院院长同意并决定将本案裁决作出的期限最终延长至 2017 年 7 月 1 日。

在本案仲裁程序中，仲裁委员会仲裁院向申请人和被申请人寄送的所有书面通知和文件均已按照《仲裁规则》第八条的规定有效送达。

本案现已审理终结，仲裁庭依据现有书面证据材料以及庭审查明的事实，依据《仲裁规则》的有关规定作出本裁决。现将本案案情、仲裁庭意见及裁决分述如下：

## 一、案情

（一）申请人的主张及仲裁请求

申请人诉称：2005 年 3 月 4 日，申请人与被申请人签订《代理协议》，约定被申请人独家委托申请人协助被申请人根据相关法律或规定直接或通过被申请人的关联公司间接获得 PetroKhazakstan 公司（以下简称"PK 公司"）股份，并协助被申请人得到相关政府批准。交易完成后，被申请人有义务给予申请人《代理协议》第 5.1 条规定的酬金和第 7.2 条规定的销售代理权。

《代理协议》履行期间，中国石油天然气集团公司（以下简称"中石油集团"）也表明收购 PK 公司股权的意向。随后中石油集团和中国石油化工集团公司（以下简称"中石化集团"，被申请人母公司）在国家发改委主持下，经协商同意，确定在中石化集团已完成的前期工作基础上，由中石油集团收购 PK 公司，中石油集团完成收购后，向中石化集团转让部分 PK 公司股份。2005 年 8 月，中石油集团与 PK 公司完成收购谈判，PK 公司 100%股权的出让价格为 41.8 亿美元。2005 年 10 月 26 日，中石油集团通过其子公司收购 PK 公司 100%股权事宜获得了加拿大地方法院的批准，收购事宜成功完成。

2006 年 7 月 5 日，由于哈萨克政府行使法定优先权，中石油集团将其持有的 PK 公司已发行股本总额的 33%出售给 KMG 公司（全称：JSC National Company Kazmunaigaz）下属的全资子公司 KMGS（全称：Kazmunaigaz PKI Finance B.V.）

2006 年 8 月 23 日，中石油集团将其持有的 PK 公司已发行股本总额的 67%转让给了中油勘探开发有限公司（以下简称"中油勘探"）全资控制的子公司 Pervinage Holding B.V.。该项交易已实际完成，PK 公司网站显示，持有 PK 公司 67%股份的股东正是中油勘探。

中石油集团于 2005 年 10 月 26 日完成收购 PK 公司全部股份后，与中石化集团和被申请人就后续转股事宜展开了谈

判。其中包括：（1）2006 年 3 月 21 日，在国家发改委主持协调下，中石油集团和中石化集团召开会议，相关会议纪要于 2006 年 5 月 16 日作出。（2）2007 年 5 月 17 日，中石化集团和中石油集团签署《专题会议纪要》，进一步明确了双方关于 PK 公司股权转让的安排。

在中石油方面于 2005 年 10 月 26 日完成 PK 公司股权收购后，被申请人与申请人于 2007 年 3 月 2 日签署《延期协议》，于 2008 年 3 月 14 日签署《第二次延期协议》。从 2005 年起到申请人提起第一次仲裁前，申请人多次要求被申请人履行《代理协议》，向申请人支付代理酬金和授予销售代理权或赔偿其损失，但被申请人均以中石油集团尚未向中石化集团转让 PK 公司股权或者补偿其他权益为由，拒绝履行《代理协议》项下的义务。在此情况下，申请人于 2012 年 8 月 31 日向中国国际经济贸易仲裁委员会提起仲裁（以下简称"前案仲裁"）。

2013 年 12 月 30 日前案裁决作出后，申请人多次要求被申请人披露向中石油方面追索权益或补偿的有关情况，以确定被申请人向申请人支付酬金和给予《代理协议》第 7.2 条项下权益或赔偿损失的条件是否已经成就，但被申请人和中石化集团未给予申请人任何反馈。同时，申请人委托律师致函中石油集团，要求中石油集团披露就 PK 项目与被申请人的协商情况，但中石油集团也未给予申请人任何答复。

因被申请人、中石化集团和中石油集团均未对申请人的上述披露请求作出答复，香港简松年律师行于 2015 年 8-10 月三次致函实际持有 PK 公司股份的中石油股份，认为中石油股份应披露和说明中石化集团对 PK 项目拥有权益的情况。中石油股份答复，该公司 2006 年收购中石油集团哈萨克斯坦 PK 项目资产的交易已履行了法定信息披露程序，不存在应披露而未披露的信息。据此争议，申请人提起本案仲裁。

申请人在本案中的主要观点概括如下：

1.本案不适用一事不再理原则

申请人认为，《最高人民法院关于适用<中华人民共和国民事诉讼法>的解释》（以下简称"《民诉法解释》"）第二百四十八条规定："裁判发生法律效力后，发生新的事实，当事人再次提起诉讼的，人民法院应当依法受理。" 参照上述《民诉法解释》的规定，对比本案与前案仲裁可发现，前案裁决作出后，发生了新的事实。申请人是基于新的事实提起本案仲裁。

前案仲裁庭认定，申请人有权要求被申请人根据《代理协议》的约定给付酬金和预期权益，但认为履行给付义务的条件，在该案仲裁当时尚未成就，因此未支持"申请人现在就依据《代理协议》的相关规定"索要酬金（见前案裁决书第 72 页最后 1 段，第 73 页第 1 段）。

前案裁决作出后，被申请人怠于向中石油方面主张权益

或补偿，而且在申请人要求其提供向中石油主张权益或补偿的具体情况时，其拒绝向申请人做出任何披露，违反了《代理协议》和前案裁决确定的义务，构成实质性阻碍其履行义务条件的成就，使申请人无法获得代理酬金和销售代理权或赔偿。申请人主张，根据《合同法》第四十五条第二款和《最高人民法院关于民事诉讼证据的若干规定》第七十五条之规定，被申请人履行《代理协议》和前案裁决确定的义务的条件应视为已经成就。申请人基于上述新的事实提起本案仲裁请求，不属于一事不再理的情形。

2. 《代理协议》并未终止，仍然有效

申请人认为，《第二次延期协议》于 2008 年 12 月 31 日到期后，被申请人从未以代理协议已经到期为由，拒绝履行《代理协议》项下的义务，而是仍坚持双方之前已达成的合意，承认其具有付款义务。在多次沟通中，被申请人同意向申请人支付酬金、代理权补偿等"成功代理费"，但认为，支付时间应在其从中石油方面获得项目权益（指股权或权益补偿）之后。可见，《代理协议》至今仍然有效，被申请人仍有义务履行其于《代理协议》项下的义务。双方以口头和行动的方式，达成了继续履行《代理协议》的合意。

即便《代理协议》期限届满（申请人否认），被申请人支付《代理协议》项下酬金、代理权损失费用等义务依法仍然需要履行。《中华人民共和国合同法》（以下简称"《合同

法》")第九十八条规定："合同的权利义务终止，不影响合同中结算和清理条款的效力"。被申请人以《代理协议》到期为由声称无义务再行支付酬金，完全不能成立。

3.申请人完成了《代理协议》项下的代理事项，被申请人有义务支付代理酬金并给予销售代理权

（1）前案仲裁庭已经认定，申请人履行了《代理协议》项下的义务，被申请人有义务向申请人支付代理酬金，争议的焦点仅是酬金支付条件是否已经成就。

前案裁决认定，"在被申请人实际取得因本案涉及的PKZ 公司的股权收购所应得的权益或与此相关的其他权益进行补偿之后，申请人有权对代理酬金进行索取，被申请人也有义务向申请人支付代理协议约定的酬金"。由此可见，前案仲裁庭认定，被申请人有义务向申请人支付代理酬金，只是裁决作出时付款条件尚未成就。

（2）中石油公司与被申请人在PK公司收购事宜中，存在关联关系，属于利益共同体，中石油公司完成PK公司股权收购，被申请人于《代理协议》项下的目的就实现了。

①事实依据及相关法律表明，中石油公司与被申请人在PK公司收购事宜中，存在关联关系。被申请人于2007年作出的《关于PK项目有关情况的汇报》（以下简称"《情况汇报》"）对被申请人和中石油方面在PK公司股权收购投标事宜中的关系，作出了非常详细的描述，该《情况汇报》显示，

在发改委的协调下，被申请人与中石油方面约定，由中石油一家投标，中标后向被申请人转让股份。该《情况汇报》充分表明，中石油与被申请人在收购 PK 公司的过程中存在关联关系、属于利益共同体。《中华人民共和国公司法》（以下简称 "《公司法》"）第二百一十六条第（四）款规定，"关联关系，是指公司控股股东、实际控制人、董事、监事、高级管理人员与其直接或者间接控制的企业之间的关系，以及可能导致公司利益转移的其他关系。" 明显可见，被申请人与中石油之间产生了导致公司利益转移的关联关系。

②根据《代理协议》第 2.1 条之约定，基于申请人提供的代理服务，不论是被申请人，还是被申请人的关联公司成功收购 PK 公司的股份，《代理协议》的目的即得到实现，被申请人应履行其于《代理协议》第 5.1 条项下的酬金支付义务，并给予申请人第 7.2 条项下的预期销售代理权。

4.代理酬金的支付条件是，被申请人从中石油方面获得 PK 公司权益

申请人认为，根据《代理协议》的约定，酬金支付条件于 2005 年 10 月 26 日实现，《代理协议》第 2.1 条约定酬金的支付条件是完成交易。本案证据已经证明，被申请人的关联公司中石油集团已经于 2005 年 8 月收购了 PK 公司的股权，且在 2005 年 10 月 26 日得到了加拿大法院的批准，完成收购。因此，申请人认为，按照《代理协议》的约定，自 2005

年 10 月 26 日起，酬金支付条件已经满足。但申请人在与被申请人公司原总经理周佰修先生的信函沟通中变更了酬金的支付条件，即：被申请人从中石油方面获得 PK 公司权益后支付代理酬金。

5.被申请人有义务促使支付条件的成就

（1）从《代理协议》的补充解释来看，被申请人有义务促使条件成就。

《代理协议》及两次延期协议中并未明确约定被申请人是否有义务从中石油处追索股权或者补偿，这种情况，属于合同存在漏洞，为便于《代理协议》的履行，应当对《代理协议》进行补充性解释。从期待可能性上看，如果被申请人不积极向中石油追索，那么存在较大的可能，中石油不履行转让股份或者补偿的义务。那么，这种情况下，《代理协议》所设定的申请人获取酬金的条件将不可能得到实现。《代理协议》项下的权利、义务将严重失衡，违反《合同法》所设立的公平原则。从《代理协议》的补充解释，并基于《合同法》公平原则的考量，被申请人有义务向中石油追索股权或者补偿。

（2）根据前案裁决书的认定和双方约定，被申请人有义务促成代理酬金支付条件的成就。

在代理协议期间，申请人完成了作为代理人的全部义务，被申请人即有义务向申请人支付协议规定的报酬和权益。依

13

据前案裁决，只不过认为被申请人支付酬金和权益的时间是附条件的，在条件成就后，被申请人应履行义务。而这个条件就是被申请人从中石油方面获得 PK 公司股权收购的权益或其它权益的补偿。如果被申请人放弃收购 PK 项目或者放弃向中石油方面追索其他补偿，即为阻碍付款条件成就，应当对因此而给申请人造成的损失承担赔偿责任。

6.被申请人没有履行促使支付条件成就的义务

申请人认为，无论是基于本案的证据还是被申请人的陈述，被申请人均无法证明其履行了促使酬金支付条件成就的义务——即向中石油积极追索股权或者赔偿。

（1）从前案裁决作出以后至今，没有任何证据证明被申请人曾向中石油追索股权或者补偿。

2013 年 12 月 30 日前案裁决作出后，申请人多次要求被申请人披露向中石油方面追索权益或补偿的有关情况，但被申请人和中石化集团未给予申请人任何反馈。申请人还委托律师致函中石油集团，要求中石油集团披露就 PK 项目与被申请人的协商情况。但中石油集团也未给予申请人任何答复，并表示，该公司 2006 年收购中石油集团哈萨克斯坦 PK 项目资产的交易已履行了法定信息披露程序，不存在应披露中石化集团对 PK 项目拥有权益的情况。

（2）被申请人在《答辩书》中自认其未向中石油追索过股权或者补偿。

被申请人在《答辩书》中承认，前案裁决生效后，其根本未向中石油方面协商 PK 公司股权转让事宜。被申请人声称，"国勘公司在前案裁决生效后未向中石油方面协商股权转让事宜，既不违约，也不违法，完全合理正当。" 在第二次开庭时，在申请人的追问下，被申请人声称其曾通过电话方式向中石油方面索要 PK 公司权益或补偿，但并未提供任何证据予证明。

7.被申请人不履行促使条件成就义务的法律后果是条件拟制成就

（1）参照《合同法》第四十五条的规定，被申请人有义务而拒绝履行的行为，应当被视为阻碍条件成就，其后果为付款条件拟制成就。

自 2015 年 8 月份中石油获得 PK 公司股权后至今，特别是在前案裁决于 2013 年 12 月做出后，被申请人拒绝向申请人披露中石化集团向中石油集团追索权益的任何情况，也没有任何证据显示被申请人采取了任何行动或措施向中石油集团主张其权益或补偿。在被申请人《答辩书》中，被申请人甚至承认其根本未向中石油方面主张权益或补偿。被申请人怠于、甚至放弃向中石油方面主张权益或补偿的行为，违反《代理协议》和前案裁决确定的义务，置申请人合同权利和经生效的裁决书所确认的权利于不顾，实质性阻碍其履行义务条件的成就，使申请人于《代理协议》下的权益无法得

以实现。根据《合同法》第四十五条第二款之规定，被申请人应自条件成就之日起向申请人履行《代理协议》和前案裁决确定的义务，向申请人支付代理酬金和给予申请人销售代理权或赔偿其损失。

（2）条件成就的最晚时间为 2014 年 8 月 14 日。

2007 年 5 月 17 日的会议纪要中写道，"双方工作小组以年内完成转股交易为目标"。可见，被申请人自认办理转股手续所需要的合理期间，应为七个月十四天。因此，《代理协议》和前案裁决确定的条件应视为在前案裁决作出后的合理期间内，即裁决作出满七个月十四天时，即 2014 年 8 月 14 日已经成就。

8.《代理协议》项下被申请人授予申请人销售代理权的条件已经成就，被申请人应当赔偿申请人因未被授予代理权而遭受的预期权益损失

《代理协议》项下销售代理权的授予涉及两个条件：一是授予代理权的实质条件，即第 7 条所称的"交易后"，具体为 2005 年 10 月 26 日股权交易完成后。但被申请人至今为止仍未授予申请人代理权。二是授予代理权的程序条件，即第 7.2 条所约定的"另行商定"。该条规定的"另行商定"，仅指另行协商确定具体的代理条件，而非协商是否给予申请人该项销售代理权。

申请人多次试图与被申请人就 7.2 条项下的销售代理权

16

事宜进行协商（多次向被申请人主张代理权损失补偿），但被申请人均拒绝与申请人进行协商，双方未能就代理权商业条款进行协商的过错在于被申请人，被申请人应于第 7.2 条项下对申请人承担完全的赔偿责任。

申请人认为，根据《合同法》第一百零七条、第一百一十三条规定，申请人履行了《代理协议》项下的义务，被申请人未能给予申请人销售代理权，构成违约，应当向申请人赔偿其因此而遭受的损失。该损失的金额应等于，如《代理协议》正常履行，申请人获得销售代理权后，本应获得的利益。

据此，申请人最终提出的仲裁请求如下：

1.确认申请人与被申请人于 2005 年 3 月 4 日签订的《代理协议》约定的酬金支付条件已经成就；

2.被申请人向申请人支付《代理协议》项下的酬金 21,540,000 美元及自 2014 年 8 月 14 日起至被申请人实际支付日止的利息，暂计至 2016 年 8 月 14 日的利息为 3,239,715.42 美元；

3.被申请人赔偿申请人《代理协议》项下申请人销售代理权益的损失 133,634,359.5 美元；

4.被申请人承担申请人本案项下的律师费用，有三部分组成：人民币 300,000 元、港币 259,865 元以及申请人实际获得赔偿部分的 10%；

5.被申请人承担本案全部仲裁费用。

6.给予申请人仲裁庭认为可以给予的其他救济。

申请人关于利息损失计算的说明。申请人主张被申请人至今仍未向申请人支付酬金，也给申请人造成了相应的利息损失。申请人请求以 2014 年 8 月 14 日作为酬金支付条件成就之日。利息损失应自 2014 年 8 月 14 日起算，计至被申请人实际酬金支付之日止。该项利息的本金应为被申请人欠付的酬金金额，利率为同期人民银行公布的逾期贷款利率（基准贷款利率上浮 50%）。暂计至 2016 年 8 月 14 日，该利息损失为 3,239,715.42 美元。该项利息损失仍在不断扩大，具体金额应计至被申请人实际支付之日。

（二）被申请人不同意申请人的仲裁请求，其主要答辩意见可以概括如下：

1.申请人就同一纠纷重复申请仲裁，违反"一裁终局"的基本原则，损害了裁决的权威和被申请人的利益

被申请人认为，根据我国《仲裁法》第 9 条规定，仲裁实行一裁终局的制度。申请人曾于 2012 年 8 月 30 日基于《代理协议》向中国国际经济贸易仲裁委员会申请仲裁，要求被申请人支付代理酬金和赔偿预期利益等损失，仲裁庭于 2013 年 12 月 30 日作出（2013）中国贸仲京裁字第 0907 号仲裁裁决书（以下称"生效裁决"），驳回了申请人全部仲裁请求（以下称"前案"，与本案合称为"两案"），在生效裁决作出后，申

请人再次提起本案仲裁，属于就同一纠纷重复申请仲裁。

两案当事人、仲裁争议标的完全相同，两案仲裁请求实质相同，且被申请人在前案裁决后"怠于"向中石油方面主张权益或者补偿的说法不能作为申请人再次提起仲裁的请求权事实基础。

（1）生效裁决业已明确认定（第 71-72 页），代理酬金的支付是要完成对 PK 公司的收购并完成股权的受让和变更。根据该等认定，无论被申请人在生效裁决后是否怠于向中石油方面主张权益或者补偿，只要未实际取得 PK 公司股权或补偿，就不应当支付代理酬金。生效裁决认定申请人主张代理酬金的请求权事实基础只能是被申请人取得 PK 公司股权。

（2）生效裁决的裁决事项为"驳回申请人的全部仲裁请求"，而非裁决被申请人有义务向中石油主张权益或者补偿。因此，申请人以被申请人"怠于"向中石油主张权益或者补偿为由提起本案仲裁，是对生效裁决的曲解和误读。

因此其要求就生效裁决已然裁决的事项重新进行审理和裁决的请求，完全没有法律依据。

2.《代理协议》已经终止，代理酬金的支付义务没有合同基础

《代理协议》有效期到期以后，申请人的负责人刘方 2009 年联系周佰修时，周佰修已经从被申请人岗位上退下来，不再是被申请人负责人员和工作人员，法律上不能代表被申

请人对外作出意思表示，其与刘方之间沟通，不能证明被申请人与申请人达成了继续履行《代理协议》的合意。特别是，申请人在代理协议有效期限届满之后曾向被申请人发函，申请延长《代理协议》有效期限，但被被申请人明确拒绝，双方根本没有达成任何继续履行《代理协议》的合意。

其次，本案《代理协议》未约定任何结算清理条款，申请人主张代理酬金和销售代理权损失费用，依据的是《代理协议》主合同条款，并非基于所谓的结算和清理条款。

（三）被申请人支付代理酬金的条件是获得 PK 公司股权，被申请人至今未获得 PK 公司股权，不应支付任何代理酬金

被申请人认为，本案《代理协议》的法律性质为委托合同，该协议约定，代理酬金的支付条件是被申请人获得 PK 公司股权。根据我国《合同法》第四百零五条的规定，只要被申请人未获得 PK 公司股权，就无需支付任何代理酬金。生效裁决也已经认定（第 71 页），代理酬金的支付是要完成对 PK 公司的收购并完成股权的受让和变更。截止目前为止，被申请人并未取得任何 PK 公司股权或获得与此相关的其他权益作为补偿。按照上述《代理协议》的约定以及生效裁决的认定，申请人根本无权要求被申请人支付任何代理酬金。

（1）被申请人和中石油集团不是利益共同体或关联公司，中石油取得 PK 公司股权，不能代表被申请人取得 PK

公司股权。

生效裁决已经认定，中石油方面与中石化方面在本案中没有达成所谓"联合收购"的法律关系，进而认定中石油取得PK公司股权，不能代表被申请人取得PK公司股权，更不能证明代理酬金支付条件已经成就。其次，我国《公司法》附则第217条第（四）项明确规定，"国家控股的企业之间不仅因为同受国家控股而具有关联关系"，被申请人和中石油方面不因为同受国家控股而具有关联关系，不属于我国《公司法》规定的关联公司。

（2）被申请人没有向中石油主张权益或者补偿的义务，不存在"怠于"主张权益或补偿的情形。

申请人在《修订的仲裁申请书》中不断声称：前案裁决确认被申请人有义务给予申请人《代理协议》约定的权益，有义务向中石油方面主张PK项目相关权益，被申请人认为，该等主张完全不能成立：

①被申请人作为委托人，没有促成交易完成和追索PK公司权益的义务，反而享有任意终止PK项目的权利，没有任何"怠于"主张权益或补偿的情形。根据我国《合同法》关于委托合同的相关规定，受托人负担完成受托事务的义务，委托人没有相应义务，本案《代理协议》系委托合同，被申请人作为委托人，没有完成受托事务——促成交易完成和向中石油集团主张权益的法定义务。并且根据我国《合同法》

21

第三百九十九条、第四百一十条的规定以及《代理协议》第2.2 条的约定，被申请人不仅没有义务向中石油方面主张权益，反而享有终止 PK 项目的权利。

②生效裁决并没有认定被申请人有义务促成交易完成，向中石油集团主张权益。生效裁决对于被申请人的法律义务只字未提，其中显然没有任何所谓被申请人有义务促成交易完成，有义务向中石油集团主张权益，以便向申请人履行《代理协议》项下的义务的表述。生效裁决（第61-62 页）确认，本案《代理协议》为委托合同，该合同对于双方的委托及代理的具体事项和权利义务都做了具体规定，《代理协议》第四条规定被申请人的义务是提供确定合理心理价位的相关信息、提供合理建议、不得另行聘请顾问以及按约定支付代理酬金。

生效裁决认定被申请人不存在所谓"怠于"或者"放弃"向中石油集团追索权益的事实。需要说明的是，被申请人没有怠于或者放弃向中石油集团追索权益，根本不能等同于被申请人有权利，甚至有义务向中石油方面追索 PK 项目权益。仲裁庭对《代理协议》项下代理酬金支付条件的阐述和重申，从反面强调被申请人没有取得 PK 公司权益，就不需要按约支付代理酬金。

③被申请人从未在前案仲裁过程中承认有义务促成交易完成，有义务向中石油集团主张权益。被申请人曾经向中

22

石油方面尝试协商转让 PK 公司股权的事实，根本不能推导出被申请人对于申请人有促成交易完成和向中石油集团主张权益的法律义务的结论。

《专题会议纪要》仅仅是一份会议记录，其本身不构成具有强制执行力的合同，被申请人没有依据该会议记录自中石油集团取得确定权益。这不仅不能得出被申请人有向中石油集团主张 PK 公司权益的义务，反而表明被申请人没有与中石油集团达成关于 PK 公司股权转让的具有法律约束力的协议，缺乏向中石油集团主张 PK 公司权益的合同基础。

在中石油方面取得 PK 公司股权后，被申请人没有放弃 PK 项目，仍然尝试通过二次转让方式从中石油方面取得股权，并出于善意继续聘请申请人担任代理人。然而，该等善意不能被申请人恶意地解读为被申请人有义务向中石油集团方面主张 PK 公司股权，有义务促成交易完成。

（3）申请人根据《合同法》第四十五条第 2 款的规定主张被申请人履行付款义务的条件应视为已经成就，明显属于适用法律错误。

①我国《合同法》第四十五条，该条款适用的对象是合同本身附有生效条件，不适用于当事人约定的付款条件。本案《代理协议》未附生效条件，其中代理酬金的支付条件实质是付款条件，根本不能适用我国《合同法》第四十五条的规定。

②即使本案适用我国《合同法》第四十五条的规定，申请人的主张也不能成立。因为被申请人没有"不正当"地阻止条件的成就，也没有"为了自己的利益"阻止条件成就，《合同法》第四十五条的适用条件并不满足。

③我国《合同法》第四十五条中第二款前段适用要件之三是当事人必须是"阻止"条件成就，被申请人至今没有取得任何 PK 公司权益，更未采用各种手段规避酬金支付条件，在生效裁决后未与中石油集团协商讨论受让 PK 股权，不构成所谓不当地阻止条件成就的情形。

4.申请人关于积极履行义务，完成了收购所必须的全部工作，为成功收购 PK 项目发挥了决定性作用的说法与事实不符。被申请人认为，申请人在本案中没有提供任何的证据来证明其协助被申请人完成了收购的全部工作，其此前向仲裁委员会递交的往来电子邮件、短信记录、文件交接单、签证记录及护照复印件表明，在被申请人参与 PK 公司股权收购期间，申请人所做的工作无非是为被申请人与 PK 公司的协商谈判提供酒店预订和会议安排、转交了部分资料，其所谓的"为收购 PK 公司股权发挥了决定性的作用"，明显缺乏证据支持。

申请人所谓起到了"决定性"作用的说法不符合事实。实际上，申请人未能通过其代理工作取得实质性成果，被申请人没有因为申请人工作取得任何 PK 公司权益。申请人所做

的工作属于前期费用服务事项和被申请人认可并书面授权事项，被申请人已依约支付了全部费用，申请人无权基于被申请人已经付费的工作主张本应在完成交易后才能获得的酬金。

5.申请人关于被申请人因申请人的工作而有权向中石油集团主张获得 PK 公司的股权或者其他补偿的说法完全不符合事实

申请人提交了《专题会议纪要》和《国家发展改革委办公厅关于协调中国石油天然气集团公司和中国石油化工集团公司转让 PK 公司股份的会议纪要》（以下称"《发改委纪要》"），主张中国石油天然气集团公司（"中石油集团"）已经同意将商定的 PK 公司股份或其他海外项目的股权转让给中国石油化工集团公司（"中石化集团"），中石化集团有权向中石油集团索要 PK 公司股份或者其他补偿。被申请人认为，该等主张不能成立：

（1）《专题会议纪要》是"中石油方面"和"中石化方面"对股权转让交易谈判工作进行安排的会议记录，《发改委纪要》是国家发改委就"中石油方面"与"中石化方面"转让 PK 公司股权进行协商形成的工作会议记录向双方征求意见的函件，二者均不构成具有强制执行力的合同，都不能证明被申请人因申请人的工作而有权向中石油方面主张 PK 公司股权。

（2）生效裁决已经确认上述会议纪要根本不能证明中石化集团因申请人的工作在法律上有权索要 PK 公司股权或其他补偿。

6.申请人无权要求被申请人赔偿 PK 公司原油在中国以外地区的销售代理权益损失

（1）《代理协议》第 7.2 条是对交易完成后 PK 原油销售代理事宜的安排，被申请人至今未取得 PK 公司的任何股权，交易并未完成。在此情况之下，申请人根本无权主张享有 PK 公司原油在中国以外地区的销售代理权，更无权索要所谓的销售代理预期利益损失。

（2）"中石油方面"成功竞标并实际取得 PK 公司股权，被申请人至今未取得 PK 公司的任何股权，客观上也无法将 PK 公司原油在中国以外地区销售的代理权给予申请人，不应赔偿任何销售代理权损失。

## 二、仲裁庭意见

本案各方当事人及代理人就本案事实及法律问题等向仲裁庭提交了较多的资料和意见，这些资料和意见分别以证据、笔录、质证意见、代理意见等形式保留在本案卷宗中，仲裁庭均已予以充分的审阅和考虑。仲裁庭在案情中未予摘录、述及者，或虽已在案情部分摘录述及但未在仲裁庭意见中予以采用者，并非仲裁庭忽视或默认。

（一）关于被申请人提出的程序异议的分析与认定

被申请人提出，申请人出具的《授权委托书》没有明确具体的仲裁机构以及案件号，并且申请人没有提供任何文件来证明《授权委托书》签署时，签字人有权出具相应的授权。被申请人因为送达的失误而没有在规定期间内提出程序异议，因此被申请人仍然保留就申请人前述行为重新提出程序异议的权利。

对被申请人提出的此一异议，仲裁庭认为，被申请人的该项异议不构成对仲裁程序的异议，不影响仲裁庭对本案的审理。理由如下：

首先，虽然申请人没有在《授权委托书》中注明案号以及仲裁机构，但《授权委托书》对代理事项已经做出了明确的说明，足以判断出该授权是针对申请人与被申请人之间为收购 PK 公司而签订的《代理协议》而做出的，并由中国国际经济贸易仲裁委员会进行受理的争议案件，申请人的授权具体明确。实际上，在《授权委托书》中注明案号以及仲裁机构的最终目的也是在于明确具体的争议案件以及受理机构。

申请人向仲裁庭提交的公司注册资料及公司负责人的相关信息已经表明，《授权委托书》的签字人，即刘方女士，作为申请人的执行董事，有权代表申请人签署具有法律效力的文件，包括出具《授权委托书》。虽然申请人没有就授权

的有效性专门提供文件予以证明，但不影响仲裁庭对授权书
有效性与合法性的认定。

上述事项属于申请人在出具《授权委托书》过程中的形
式上的瑕疵，对本案的审理以及任何实质性问题的判断并不
产生影响。同时，《中华人民共和国仲裁法》（以下称"《仲
裁法》"）第二十条规定，"当事人对仲裁协议的效力有异议
的，可以请求仲裁委员会作出决定或者请求人民法院作出裁
定。一方请求仲裁委员会作出决定，另一方请求人民法院作
出裁定的，由人民法院裁定。当事人对仲裁协议的效力有异
议，应当在仲裁庭首次开庭前提出。"根据该条规定，被申
请人提出的《授权委托书》授权不明确以及授权人授权有效
性的问题，不属于对仲裁协议效力提出的异议，不构成对仲
裁程序的异议，因此也不存在因为送达问题而错过了提出程
序性异议的权利。

其次，在域外，有权在法律文件包括授权委托书上签字
的人，并非如我国的法律规定及习惯做法。我国的法律规定
及习惯做法是由所谓的法定代表人签字才为当然有效，若由
法定代表人以外的其他人签字，则必须出具法人的授权委托
书，其他人在相关法律文件上的签字才具有法律效力。但在
域外，具有在法律文件上签字权力的人并非限于所谓法定代
表人，负责人、公司董事、执行董事等均具有签署法律文件
的资格。本案中，申请人出具了由其执行董事刘方女士签署

的对案件代理律师的授权委托书，而被申请人并无任何证据证明刘方女士不是申请人的执行董事，庭审当中仲裁庭查明并确认该授权委托书的真实性。是故，申请人的授权委托书是有效的授权行为，受托人即授权委托书上载明的代理律师有权代理申请人参与本案程序。

综上，被申请人就上述事项提出的异议，不构成有效的抗辩，不影响仲裁庭继续正常审理本案。

（二）关于本案是否违反一裁终局制度的分析与认定

关于本案的仲裁申请是否违反了一裁终局制度，申请人认为，申请人是基于新的事实提出本案仲裁请求，且前案与本案的仲裁请求、争议标的等完全不同，因此不构成重复仲裁；被申请人认为，根据我国《仲裁法》第九条的规定，仲裁实行一裁终局制度，前案与本案的当事人、争议标的完全相同，仲裁请求也实质相同，本案不属于可以重新仲裁的情形。

对此争议，仲裁庭的分析如下：

《仲裁法》第九条规定："裁决作出后，当事人就同一纠纷再申请仲裁或者向人民法院起诉的，仲裁委员会或者人民法院不予受理。"上述规定为《仲裁法》的一裁终局的制度，但未就一裁终局的适用范围作出具体规定。一裁终局制度依据的法律原理是程序规则当中的"一事不再理"原则，由于民事诉讼法及其相关司法解释就"一事不再理"原则应

当如何适用制定了具体规则，因此对该原则在仲裁法中的理解和适用应当参照民事诉讼法及其相关司法解释的具体规定。《民诉法解释》第二百四十七条规定："当事人就已经提起诉讼的事项在诉讼过程中或者裁判文书生效后再行起诉，同时符合下列条件的，构成重复起诉：（一）后诉与前诉的当事人相同；（二）后诉与前诉的诉讼标的相同；（三）后诉与前诉的诉讼请求相同，或者后诉的诉讼请求实质上否定前诉裁判结果。当事人重复起诉的，裁定不予受理；已经受理的，裁定驳回起诉，但法律司法解释另有规定的除外。"第二百四十八条规定："裁判发生法律效力后，发生新的事实，当事人再次提起诉讼的，人民法院应当依法受理。"

　　虽然本案当中的仲裁当事人、争议标的、仲裁请求与前案的基本一致，但申请人在本案中提出的仲裁请求是基于前案裁决作出以后发生的事实，即被申请人怠于向中石油方面主张 PK 公司的股权或其他相关权益，以及相应的证据，应当属于《民诉法司法解释》第二百四十八条规定的可以再次提起诉讼的"新事实"。

　　综上，申请人在本案中提起的仲裁请求不违反"一事不再理"原则，不属于"一裁终局"的适用范围，仲裁庭决定对本案进行审理。

　　（三）关于本案的法律适用问题的分析与认定

　　本案的一方当事人为中国境内的公司法人，一方为中国

境外的公司法人，双方在系争协议中第 10.3.2 条明确约定：
"由此产生的争端由中国国际贸易经济仲裁委员会的三名
仲裁员根据其相关规则在北京予以仲裁。仲裁程序中使用的
文字为中文。本协议适用中国法。"故本案的审理与裁决应
当适用中华人民共和国法律，其中主要包括《合同法》《中
华人民共和国民法通则》。

（四）被申请人是否应当向申请人支付代理酬金的认定

1. 关于前案裁决如何认定代理酬金支付问题的理解

从庭审的辩论过程以及双方当事人提交的代理意见可
以看出，双方当事人对前案仲裁庭关于代理酬金支付问题裁
决结果的理解有分歧：申请人认为，前案裁决认定被申请人
有义务向申请人支付代理酬金，在裁决作出以后一旦酬金支
付条件成就，被申请人应当向申请人履行《代理协议》项下
支付代理酬金的义务；而被申请人认为，生效的裁决认定，
由于被申请人没有实际取得 PK 公司的股权或其他权益补偿，
被申请人不应当支付代理酬金，且裁决作出以后也不负支付
酬金的义务。作为已经生效且具有法律效力的前案裁决，对
后续关联纠纷案的审理起着指导性的作用，因此仲裁庭有必
要在审理本案之前对前案裁决结果的分歧意见进行厘清，分
析前案裁决的实体意义与法律效果。仲裁庭的分析详述如下：

前案裁决书认定："综上所述，仲裁庭不认为《代理协
议》规定的酬金支付条件已经成就。在被申请人没有实际取

31

得因本案涉及的 PKZ 公司的股权收购所应得的权益或以与此相关的其他权益进行的补偿之前，申请人对代理酬金的索取缺乏法律依据，仲裁庭不能给予支持。但是，在被申请人实际取得因本案涉及的 PKZ 公司的股权收购所应得的权益或与此相关的其它权益进行补偿之后，申请人有权对代理酬金进行索取，被申请人也有义务向申请人支付代理协议约定的酬金。由此，仲裁庭对于申请人现在就依据《代理协议》的相关规定对酬金支付而产生的其他赔偿请求，也不能给予认可。"（见前案裁决书第 72 页）仲裁庭注意到，在上述分析中，虽然前案裁决明确否定了申请人可以向被申请人主张代理酬金，但是其所依据的是"不认为《代理协议》规定的酬金支付条件已经成就"，并且根据其但书的表述以及"现在"的措辞，均可以看出前案裁决没有否定申请人将来在支付条件成就之时，可以向被申请人主张代理酬金的权利。

是故，结合前案裁决书全文的分析思路以及裁决结果的逻辑结构和体系解释判断，仲裁庭认为关于代理酬金支付问题的前案裁决结果应当被解读如下：（1）申请人享有《代理协议》项下的酬金请求权；（2）酬金支付应符合约定的条件，该条件是被申请人实际取得 PKZ 公司的股权收购所应得的权益或以与此相关的其他权益进行的补偿；（3）在前案裁决之时，由于酬金支付条件尚未成就，申请人不能向被申请人主张代理酬金以及由此产生的其他赔偿请求；（4）裁决作出

以后，若酬金支付条件成就，申请人依然可以向被申请人主张代理酬金以及由此产生的其他赔偿请求。

是故，被申请人关于前案已经裁决被申请人不承担酬金支付义务、且裁决以后被申请人不再承担该义务的主张不能得到仲裁庭的支持。

2. 关于代理酬金的支付是否存在合同依据的分析与认定

申请人提出，双方当事人以口头和行动的方式，达成了继续履行《代理协议》的合意，且被申请人支付酬金、代理权损失费用等义务不受《代理协议》期限的影响；被申请人认为，《代理协议》有效期早已届满，酬金付款条件在合同期内并没有成就，合同权利义务业已终止，申请人的主张权益没有合同的依据。

对此争议，仲裁庭认为，《代理协议》的有效期届满，不影响被申请人履行支付代理酬金的义务。理由如下：

《代理协议》的期限是指代理行为或代理权的有效期，即代理人只能在《代理协议》的有效期内为代理行为，代理人只有在《代理协议》有效期内为代理行为，该行为的法律效果才能归于被代理人，因此《代理协议》有效期届满仅意味申请人不具有继续代理被申请人为约定法律行为的权利和义务，即期限届满后申请人不能再代理被申请人处理任何与收购 PK 公司的相关的事宜。而被申请人支付代理酬金的

义务与《代理协议》效力终止与否无关。换言之，被申请人
在《代理协议》的履行期间而产生的支付代理费用的义务不
因合同的终止而终止，支付代理酬金义务的履行期间应当依
代理酬金支付条件何时成就而定。

3. 关于申请人是否已经履行了代理义务的分析与认定

申请人认为自己实施了代理行为，已经完成了代理事务，
有权要求被申请人支付代理酬金及其他费用。被申请人则主
张，被申请人没有因为申请人的工作而取得任何 PK 公司的
权益，反而因为申请人没有协助被申请人取得排他性谈判的
地位以及通过协商谈判取得 PK 公司股权，从而最终导致 PK
公司的股权由中石油方面取得。

对此争议，仲裁庭认为，申请人已经按照《代理协议》
的约定履行了代理义务，理由如下：

依据民商法原理以及我国《民法通则》《合同法》的相
关规定，代理合同是代理人接受被代理人的委托、在授权范
围内以被代理人的名义与第三人进行法律行为，完成委托事
务的协议。通常而言，除非代理合同明确约定以被代理人实
际取得某一具体的权利或权益为支付代理佣金的条件，否则，
只要代理人根据约定完成了所约定的代理事项，被代理人即
应支付代理佣金和其他合理费用。代理合同的客体并非被代
理人取得的权利或权益，而是代理人的代理行为，代理合同
是典型的完成劳务的合同，而不是交付标的物的合同。

更进一步而言，即使代理合同约定支付代理佣金的条件是被代理人取得某一具体的权利或权益，但若代理人按约定完成了代理事务，由于代理人以外的第三人的原因而导致被代理人未能取得约定的权利或权益，代理人主观上并无任何过错，则也不能影响或排除代理人对代理佣金的请求权。《合同法》第一百二十一条规定："当事人一方因第三人原因造成违约，应当向对方承担违约责任。当事人一方和第三人之间的纠纷，依照法律规定或者按照约定解决。"此一规定尽管是关于违约金的规定，但其体现的是关于债与合同的相对性原理，同样适用于当事人权利义务的分析与认定。

根据以上分析的民商法与合同法原理与相关规定，本案《代理协议》约定的目标没有实现不意味着代理人没有履行代理义务，没有完成代理事务。《代理协议》第2.1条约定了代理协议的目的为：代理人协助被代理人根据相关法律或规定直接或通过公司的关联公司间接获得 PK 公司的股份，并得到相关政府的批准。《代理协议》第 3 条约定了代理人应当履行的义务包括：与 PK 公司管理层取得联系，在项目的分析、组织、协商、影响方面协助被代理人，协助被代理人获取信息等。因此，从《代理协议》的约定本身分析，可以得出代理人的代理义务与合同的最终目的并不相同。代理义务的履行过程是实现代理目的的重要保障，通常情况下，代理目的的实现取决于代理人是否按照约定合理、善意的处理

代理事务，但这并不排除，在特殊情况下，即使代理人履行了代理义务，由于不可抗力、被代理人或任何第三方的非归因于代理人自身的因素而导致代理合同的最终目的无法实现。

从委托合同的具体规定来判断，仲裁庭认定，代理人已经履行了代理义务。如前所述，《代理协议》在性质上属于委托合同，我国《合同法》第三百九十九条规定："受托人应当按照委托人的指示处理委托事务。"由此可见，《合同法》关于受托人履行义务的具体规定是"按照委托人的指示处理委托事务"，并非为委托合同目的的实现。从申请人提交的一系列关于履行《代理协议》的相关证据来看，申请人在代理期间完全按照被申请人的指示处理收购 PK 公司的相关事宜，包括期间被申请人放弃竞标，通过协商变更为由中石油集团取得 PK 公司的股权，申请人依然按照被申请人的指示处理后续的转让事宜。被申请人与申请人在中石油集团成功收购 PK 公司股权以后，签署的《延期协议》《第二次延期协议》以及《代理协议补充协议》均表明被申请人实质上认可了申请人代理义务的履行，并且不中断地继续保持双方当事人之间的代理关系，被申请人对于申请人的代理工作并没有异议。从代理义务的履行结果来看，中石油集团正是基于申请人前期履行的代理义务，完成的代理事务，才成功收购了 PK 公司的股权，这也从另一方面说明申请人合理、勤勉地

履行了《代理协议》约定的代理义务，完成了代理事务。

双方当事人提供的证据显示，《代理协议》目的没有实现与申请人的代理行为无关。申请人提交的《发改委纪要》《专题会议纪要》《关于PK项目有关情况的汇报》等内部文件，虽然不能证明"中石油集团公司方面在收购PKZ公司股权的过程中与中石化集团双方已经建立了针对PKZ公司股权收购相关的书面的法律关系，对各自的权利义务划分、风险、责任的承担、金融财务费用的分担等均作了约定（见前案裁决书第71页）。"但足以证明，被申请人没有成功收购PK公司股权的真正原因并非如其所说的，是因为申请人没有协助被申请人取得排他性谈判的地位以及通过协商谈判取得PK公司股权，相反，被申请人是基于自身的原因或第三方的原因，主动放弃了对PK公司股权的收购。

仲裁庭清楚地注意到，本案被申请人系中石化集团的子公司，中石化集团与中石油集团均属于国家国资委管理的特大型国有企业，均必须接受主管部门的管理与指示。本案所涉PK公司的股权收购刚开始本来是由中石化作为收购方，但收购过程中由于国家发改委的介入与协调，最终确定由中石油完成具体的收购工作，且国家发改委的协调会议中明确在中石油完成收购后再将相应的股权比例转让给中石化，或者以其他权益的方式补偿给中石化，而中石油最终实际完成了对PK公司的股权收购，至于其与中石化之间是否按照主

管部门的指示或协调进行了相应的后续股权转让或权益补偿，已经与作为代理人的申请人没有任何关系，更非申请人所能控制或影响的。如果被申请人基于国有企业管理体制的因素而放弃向中石油主张股权转让或者权益补偿，或者主管部门（即第三人）不同意此等股权转让或权益补偿，被申请人以此作为拒绝向作为代理人的申请人支付代理佣金的理由，显然于法无据，于理不合。

综上，仲裁庭认为，申请人已经按照《代理协议》的约定履行了代理义务，完成了代理事务。即使被申请人最终没有实际取得 PK 公司的股权，没有实现《代理协议》的目的，也不能作为否定代理人已经履行代理义务的理由。

4. 关于被申请人是否已经取得 PK 公司股权的认定

申请人在代理意见中提出，被申请人与中石油集团在收购 PK 公司的过程中存在关联关系、属于利益共同体，根据《代理协议》第 2.1 条的约定，中石油作为被申请人的关联公司，其收购 PK 公司股权的完成，应视为申请人于《代理协议》项下的代理义务已全部完成，被申请人的目的已经实现。

前案裁决就这个问题曾做出认定，即："在没有发现明确的证据显示上述两家集团在上述方面存在联合的情况下，仲裁庭不能据此得出本案存在联合竞标或联合收购的结论。"（见前案裁决书第 71 页）否定被申请人与中石油集团在法

律上存在联合竞标或联合收购的关系。《公司法》第二百一十六条第四款规定："关联关系，是指公司控股股东、实际控制人、董事、监事、高级管理人员与其直接或者间接控制的企业之间的关系，以及可能导致公司利益转移的其他关系。但是，国家控股的企业之间不仅因为同受国家控股而具有关联关系。"根据此一规定，首先，被申请人与中石油集团作为国家控股的企业，不因同受国家控股而具有关联关系；其次，前案裁决就此问题已经认定被申请人与中石油集团之间不存在针对 PK 公司股权收购相关的书面的法律关系，申请人也没有提供充分的证据证明被申请人与中石油集团之间存在导致公司利益转移的其他关系。因此，中石油集团与被申请人之间不具备《公司法》第二百一十六条第四款所定义的关联关系。

是故，仲裁庭认为被申请人与中石油集团不存在联合竞标或联合收购的关系，中石油集团也不是被申请人的关联公司，中石油集团收购取得 PK 公司的股权不能视为被申请人已经收购取得 PK 公司的股权。

但是，正如仲裁庭在上一节分析的，尽管中石油集团收购取得 PK 公司的股权不能视为被申请人已经收购取得 PK 公司的股权，但不能因此否认申请人已经履行代理义务、完成代理事务的事实。被申请人系因第三人的原因而未能取得 PK 公司的股权，不能作为对抗申请人代理佣金请求权的依

据。

5. 关于被申请人是否应当支付代理酬金的认定

对此争议，申请人认为，根据前案裁决以及《代理协议》的约定，被申请人都应当向申请人支付代理酬金，并且有义务去促成代理酬金支付条件的成就，被申请人未履行促使条件成就义务的法律后果是条件拟制成就，被申请人应当支付代理酬金。被申请人则认为，根据《代理协议》的约定以及前案生效裁决的认定，被代理人支付代理酬金的条件是被代理人获得 PK 公司的股权，并且被申请人没有促成交易完成和追索 PK 公司权益的义务，而在前案裁决生效后，被申请人至今未获得 PK 公司股权，被申请人不应支付任何代理酬金。此为本案各方争议的焦点，仲裁庭详细分析如下：

（1）根据前案裁决以及《代理协议》的约定，申请人有权利向被申请人主张代理酬金。

仲裁庭在上述关于前案裁决如何认定代理酬金支付问题的分析中已经表明，前案裁决已经肯定了申请人拥有主张代理酬金的权利，只要酬金的支付条件成就，申请人就可以向被申请人主张代理酬金以及由此产生的其他赔偿请求。申请人已经按照《代理协议》的约定完整的履行了协助被申请人收购 PK 公司股权的代理义务，根据合同的等价有偿性，被代理人应当向代理人支付完成代理义务所应得的代理酬金。根据《合同法》第四百零五条规定："受托人完成委托

事务的，委托人应当向其支付报酬。因不可归责于受托人的事由，委托合同解除或者委托事务不能完成的，委托人应当向受托人支付相应的报酬。当事人另有约定的，按照其约定。"因此，即便因为被申请人的原因或任何第三人的原因，导致被申请人没能成功收购 PK 公司的股权，实现代理目的，也应当向申请人支付相应的报酬，即代理酬金。

（2）代理酬金的支付是附条件的，被申请人阻止代理酬金支付条件的成就，代理酬金的支付条件视为已成就。

根据前案裁决以及《代理协议》的约定，代理酬金的支付是附条件的。《代理协议》第 5.1 条约定了代理酬金支付的条件是"在公司确定的心理价位范围内完成交易"，即被代理人获得 PK 公司的股权。前案裁决也认定代理酬金的支付是有条件的，即："仲裁庭从双方在庭审过程中的辩论和其后提交的书面陈词，认定酬金的支付是有条件的。而代理事项即完成交易就是酬金支付应该成就的条件。"（见前案裁决书第 65 页），基于庭审的情况以及被申请人提交的证据，前案裁决进一步认定，代理酬金的支付条件在前案仲裁期内并没有成就，且被申请人没有怠于履行合同义务，阻碍酬金支付条件的成就，即"没有证据表明被申请人是故意怠于履行合同义务、放弃或隐瞒联合竞标收购真相而丧失收购 PKZ 公司股权。"（见前案裁决书第 76 页）

既然代理佣金的支付约定附条件，则条件是否成就的判

断便十分重要。就实现合同目的而言，合同双方当事人均有义务促成条件的成就。而就取得 PK 公司的股权或者获得其他权益补偿而言，条件成就与否已经完全与申请人无关，申请人无法对此实施任何具有决定意义的行为。但被申请人则完全不同，条件的成就与否实际上是完全取决于被申请人的。如果被申请人不去积极争取获得股权或其他权益，或者由于体制的因素而放弃或无法获得股权或者其他权益，甚至怠于行使自己的权利，进而使得约定的支付代理佣金的条件无法成就，则依据相反推定的原则以及参照《合同法》第四十五条第二款规定的立法精神，应当推定条件已经成就。

进一步而言，被申请人有义务促成代理酬金支付条件的成就。被申请人有义务促成代理酬金支付条件成就，即获得 PK 公司股权以完成交易，该义务的合同依据是《代理协议》，《代理协议》第 5.1 条明确约定，在被代理人的心理价位范围内完成交易后，被代理人应当向代理人支付酬金。如上述分析，申请人已经按照《代理协议》的约定履行了代理义务，有权利向被代理人主张完成代理事项所应得的代理酬金，被代理人也有义务支付约定的代理酬金。在正常情况下，被代理人可以通过代理人的代理行为成功收购 PK 公司股权，完成交易，从而满足代理酬金的支付条件。但是，却因为被代理人方面的原因，即被代理人在国家发改委的协调下放弃收购，转由中石油集团竞标获得 PK 公司股权，导致在最后的

交易环节无法由中石化成功收购 PK 公司的股权，使得已经履行了代理义务的申请人因支付条件的不成就而无法获得相应的报酬。因此，被代理人有义务向中石油集团追索 PK 公司的股权或其他权益补偿，从而促成酬金支付条件的成就，该义务来源于被申请人对《代理协议》中约定的支付酬金义务的履行，因为支付条件的成就是被代理人履行支付酬金义务的必要前提。

被申请人怠于向中石油集团追索 PK 公司的股权或其他相关补偿的行为，阻止代理酬金支付条件的成就，代理酬金的支付条件应当视为已经成就。《合同法》第四十五条第二款规定："当事人为自己的利益不正当地阻止条件成就的，视为条件已成就；不正当地促成条件成就的，视为条件不成就。"该条款虽然是对附生效条件合同效力的具体规定，当中的法律拟制针对的是合同效力问题，而本案中代理酬金的支付条件实际上是合同履行的条件，但是根据《合同法》第四十五条第二款背后的法理，该条款可以类推适用于合同的履行条件。《合同法》第四十五条第二款反映了合同生效前法律对当事人期待权的特别保护，以及通过反向推定条件成就或不成就来对恶意当事人进行法律的制裁。无论是合同的生效条件还是合同的履行条件，合同当事人对条件成就的期待权都应当同样的受到法律的保护，一方当事人违背诚信原则恶意侵害另一方当事人期待权的行为都应当受到法律的

否定评价。因此，对于效力条件的反向推定也同样可以适用于履行条件之中。本案中，首先，被申请人不仅未能证明其在前案裁决作出后，曾向中石油集团追索 PK 公司的股权或其他相关补偿，而且在答辩意见以及庭审中明确表明，其没有义务向中石油方面追索 PK 公司股权或者权益并向申请人反馈追索权益的相关情况；其次，被追索方即中石油集团也表明，被申请人从未向其追索过 PK 公司的股权或其他相关补偿，在该公司 2006 年收购中石油集团哈萨克斯坦 PK 项目资产的交易所披露的法定信息中，均没有披露被申请人对 PK 公司拥有的权益。以上证据证明，被申请人应当向中石油集团追索 PK 公司的相关权益而怠于追索，该行为属于不正当地阻止代理酬金支付条件的成就。至于被申请人怠于进行追索的动机和目的则不是法律调整的范围，在无法判定被申请人的主观目的的情况下，只能通过其不正当地阻止支付条件成就的客观行为，推定其主观上是为了自己的利益。因此，根据《合同法》第四十五条第二款的类推适用，仲裁庭认定代理酬金的支付条件已经成就。

鉴于双方当事人没有对被申请人向中石油集团追索 PK 公司的股权或其他相关补偿的期限作出约定，被申请人应当在"合理期间"向中石油集团追索相关权益。根据申请人提供的中石化与中石油集团于 2007 年 5 月 17 日签署的《专题会议纪要》中"双方工作小组以年内完成股权交易为目标"

判断，被申请人对于转让 PK 公司股权所需时间的判断和预估为 7 个月 14 天。该期间可以作为认定"合理期间"的参考依据。因此，代理酬金支付条件的成就时间为，前案裁决作出以后被申请人追索 PK 公司权益的合理期间届满之日，即 2014 年 8 月 14 日。

（3）根据合同的相对性原则，被申请人应当向申请人履行支付代理酬金的合同义务。

假设被申请人没有放弃向中石油集团追索 PK 公司的股权或其他相关补偿，根据合同的相对性原则，被申请人仍应向申请人支付代理酬金。《合同法》第一百二十一条规定："当事人一方因第三人的原因造成违约的，应当向对方承担违约责任。当事人一方和第三人之间的纠纷，依照法律规定或者按照约定解决。"该条款强调了合同的相对性，依法成立的合同对双方当事人都有法律约束力，双方当事人应当按照合同约定向对方当事人履行合同义务或者承担违约责任，除非合同法另有特殊规定，当事人一方因第三人的原因造成的违约，也应当向合同相对方承担违约责任。本案中，申请人已经按照代理协议的约定履行完毕所有的代理义务，被申请人因为政府的内部协调，而与中石油集团协商放弃竞标 PK 公司的股权，转由中石油集团取得 PK 公司股权，导致被申请人最终没能按照合同的约定完成对 PK 公司股权的收购，并且以此为由拒绝向申请人支付合同约定的代理酬金。根据

《合同法》第一百二十一条的规定，被申请人应当向申请人承担违约责任，即强制履行合同项下支付代理酬金的义务。至于被申请人与第三人即中石油集团之间的法律关系，应当按照双方之间的内部约定，另行解决。

综上，仲裁庭认为，被申请人应当向申请人支付《代理协议》约定的代理酬金，且代理酬金的支付条件已经成就。

（五）关于被申请人是否应当赔偿申请人因未被授予代理权而遭受的预期权益损失的认定

申请人认为，中石油集团完成收购后，《代理协议》约定的目的就已经实现，被申请人有义务给予申请人《代理协议》第 7.2 条项下的销售代理权，而现今被申请人未履行或无法履行授予申请人代理权的义务，应当赔偿申请人因未被授予代理权而遭受的预期权益损失；被申请人则认为，《代理协议》第 7.2 条是对交易完成后 PK 原油销售代理事宜的安排，被申请人至今未取得 PK 公司的任何股权，申请人无权主张享有 PK 公司原油在中国以外地区的销售代理权，更无权索要相关的预期利益损失。

仲裁庭认为，被申请人无须赔偿申请人因未被授予代理权而遭受的预期权益损失，理由如下：

被申请人无论是在法律上还是事实上，都无法授予申请人 PK 公司的销售代理权。《合同法》第一百一十条规定："当事人一方不履行非金钱债务或者履行非金钱债务不符合约

定的，对方可以要求履行，但有下列情形之一的除外：（一）法律上或者事实上不能履行；…"《代理协议》第 7.2 条以及《延期协议》《第二次延期协议》中都明确约定，在被申请人取得 PK 公司股权以后，被申请人将授予申请人 PK 公司中国以外地区的原油销售代理权。从协议的约定可以看出，授予申请人原油销售代理权，是在被申请人成功收购了 PK 公司的情况下，对下一阶段双方当事人的法律关系所作的安排，而现在由于被申请人已无法取得 PK 公司的股权，无法对 PK 公司的相关权益作出法律上的处置，双方当事人的权利义务关系只能停留在申请人完成协助收购 PK 公司股权的代理义务，被申请人支付相应酬金的阶段。《代理协议》就销售代理权所做的相关约定，在法律上属于履行不能。销售代理权取得的前提条件是，被申请人收购 PK 公司以后，有管理 PK 公司经营销售渠道的决定权，并通过对 PK 公司的实际经营，才能将其部分销售代理权授予申请人。而申请人和被申请人的证据均显示，此一事实未能发生，在法律上也不可能发生，属于确定的履行不能。因此，被申请人事实上也无法将销售代理权授予申请人。

申请人完成了约定的代理义务，被申请人应当向申请人支付《代理协议》约定的代理酬金，申请人在履行代理义务过程中的所有劳务和费用的付出，都能通过代理酬金得到充足的补偿，因此即使没有授予申请人 PK 公司的销售代理权，

申请人履约的行为也得到了等价且充分的补偿，并不违背合同法的公平原则。

综上，仲裁庭认为，被申请人没有取得 PK 公司的股权，不具备授予申请人 PK 公司中国以外地区的原油销售代理权的可能性，因此，申请人无权向被申请人主张 PK 公司的销售代理权，以及由此产生的预期权益损失。

（六）关于前期已经支付的代理费是否应当抵扣的问题之分析与认定

查系争合同第 5.2 条之约定，被申请人需要向申请人支付代理活动的前期费用，按每月 1 万美元支付。被申请人主张其实际支付了上述前期费用共计 159,898 美元，申请人对此并未提出异议，仲裁庭对此数额予以认可。该条约定的前期费用与后期代理行为完成后的酬金即代理佣金是不同的，前者属于代理人进行代理活动所需的成本费用由被申请人预先支付，与代理活动成功与否无关，后者则以代理活动完成并取得成功为条件。仲裁庭同时注意到，该款最后一句约定：在完成项目交易时本款规定的费用全额冲抵酬金，因此，被申请人向申请人已经支付的费用应当冲抵酬金。尽管被申请人在本案中未就此问题提出反请求或冲抵申请，但是，基于申请人的仲裁请求与该款约定直接相关，该款约定对申请人仲裁请求中代理佣金的数额确定具有重大意义，故仲裁庭认为并不需要被申请人提出仲裁反请求而应当主动依照合

同约定予以冲抵，方合当事人的真实意思表示和诚实信用的合同法原则，故仲裁庭决定应当在申请人请求的酬金21,540,000 美元中扣除此等已经由被申请人支付给申请人的前期费用 159,898 美元，扣除后的酬金为 21,380,102 美元。

（七）关于申请人要求被申请人承担本案项下的律师费用的请求

本案中，申请人的第四项仲裁请求为要求对方赔偿其所支出的所有律师费用，该笔律师费用分别由三部分组成：人民币 300,000 元、港币 259,865 元以及申请人实际获得赔偿部分的 10%。鉴于本案的具体情况，仲裁庭酌定支持申请人实际已经支付和发生的律师费，即人民币 300,000 元、港币 259,865 元。"申请人实际获得赔偿部分的 10%"的律师费并未实际发生，仲裁庭不予支持。

（七）关于本案仲裁费用的负担

申请人的第五项仲裁请求为要求对方承担本案的仲裁费用。仲裁庭基于对仲裁请求的支持情况，酌定本案仲裁费由申请人承担 70%，由被申请人承担 30%。

# 三、裁决

基于上述仲裁庭意见，仲裁庭裁决如下：

（一）确认申请人与被申请人于 2005 年 3 月 4 日签订的

《代理协议》约定的酬金支付条件已经成就；

（二）被申请人向申请人支付《代理协议》项下的酬金21,380,102 美元，及以 21,380,102 美元为本金、自 2014 年 8 月 14 日起至被申请人实际支付日止的利息，利率按照中国人民银行同期贷款利率计算；

（三）被申请人向申请人补偿其律师费人民币 300,000 元、港币 259,865 元；

（四）驳回申请人的其他仲裁请求；

（五）本案仲裁费 848,329 美元，由申请人承担 70%，即593,830.3 美元，由被申请人承担 30%，即 254,498.7 美元。该笔费用由申请人预缴的等额仲裁预付金予以冲抵，被申请人还应向申请人支付 254,498.7 美元以补偿申请人为其垫付的仲裁费。

本裁决为终局裁决，自作出之日起生效。

（以下无正文）

（此页无正文）

首席仲裁员：

仲　裁　员：

仲　裁　员：

二〇一七年六月三十日于北京