# EXHIBIT D

# SPIRIT

## 北京思必锐翻译有限责任公司
### Beijing Spirit Translation Co.,Ltd.

Date: June 29, 2020

To Whom It May Concern:

## COMPETENCY CERTIFICATE FOR LU MIMI

I hereby certify that, it is my belief that, Lu Mimi, translator of Beijing Spirit Translation Co., Ltd. of Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, Chaoyang District, Beijing, China, is competent to translate into English the following documents (in Chinese) delivered to you.

1. Arbitral Award [2013] CIETAC BJ AWARD NO. 0907 ([2013] 中国贸仲京裁字第 0907 号裁决书)
2. Civil Ruling (2017) Jing 04 Civil Special No. 39 ((2017)京 04 民特 39 号民事裁定书)

Your faithfully

*Lu Mimi*

He Xue

Managed of Translation Department

Beijing Spirit Translation Co., Ltd.

# SPIRIT

北京思必锐翻译有限责任公司

Beijing Spirit Translation Co.,Ltd.

Date: June 29, 2020

To Whom It May Concern:

## COMPETENCY CERTIFICATE FOR LU MIMI

I, Lu Mimi, translator of Beijing Spirit Translation Co., Ltd. of Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, Chaoyang District, Beijing, China, hereby certify that the English translations of the documents listed below (in Chinese) are, to the best of my knowledge and belief, correct and accurate translations.

1. Arbitral Award [2013] CIETAC BJ AWARD NO. 0907 ([2013] 中国贸仲京裁字第 0907 号裁决书)
2. Civil Ruling (2017) Jing 04 Civil Special No. 39 ((2017)京 04 民特 39 号民事裁定书)

Your faithfully

*He Xue*

Lu Mimi

# SPIRIT

## 北京思必锐翻译有限责任公司

### Beijing Spirit Translation Co.,Ltd.

**QUALIFICATION CERTIFICATE FOR LU MIMI**



| 姓名：<br>Full Name | 鲁弥弥 | 语种：<br>Language | 英语 |
|---|---|---|---|
| 性别：<br>Sex | 女 | 资格级别：<br>Qualification Level | 二级笔译<br>Translator Level II |
| 出生年月：<br>Date of Birth | 1991年01月 | 专业类别：<br>Professional Type | |
| | | 批准日期：<br>Approval Date | 2015年05月24日 |



Authorized by<br>China Foreign Languages<br>Publishing & Distribution Administration

签发单位盖章<br>Issued by

签发日期：2016年4月21日<br>Issued on



编号：<br>No.  14002970

# SPIRIT

## 北京思必锐翻译有限责任公司

### Beijing Spirit Translation Co.,Ltd.

*Below is the translation of the above Qualification Certificate for Lu Mimi:*

Full name: Lu Mimi

Sex: Female

Date of Birth: January 1991

Language: English

Qualification Level:Translator Level II

Professional Type:



(Official Seal of China Foreign Language
Publishing & Distribution Administration)

Implementation and Management Department
for China Accreditation Test for Translators
and interpreters

No.:14002970



Issued by:

Beijing Municipal Human Resources and
Social Security Bureau
Special Seal for Professional Title (1)

Issued on: April 21,2016

# People's Republic of China
# Beijing No. 4 Intermediate People's Court
# Civil Ruling

(2017) Jing 04 Civil Special No. 39

Applicant: Sinopec International Petroleum Exploration and Production Corp.

Place of Residence: No. 263, North Fourth Ring Road Central, Haidian District, Beijing, China

Legal Representative: LI, Yong, General Manager

Represented by: DAI, Yue, King & Wood Mallesons

Represented by: LIU, Lingyun, King & Wood Mallesons


Respondent: UNI-TOP Asia Investment Limited

Place of Residence: OMC Chambers, RoadTown, Tortola, British Virgin Islands

Person in charge: LAU, Fong, Director

Represented by: XING, Yuan, Beijing Huanzhong & Partners

Represented by: WANG, Xuehua, Beijing Huanzhong & Partners


The dispute between the applicant Sinopec International Petroleum Exploration and Production Corporation (hereinafter "SIPC") and the respondent UNI-TOP Asia Investment Limited (hereinafter "UNI-TOP") was filed on 24 July 2017 and has been heard.   The case is now closed.

Applicant SIPC submits and requests: set aside the China International Economic and Trade Arbitration Commission's (hereinafter "CIETAC") arbitration award (2017) CIETAC BJ AWARD No.

[*Page 2 of Chinese Original*]

0836; the costs of this application to set aside be borne by UNI-TOP.

Facts and Reasons: the arbitration award (2017) CIETAC No. 0836 (hereinafter the "Award") is tainted with conditions justifying its set aside under Article 70 of the People's Republic of China Arbitration Law (hereinafter "Arbitration Law") and Article 274 of the People's Republic of China Civil Procedure Law (hereinafter "Civil Procedure Law"), it should be set aside in accordance with law.

1, CIETAC did not serve the procedural documents including the request for arbitration to SIPC, leading to SIPC's loss of its appointed arbitrator and notification of the first hearing, the constitution of the tribunal and the arbitration procedure were not in accordance with CIETAC Rules (2015) (hereinafter the "Arbitration Rules").

The Award states that CIETAC delivered the request for arbitration, the notice on the constitution of the tribunal and the notice of the first hearing (hereinafter "Request for Arbitration"), to SIPC at the address UNI-TOP provided in the request for arbitration in accordance with Article 8 of the Arbitration Rules.   However, when delivering the Request for Arbitration, CIETAC only relied on the information intentionally misrepresented by UNI-TOP, and wrongly listed the first receiver as "ZHANG Yaocang" and ZHANG Yaocang ceased being the SIPC's legal representative in 2014 and was subject to investigation at the specified time and location by the disciplinary investigation agency (hereinafter "Disciplinary Action"), whose letters were under specific restriction.   ZHANG Yaocang was not the legal representative or employee of SIPC at the time of the arbitration.   The abovementioned circumstances led to the treatment of the Request for Arbitration as personal letters of ZHANG Yaocang, and therefore undelivered to SIPC.

Information on SIPC's legal representative is public and easily accessible, ZHANG Yaocang's

[*Page 3 of Chinese Original*]

Disciplinary Action was widely reported in 2015, and the listing of third party ZHANG Yaocang as the recipient of the Request for Arbitration by CIETAC is an obvious error.   UNI-TOP only submitted SIPC's correct industry and commerce registration record at the first hearing, CIETAC's documents were subsequently received by SIPC.   With respect to this, SIPC visited CIETAC on August 10, 2016, raised a procedural objection to the tribunal subsequently, and requested the arbitral proceedings be terminated and to set a new deadline for the appointment of arbitrators.   However, knowing that there was no proper service, the tribunal still refused SIPC's procedural objection, infringing SIPC's fundamental and central procedural right in appointing an arbitrator.   To avoid further loss of substantive rights, SIPC was forced to attend the second hearing in accordance with the tribunal's request, expressly reserving its rights to raise procedural objections.

In conclusion, CIETAC's listing of unrelated personnel as "recipient" caused the most important procedural document in this arbitration to be sent to the wrong recipient and, due to an error that cannot be attributed to SIPC, SIPC objectively never received the Request for Arbitration and was unable to appoint an arbitrator and attend the first hearing.   The arbitration procedure of this case obviously contravenes the regulation of Article 70 of the Arbitration Law and Articles 274(2) and (3) of the Civil Procedure Law.

2, CIETAC's acceptance of UNI-TOP's Request for Arbitration for the same dispute and the tribunal's repeat decision based on UNI-TOP's identical request violate the principle of "final and binding award" and the Arbitration Rules, according to Article 70 of the Arbitration Law and Article 274(3) of the Civil Procedure Law, the Award should be set aside.

Article 9 of the Arbitration Law provides: "*a system of final and binding award shall apply to arbitration.*

[*Page 4 of Chinese Original*]

*If a party applies for arbitration to an arbitration commission or institutes an action in a people's court regarding the same dispute after an arbitration award has been rendered, the arbitration commission or the people's court shall not accept the case.*" Article 49 of the Arbitration Rules on "Making of Award" provides: "… (9) The arbitral award is final and binding upon both parties. Neither party may bring a lawsuit before a court or make a request to any other organization for revision of the award".

But in this case, UNI-TOP filed a CIETAC arbitration based on the "Agency Agreement" in this case on August 30, 2012, requesting SIPC to pay the commission, and to compensate it for loss of expected profits, and a tribunal made the award (2013) CIETAC No. 0907 on December 30, 2013 (hereinafter "Previous Award"), rejecting all of UNI-TOP's requests (hereinafter the "Previous Arbitration", together with the arbitration involved in this case as the "Arbitrations"). After the award in the Previous Arbitration, CIETAC still accepted UNI-TOP's Request for Arbitration for the same dispute, and the tribunal made a repeat award on UNI-TOP's claims in the arbitration, obviously in contravention of *res judicata* and the procedural regulation of "final and binding award" in the Arbitration Rules.

The Award holds, UNI-TOP's Request for Arbitration in this case is based on new facts that arose after the Previous Arbitration award, i.e. that SIPC's delayed submission of evidence with respect to the shareholding or other rights of China National Petroleum Corporation Group ("CNPC") in Kazakhstani Petro Kazakhstan Company (hereinafter "PK") should be treated as "new facts" justifying relitigation under Supreme People's Court's Interpretation of the People's Republic of China Civil Procedure Law (hereinafter "Civil Procedure Interpretation"). Therefore, UNI-TOP's Request for Arbitration is not within the scope of the "final and binding award" principle.   SIPC submits, such argument obviously fails:

[*Page 5 of Chinese Original*]

Firstly, the award in the Previous Arbitration already held, the commission was payable after the acquisition of PKand after the transfer and change of shareholding …… SIPC did not obtain shareholding or related rights in PK, the objective of the Agency Agreement was not achieved, UNI-TOP's request for SIPC to perform the obligation lacks legal and contractual basis …… before SIPC obtains shareholding or related compensation in PK, UNI-TOP's claim for commission lacks legal basis.   According to those holding, regardless of whether SIPC was delaying its attempt to enforce its rights or obtain compensation from CNPC after the award in the Previous Arbitration, so long as there was no transfer of PK's shareholding or compensation, the commission was not payable.   As such, the award in the Previous Arbitration held that UNI-TOP may only request the payment of commission after SIPC has received PK's shareholding, the "new facts" as outlined in the Award are not only not established, they cannot form the basis for a request for the commission and right of the sales agent, it also cannot modify or affect the results in the Previous Arbitration, and cannot be used by the tribunal as a basis to go outside the "final and binding award" principle in the Arbitration Rules.

Secondly, after the award in the Previous Arbitration comes into effect, there were no "new facts".   The alleged "delayed submission" actually took place before the award of the Previous Arbitration, and parts of the factual basis for that submission existed before UNI-TOP filed for the Previous Arbitration. UNI-TOP argued in the Previous Arbitration that SIPC's delayed submission to CNPC was a bad faith attempt at hindering the satisfaction of the condition to the payment of commission.   The submission that the condition to payment had been satisfied according to the People's Republic of China Contract Law (hereinafter "Contract Law") and similar arguments had been heard and entirely rejected in the Previous Arbitration.   These are not within the scope of "new facts" under Article 248 of the Civil Procedure Interpretation, and should not be re-adjudicated in the current arbitration in question.   Although the award in the Previous Arbitration did find that SIPC

[*Page 6 of Chinese Original*]

was trying to enforce its rights and was not giving up on requesting compensation, this was only to rebut UNI-TOP's erroneous argument that SIPC delayed or gave up on enforcing its rights. This certainly does not mean that the award in the Previous Arbitration held that if SIPC was delaying its efforts in enforcing its rights, such would constitute a satisfaction of the condition precedent to the payment of commission.

Thirdly, the holding of the award in the Previous Arbitration was "reject all of the applicant's requests", and not that SIPC had an obligation to enforce its rights or request compensation against CNPC.    Thus, the Award misinterpreted and misread the award in the Previous Arbitration by re-arbitrating SIPC's "delayed submission" to enforce its rights or request compensation against CNPC.

Finally, in the Previous Arbitration, the arbitral tribunal had already adjudicated and confirmed that the shareholding in PK related to the dispute was obtained by CNPC in August 2005, the Agency Agreement was terminated on 31 December 2008, and the condition precedent to the payment of commission was not satisfied within the contractual period.    At the time of the award in the Previous Arbitration, all facts that could affect the condition precedent to the payment of commission under the Agency Agreement had already happened.    According to the parties' agreement under the Agency Agreement, the parties' obligations within the contractual period and the situation after the termination of the agreement, the award in the Previous Arbitration confirmed that if SIPC did not obtain the shareholding in PK or any other compensation, there is no obligation to pay the commission to UNI-TOP, the "new facts" established in the Award are inconsistent with the fundamental holding of the award in the Previous Arbitration.

3, the substance of the Award is in conflict with the award in the Previous Arbitration, it completely overrules the holding of the award in the Previous Arbitration, contravenes the fair and reasonable principle under Article 7 of the Arbitration Law and the good faith principle under Article 9 of the Arbitration Rules, is not in accordance with law and the arbitral procedural requirements under the Arbitration Rules, according to Article 70 of the Arbitration Law and Article 274(3) of the Civil Procedure Law, the Award should be set aside.

(First) Issues related to SIPC's obligations under the Agency Agreement.

[*Page 7 of Chinese Original*]

In accordance with Articles 3 and 4 of the Agency Agreement, the award in the Previous Arbitration held that UNI-TOP's agency business included the assistance of SIPC to obtain the project, SIPC's obligation was to provide information with respect to the confirmation of a reasonable target price, to provide reasonable recommendation, to refrain from engaging another consultant and to pay the commission in accordance with the contract, and confirmed that such agreement "is not contrary to the requirements under the Contract Law that a commission agreement is an agreement between a principal and an agent whereby the agent agree that the agent will handle the principal's affairs in accordance with the principal's instructions".

However, the Award holds, with respect to the attainment of the contractual objective, both parties have an obligation to ensure that the condition precedents are satisfied.   With respect to obtaining the shareholding or related rights in and compensations of PK, the satisfaction of the condition precedent is wholly unrelated to UNI-TOP, it could not act in any material way, the satisfaction of the condition precedent wholly depends on SIPC.

SIPC submits, the Award directly modified the holding in the award in the Previous Arbitration, making no sense at all.   According to the related requirements on agency agreements under the Contract Law, the agent is obliged to act on agency business, the principal has no such obligation.   The Agency Agreement in this case is a commission agreement, Sinopec, as the principal, has no obligation to conduct agency business, i.e. the facilitation of the closing of the transaction or to enforce its rights or obtain compensation from CNPC. According to Articles 2.1 and 3 of the Agency Agreement, UNI-TOP, as the agent, is obliged to assist SIPC in obtaining the shareholding in PK, SIPC is also not contractually obliged to close the transaction and to enforce its rights against CNPC.

Article 410 of the Contract Law provides "*Either the principal or the agent may discharge the commission agreement*", the principal thus enjoys an unfettered right to discharge an agency agreement according to law, in this case, Sinopec, as the principal, enjoys an unfettered right to discharge the Agency Agreement according to law.   According to the Agency

[*Page 8 of Chinese Original*]

Agreement Articles 2.2 and 8.1, Sinopec is entitled to abandon or terminate the acquisition project.   As such, not only is Sinopec not obliged to ensure the satisfaction of the condition precedent, it enjoys the unfettered contractual and legal right to terminate the Agency Agreement.

(Second)      Issues related to the condition precedent to payment of commission.

The award in the Previous Arbitration held, "the commission is payable after the completion of the acquisition of PK and after the transfer and change of shareholding", "according to the agreement in the Agency Agreement, regardless of how much work was conducted by UNI-TOP in the shareholding acquisition in this case, it cannot change the fact that Sinopec did not obtain PK's shareholding or related rights and compensation as it hoped in the Agency Agreement", "Sinopec Company did not obtain the shareholding or related rights in PK, the objective of the Agency Agreement was not attained, UNI-TOP's request for Sinopec to perform the obligation under the contract lacks legal and contractual basis", "before Sinopec in fact receives PK's shareholding or related rights and compensation, UNI-TOP's request for payment of the commission lacks legal basis".

However, the Award argues, according to Articles 399 and 405 of the Contract Law, if the agent performed the obligation in the agency business, and yet due to actions of third parties unrelated to the agent, the principal was unable to obtain the contracted rights or entitlements, the agent is subjectively not blameworthy, such cannot affect or negate the agent's right to claim for commission against the principal; i.e. because of actions of SIPC or any third party, which prevent SIPC from being able to obtain shareholding of PK and to accomplish the agency objective, it should still pay the commission to UNI-TOP; whether CNPC obtained the relevant shareholding transfer or rights compensation in accordance with the instruction or facilitation of the Development and Reform Commission is unrelated to UNI-TOP as the agent, which UNI-TOP cannot

[*Page 9 of Chinese Original*]

control or affect, SIPC cannot logically use this as an excuse to refuse to the commission to UNI-TOP.

SIPC submits, according to the regulation of Article 405 of the Contract Law, upon completion of the agency business by the agent, the principal shall pay the remuneration thereto. Where the agency agreement is terminated or the agency business is not capable of being completed due to any reason not attributable to the agent, the principal shall pay the agent an appropriate amount of remuneration.   If the parties agree otherwise, such agreement shall prevail.   The remuneration agreed in the Agency Agreement in this case is factually divided into two parts, namely early stage disbursement and commission.   Among them, both parties to the agreement agreed that SIPC shall pay the agent USD 10,000 per month from the date of the agreement to the abandonment of the project as early stage disbursement, and agreed that any early stage disbursement paid shall be fully setoff in the commission.   At the same time, because the parties recognise the uncertainty in closing the transaction, to encourage the agent to actively perform agency business in attaining the objective of the agreement, the Agency Agreement provides that Sinopec shall pay an commission to the agent that is pegged to the transaction price after the close of the transaction.   The Award also finds: "early stage disbursement and the commission for subsequent agency conducts are different, the former concerns the costs of the agent's agency business prepaid by SIPC, unrelated to whether the agency business was successful or not, the latter is premised on the completion and success of the agency business." Therefore, whether UNI-TOP completed the agency conduct in accordance with the contract, without regard to whether a third party caused SIPC to fail to obtain the shareholding of PK, or whether UNI-TOP was subjectively to blame, so long as SIPC was unable to obtain the shareholding of PK, it should not pay the contractual commission.   The abovementioned holding in the Award is not only in direct contradiction with the award in the Previous Arbitration, it is also entirely violates the parties' autonomy and contractual agreement, it distorts the basic facts and legal provisions, and is completely untenable.

In fact, SIPC is the principal under the Agency Agreement, the obligee of

[*Page 10 of Chinese Original*]

the relevant agency business.   UNI-TOP is the agent under the Agency Agreement, the obligor of the relevant agency business.   SIPC's obtainment of the shareholding of PK according to the terms of the contract in the period of the contract is the objective of the Agency Agreement, it is a sign of UNI-TOP having completed the agency business, the condition precedent for SIPC to pay the commission.

(Third)  Issues related to whether SIPC delayed recourse against CNPC with respect to the shareholding of PK on the satisfaction of condition precedent to the payment of commission.

The award in the Previous Arbitration did not adopt UNI-TOP's submission that SIPC's delayed recourse against CNPC to enforce its rights was a bad faith attempt to prevent the satisfaction of condition precedent to the payment of commission, and thus according to the Contract Law, the condition precedent to payment had been satisfied. This clearly confirms: from a practical perspective, for SIPC as a corporation, from the angle of corporate management and the pursuit of profit for the company, the abandonment of the possibility to obtain huge profits just to avoid responsibility of paying the commission is ridiculous.   UNI-TOP's allegation that SIPC delayed enforcing or abandoned its rights is illogical.

However, the Award holds, SIPC should have claimed against the CNPC to recover the shareholding of PK and related rights after the award of the Previous Arbitration, such constitutes improperly hindering the satisfaction of the condition precedent to the payment of commissions.

SIPC submits, the Award's holding that SIPC delayed pursuing its rights or compensation against the CNPC, constituting improper hinderance of the satisfaction of condition precedent, thus according to Article 45 of the Contract Law the condition precedent should be deemed to have been satisfied is illogical:

Firstly, the premise on which the Award finds against SIPC that it delayed pursuing its rights or compensation against CNPC must be that SIPC owes such duty.   However, SIPC as the principal, whether in accordance with the relevant legal provisions, or in accordance with the Agency Agreement, is commercially autonomous, it has the unfettered right to terminate the project of acquiring PK, it does not have to

[*Page 11 of Chinese Original*]

close the acquisition without regard to costs, it is not subject to the restrictions and limitations of UNI-TOP, such cannot constitute a delayed recourse to enforce its rights or obtain compensation. For the purpose of its self-interest, including the commission, UNI-TOP attempted to "kidnap" the principal SIPC, in bad faith to "drive" the principal SIPC to complete agency business that should have been completed by the agent, which completely reverses the cause and effect.

Secondly, Article 45 of the Contract Law provides, the parties may agree that the effectiveness of a contract be subject to certain conditions.   A contract whose effectiveness is subject to certain conditions shall become effective when such conditions are accomplished ……  If a party improperly prevent the satisfaction of a condition for its own interests, the condition shall be regarded as having been accomplished.   According to the Opinion of the Legislative Affairs Commission of the Standing Committee of the National People's Congress on Article 45 of the Contract Law, such article applies to contracts that come into force upon the accomplishment of certain conditions, it is not applicable to the parties' agreed payment condition. The Agency Agreement in this case does not contain terms affecting the effectiveness of the contract, the condition precedent to the payment of commission is a payment condition, Article 45 of the Contract Law is fundamentally inapplicable.

Finally, even if the requirements under Article 45 of the Contract Law were applicable, the Award's holdings cannot stand:

1.   The first premise of the application of the second paragraph of Article 45 of the Contract Law is that one party must have "improperly" prevented the satisfaction of a condition precedent, there must a failure to comply with an obligation on that party to cause the satisfaction of a condition to constitute "improper" in law.   SIPC as the principal in the Agency Agreement, not only has no contractual or legal obligation to pursue CNPC to enforce its rights or seek compensation after the award in the Previous Arbitration, it enjoys the unfettered legal and contractual right to terminate the PK project, UNI-TOP cannot oblige SIPC to perform the obligations it has agreed to perform as the agent under the Agency Agreement.   Therefore, the fact that SIPC did not seek to

[*Page 12 of Chinese Original*]

negotiate the share transfer with CNPC after the coming into force of the award in the Previous Arbitration, is not a breach of contract, and is not illegal, it is completely reasonable and proper, it did not improperly prevent the satisfaction of the condition precedent for its own interest.

2.   The second premise for the application of the second paragraph of Article 45 of the Contract Law is that one party must have acted "for its own interest" to prevent the satisfaction of condition precedent.   From a factual perspective, SIPC has never obtained any benefit from UNI-TOP's work, if it does not pursue its rights and compensation against CNPC, it is only abandoning its own interest, it cannot be for its own interest.   Furthermore, as alleged by UNI-TOP, CNPC obtained enormous interest since its successful bid of PK's shareholding, net profit in 2007 and 2008 amounted to over USD 6 billion respectively, in fact SIPC would not abandon the enormous interest in PK's shareholding to avoid the commission in this case, it would not have stopped pursuing its rights against CNPC for its own interests.

3.   The third premise for the application of the second paragraph of Article 45 of the Contract Law is that one party must "prevent" the satisfaction of a condition precedent, it mainly means that the party for its own interests, in situations where it could perform the contractual obligations, prevent the satisfaction of the condition precedent through various active measures in bad faith.   However, SIPC never refused to accept its rights in PK, it even tried to communicate with CNPC, there is simply no actions of the alleged prevention of the satisfaction of condition precedent.

4.   UNI-TOP did not complete its obligations under the Agency Agreement, it did not assist SIPC to successfully negotiate and obtain the shareholding in PK.   The award in the Previous Arbitration holds, "there is no concrete evidence showing CNPC and SINOPEC established legal relationship on paper on PK in the process of acquiring the shareholding in PK".   After the successful bid of the CNPC, although SINOPEC assisted the negotiation on the transfer of the shares in PK, but finally did not

[*Page 13 of Chinese Original*]

enter into enforceable contract with CNPC.   From this, although SIPC tried to pursue CNPC, but it could not obtain the shareholding in PK or other related rights.   Thus, the condition precedent to the payment of commission remains unsatisfied, it has no causal relationship with SIPC.

5.   SIPC's obtainment of the shareholding in PK, is both the condition precedent to the payment of commission, and also the main contractual obligation of UNI-TOP.   Even if SIPC delayed pursuing the shareholding in PK, it cannot be regarded as UNI-TOP having performed its contractual obligations under the Agency Agreement, it also cannot be regarded as SIPC having obtained the benefit of the agency relationship, it cannot be regarded as the satisfaction of the condition precedent of the commission.

Furthermore, there exists a fourth reason to set aside the Award, namely it exceeded the scope of the arbitration agreement, in contravention of Article 70 of the Arbitration Rules [sic] and the requirements under Article 274(4) of the Civil Procedure Law.   The Award recognises that SIPC enjoys contractual rights with the third party CNPC, however, CNPC is a third party, not a party to the dispute, there is no arbitration agreement, thus the Award exceeded the scope of the arbitration agreement.

In conclusion, because SIPC's rights to appoint its arbitrator was not given to it, and CIETAC accepted UNI-TOP's Request for Arbitration on adjudicated facts in the Previous Arbitration, and the tribunal contravened the principles of fairness, reasonableness and good faith without bases in fact and law, the Award should be set aside in accordance with the Arbitration Law and Civil Procedure Law, SIPC requests the court to set aside the Award immediately, to protect SIPC's legitimate rights.

UNI-TOP submits, SIPC's submissions and requests are not in accordance with the facts and lack legal basis, and cannot stand at all, there is no ground to set aside the Award in this case.

[*Page 14 of Chinese Original*]

SIPC's application to set aside is a bad faith attempt to delay the execution of the arbitration Award, UNI-TOP respectfully requests the court to refuse SIPC's application and to protect UNI-TOP's legitimate rights at the same time.

The substantive reasons are as follows:

First, as shown in the arbitration procedural documents in this case, the arbitration documents were legally served on SIPC.   The service process of the CIETAC arbitration documents is entirely in in compliance with law and the Arbitration Rules, SIPC should bear the adverse consequences of its own failure to exercise its procedural rights including the right to appoint arbitrator within the time limit.   SIPC has expressly represented to the tribunal during the arbitration that it has no objection to the constitution of the tribunal.

SIPC's submission that "CIETAC did not serve the procedural documents including the request for arbitration to SIPC, leading to SIPC's loss of its appointed arbitrator and notification of the first hearing, the constitution of the tribunal and the arbitration procedure were not in accordance with the Arbitration Rules", is clearly contradicted by fact.

(First)   With respect to issues related to the service of documents and appointment of arbitrator, SIPC had raised identical objections in the arbitration proceedings, because its objections cannot stand, CIETAC refused all of them.

In this case, CIETAC sent the Request for Arbitration on April 18, 2016, properly served on April 20, 2016; the notice of the constitution of the tribunal on June 1, 2016, properly served on June 4, 2016; the notice of the first hearing on June 23, 2016, properly served on June 25, 2016. After the service of the abovementioned documents, SIPC did not appoint an arbitrator, did not respond, and also did not attend the hearing.

After the first hearing on August 2, 2016, SIPC submitted a response dated August 15, 2016 Re: Request for Re-service, appoint arbitrator, and terminate arbitration proceedings of

[*Page 15 of Chinese Original*]

Arbitration No. E20160333 (hereinafter "Procedural Objection Letter").   In that letter, SIPC requests: 1. Re-serve all documents related to the arbitration on SIPC; 2. Re-grant SIPC a time limit for arbitrator appointment; 3. Terminate the pending arbitration proceedings in relation to this case.   After receiving the Procedural Objection Letter, UNI-TOP submitted its Rebuttal Opinion on Respondent's Procedural Objection and Related Documents dated 30 August 2016, rebutted SIPC's submissions in detail, pointed out that SIPC's submission with respect to not having received the arbitration documents was a blatant lie, and attached the delivery invoice and receipt record of CIETAC's service of the arbitration agreements as evidence.   At the same time UNI-TOP also pointed out that SIPC was in breach of CIETAC's Arbitration Rules and the principle of good faith, SIPC should bear the adverse consequences.   SIPC's requests for re-service of documents, reappointment of arbitrator and the termination of arbitration proceedings should not be supported.

Subsequently, SIPC submitted its Re: Response Opinion on Respondent's Procedural Objection and Related Documents dated September 14, 2016.   In this opinion, SIPC admits, it "had not objected to the record of proper service, recipient or delivery address", this means that SIPC admits to having received all arbitration documents in this case.   On September 27, 2016, UNI-TOP submitted its Comments and Opinion on Re: Response Opinion on Respondent's Procedural Objection and Related Documents, pointing out that given SIPC admits to having received all arbitration documents, "if your respected institution agrees to allow the respondent to reappoint an arbitrator, the procedure in this case will be in serious contravention of law and Arbitration Rules, and is extremely unfair to the applicant, the objective under Article 7 of the Arbitration Law where 'disputes shall be resolved on the basis of facts, in compliance with the law and in an equitable and reasonable manner' will not have been achieved, such is a violation of the laws and rules.   If the arbitration institution allows the respondent to restart the arbitration including the reappointment of arbitrators, the respondent

[*Page 16 of Chinese Original*]

and your respected institution will put on a show of the story of 'the farm and the viper', which cannot negate the possibility of the respondent applying to the People's Court alleging that the arbitration procedure was illegal and not in compliance with the rules to set aside the Award", and stressing that "fairness is the premise for any arbitration, even if the respondent is a state-owned enterprise, it must still respect the law and has no special authority outside the law."

On October 12, 2016, CIETAC in Notice (2016) CIETAC No. 038481 made the following decisions: "CIETAC had already served the Notice of Arbitration, the applicant's Request for Arbitration, Notice of Tribunal's Constitution, Notice of Hearing etc. and all letters and related materials to the respondent in accordance with the Arbitration Rules. From the records of the delivery company, the respondent had signed and sealed to confirm receipt of the abovementioned documents. Therefore, the respondent's requests to re-serve documents, reappoint arbitrators and to terminate the proceedings are rejected, the arbitration procedure shall continue".

Subsequently, SIPC submitted a Re: Response to Notice (2016) CIETAC No. 03841 dated November 11, 2016, stating that it "lost the fundamental and important right to appoint arbitrator in these arbitral proceedings", "was unable to know the content of the applicant's Request for Arbitration, its evidence and the subsequent supplementary evidence", "reserves the right to further object to the arbitration procedure".

With respect to this, on November 15, 2015, CIETAC made its Notice (2016) CIETAC No. 043674, pointing out that SIPC's submission that "the respondent was unable to know the content of the applicant's Request for Arbitration, its evidence and the subsequent supplementary evidence" does not stand.

Specifically on the untrue allegations of SIPC, UNI-TOP submitted its Comments and Opinion on the Respondent's Re: Response to Notice (2016) CIETAC No. 03841 dated November 11, 2016,

[*Page 17 of Chinese Original*]

pointing out that all arbitration documents had been validly served, CIETAC's decision is in line with the Arbitration Rules, in compliance with PRC law, and completely correct.   SIPC's alleged reservation of rights has no factual or legal basis.   In addition, after receiving all arbitration documents, SIPC still refused to participate in the arbitration procedure, instead it unreasonably requested for the re-service of arbitration documents, reappointment of arbitrators and termination of arbitration proceedings only after the first hearing, this is a blatant attempt at delaying proceedings, to achieve its unstated objective.

On December 23, 2016, CIETAC held the second hearing.   In the arbitration, after questioning by the tribunal, SIPC represented that it had no objections to the constitution of the three-member tribunal.

Although UNI-TOP has already rebutted SIPC's abovementioned submissions in detail in the arbitration, for the purposes of factual clarity and the convenience of the court's decision, it sets out the rebuttal to SIPC's submissions summarily below.

(Second)    In accordance with the Arbitration Rules and PRC law, the arbitration documents in this case have been served on SIPC and SIPC has admitted to receiving these documents.

In this arbitration, CIETAC used express courier to deliver the Notice of Arbitration to SIPC's place of business (Building 1, A6 Huixin Dong Street, Chaoyang District, Beijing City), the courier properly delivered the documents.   The Award has also confirmed, the abovementioned documents have been properly served on SIPC.

The SIPC also unambiguously represented in the arbitration that it had no objection to the delivery record, recipient or delivery address.   This means that SIPC admits to having received all arbitration documents in this case.

According to Article 8(3) of the CIETAC Arbitration Rules, "Any arbitration correspondence to a party or its representative(s) shall be deemed to have been properly served on the party if

[*Page 18 of Chinese Original*]

delivered to the addressee or sent to the addressee's place of business, place of registration, domicile, habitual residence or mailing address…", all arbitration documents in this case have been properly served.

Separately, the delivery record shows that SIPC had properly received all arbitration documents sent by CIETAC, the records bear SIPC's receipt seal.   According to Article 9(3) of the Supreme People's Court's Several Provisions on the Service of Civil Process by Post in the Manner of Special Delivery by Court, "if any of the following circumstances exists, service is deemed proper: …… (3) if the recipient is a legal person or other organization, the service documents were signed and received by its legal representative, the organization's main person-in-charge or employees at the office, mail room, or duty office; ……", SIPC has already sealed the delivery record of CIETAC's express courier, the documents have been properly served on SIPC.

Separately, in the arbitration proceedings, SIPC states in the Procedural Objection Letter, "on the courier document No. 1014139410120, we requested the courier to redeliver it to Sinopec Group".   If this representation is true, according to Article 9(5) of the Supreme People's Court's Several Provisions on the Service of Civil Process by Post in the Manner of Special Delivery by Court, "if any of the following circumstances exists, service is deemed proper: …… (5) signed and received by the alternative recipient as instructed by the intended recipient; ……", SIPC designated Sinopec Group as the alternative recipient, Sinopec Group received the document, thus there was equally valid service.

(Third)   Despite admitting to having properly received all of the abovementioned documents served by CIETAC, SIPC's position that it objectively never received the documents including the Notice of Arbitration because they were addressed to ZHANG Yaocang, during the investigations on ZHANG Yaocang, and as such his letters were subject to special restriction, is a misrepresentation of fact, a pure smoke screen and cannot stand.

1. The courier receipt shows that CIETAC was the sender and the recipient was "ZHANG Yaocang

[*Page 19 of Chinese Original*]

/ Legal Representative / Main Person-in-Charge / Other Person-in-Charge", the arbitration number, document number and the title of the document (for example, Notice of Arbitration, Notice of the Constitution of the Tribunal, Notice of Hearing etc.) are all marked on the documents, they are also marked "Important Documents", it is obvious that the letter was an official letter addressed to SIPC, not a personal letter to ZHANG Yaocang.

2. Not only was ZHANG Yaocang listed as an addressee, the courier's delivery note also listed the "legal representative", "main person-in-charge", "other person-in-charge", if ZHANG Yaocang was no longer the legal representative of SIPC, its new legal representative, main person-in-charge, other person-in-charge are also copied in the abovementioned arbitration documents.   How SIPC dealt with the arbitration documents after it has been served does not change the fact that it has been validly served.

3. One party in the arbitration in this case is the legal entity of "Sinopec International Petroleum Exploration and Production Corporation", not natural persons like "ZHANG Yaocang / Legal Representative / Main Person-in-Charge / Other Person-in-Charge".   Once SIPC has signed for and received the abovementioned documents from CIETAC, service is deemed proper on those documents.   Whether the natural persons abovementioned have personally reviewed these documents is irrelevant to whether the documents have been validly served.   Therefore, there is no legal basis to argue that because the abovementioned natural person's "letters are subject to specific limitations" due to the "disciplinary actions", there was no valid service.

(Fourth) In this arbitration, SIPC was afforded adequate opportunity to present its opinion, there is no case that SIPC was deprived of the rights to appoint arbitrators.   SIPC represented in the second hearing that it has no objection to the constitution of the tribunal.   After receiving the procedural documents such as the notice of arbitration etc., SIPC did not respond within the time limit, did not participate in the hearing, these are its own abandonment on the procedural rights in the arbitration, it should bear the adverse consequences itself.   CIETAC's rejection of SIPC's alleged procedural objections is reasonable and legal.   Furthermore, SIPC's submissions cannot stand as CIETAC and the tribunal arranged for the second hearing to fully afford SIPC

[*Page 20 of Chinese Original*]

the opportunity to present its case.   SIPC also represented that it had no objection to the constitution of the tribunal, using its inability to appoint arbitrator as a basis to set aside the Award is a blatant excuse.

In conclusion, on the issue of service of documents and arbitrator appointment, there is completely no circumstances that the arbitration procedure was not in accordance with the Arbitration Rules as SIPC suggests, SIPC's ground to set aside the award cannot stand.

Second, the tribunal's Award is based on "new facts" after the award in the Previous Arbitration, it does not contravene the principle of "final and binding award", and whether the Award contravenes the principle of "final and binding award" is an issue within the tribunal's jurisdiction on the merits, it is not a ground to set aside the Award.

SIPC submits that "CIETAC's acceptance of UNI-TOP's Request for Arbitration for the same dispute, and the tribunal's repeat decision based on UNI-TOP's identical request, violate the principle of "final and binding award" and the Arbitration Rules, according to Article 70 of the Arbitration Law and Article 274(3) of the Civil Procedure Law, the Award should be set aside." Such submission seriously lacks factual and legal basis and cannot stand.

(First)   The decision on the principle of "final and binding award" is within the tribunal's jurisdiction on the merits, it is not within the jurisdiction of the People's Court in deciding whether to set aside the Award.

According to Article of the Arbitration Law, "A system of final and binding awards shall be applied in arbitration. If a party applies for arbitration to an arbitration commission or institutes an action in a people's court regarding the same dispute after an arbitration award has been made, the arbitration commission or the people's court shall not accept the case", whether there is a violation of a "final and binding award" necessitates an assessment of whether the awards are on the "same dispute".   The assessment of whether they are on the "same dispute" is an assessment that needs to be conducted by the tribunal after a consideration of the Request for Arbitration, the facts of the case, evidence, hearing etc., this is obviously within the tribunal's jurisdiction on the merits of the case.

[*Page 21 of Chinese Original*]

In the implementation of relevant PRC laws, the People's Court has held, the assessment of whether the parties' requests in the arbitration violate the "final and binding award" principle is an issue within the tribunal's jurisdiction on the merits, not within the People's Court's jurisdiction in assessing whether the Award should be set aside.   SIPC's submission that a violation of the "final and binding award" principle constitutes grounds to set aside under Article 70 of the Arbitration Law and Article 274(1)(3) of the Civil Procedure Law is contrived and cannot stand.

In the application to set aside an arbitral award in Feng Qiao v. Beijing Ruibaoli Thermotech Co. Ltd. ((2016) Jing 03 Min Te No. 302), the Beijing City Third Intermediate People's Court clearly states, "in relation to Feng Qiao's submission that his claims in (2012) Jing Arbitration Zi No. 0809 is not the same request in this case, and not based on identical facts, is not a violation of the 'final and binding award' system in the Arbitration law, the tribunal held that the case was a violation of the 'final and binding award' system, because the tribunal's decision on whether there was a violation of the 'final and binding award' system is based on the evidence submitted by the parties and the assessment of the situation at the hearing, such issue is within the tribunal's jurisdiction on the merits in this case, not within the People's Court's jurisdiction in deciding whether to set aside the award.   Feng Qiao cannot rely on this as a ground to apply to set aside the arbitral award, the court does not accept this submission".

On this, SIPC's application to set aside the award on the basis of the 'final and binding award' principle is unsupported, and should be rejected.   But to further clarify the facts, to point out that SIPC's objective in bad faith delaying the enforcement of the Award, UNI-TOP summarily set out its rebuttal against SIPC's submission that the Award violates the "final and binding award" principle below.

(Second)     The decision on the principle of "final and binding award" is within the tribunal's jurisdiction on the merits,

[*Page 22 of Chinese Original*]

it is not within the jurisdiction of the People's Court in deciding whether to set aside the Award. The tribunal in this case has held, UNI-TOP's requests are based on new facts that occurred after the award in the Previous Arbitration, are not re-arbitration, are not violations of the regulation of the "final and binding award" principle.   The tribunal's decision is completely correct.

SIPC has made the submission that UNI-TOP is requesting arbitration for the same dispute, in violation of the "final and binding award" principle and *res judicata* principle in documents including the Statement of Defence and Agent's Opinion.   The reasoning is completely identical in its Application to Set Aside the Arbitral Award.

UNI-TOP has rebutted SIPC's submission in detail, on the basis of the facts in the case in conjunction with the relevant laws in its Applicant's Agent's Opinion.   UNI-TOP submits that there is no violation of the principles of "final and binding award" and *res judicata*.

On this point, the arbitral tribunal in this case held: "The underlying principle of the final and binding award system is the *res judicata* principle, because the Civil Procedure Law and other relevant judicial interpretations have developed substantive rules on the application of such principle, regard should be had to the Civil Procedure Law and relevant judicial interpretations on the understanding and applicability of such principle in relation to the Arbitration Law", and additionally held, "although the parties, subject matter, and requests in the arbitration is fundamentally the same as in the Previous Arbitration, the applicant's requests in this arbitration are based on facts that occurred after the award in the Previous Arbitration, namely that the respondent delayed recourse and submission of relevant evidence against CNPC on the shareholding in PK or other related rights, such constitutes as "new facts" under Article 248 of the Civil Procedure Interpretation justifying re-litigation of the issue.   The applicant's requests in the arbitration raised in this arbitration do not violate the *res judicata* principle, not within the scope of the principle of

[*Page 23 of Chinese Original*]

'final and binding award', the tribunal decides that it has jurisdiction over this case".

From the abovementioned factual background, SIPC's submissions on the violation of the principle of "final and binding award" cannot stand, and had been rejected by the tribunal in this case.   Furthermore, both parties and the tribunal relied on a lot of facts and legal support in the arguments on whether there were violations of the "final and binding award" and *res judicata* principles.   The assessment of that issue is blatantly an issue of the merits, not a ground to set aside an award.

(Third)   Despite the tribunal finding that UNI-TOP's requests in the arbitration in this case are based on facts that occurred after the award in the Previous Arbitration, not in contravention of the regulations on "final and binding award", SIPC's Application to Set Aside the Award maintains that no new facts occurred after the award in the Previous Arbitration.   SIPC's submissions on this issue is completely erroneous.   A comparison between this and the Previous Arbitration shows that new facts clearly occurred after the award in the Previous Arbitration.

SIPC submits, on the issue of whether the condition precedent should be deemed to have been satisfied because SIPC's delayed enforcement of its rights constitute bad faith attempts to prevent the satisfaction of the condition, the Previous Arbitration had already completely rejected this argument, and there were no "new facts" in this arbitration.   This submission is erroneous.

A comparison of the two arbitrations show that new facts clearly occurred after the award in the Previous Arbitration.

The tribunal in the Previous Arbitration held, UNI-TOP is entitled to request SIPC to pay the commission in accordance with the Agency Agreement, but held that the condition for payment had not been satisfied, and that SIPC did not delay its performance of contractual obligations to prevent the satisfaction of the condition for the payment of commission, it therefore did not support the applicant's request for the payment of commission according to the Agency Agreement at that time.

The decision of the arbitral tribunal in this case is based on the holding of the award in the Previous Arbitration and facts that occurred after the award in the Previous Arbitration, the tribunal held that SIPC "delayed the enforcement of its rights or other relevant compensation in relation to the shareholding in PK against CNPC,

[*Page 24 of Chinese Original*]

prevented the satisfaction of the condition for the payment of commission, the condition for the payment of commission shall be deemed to have been satisfied".

Obviously, the tribunals in the two arbitrations made their factual findings on whether there was delayed enforcement of rights on the basis of the factual background and relevant evidence with respect to the period prior to the award in the Previous Arbitration, and the period after the award in the Previous Arbitration respectively.   Facts that occurred after the award in the Previous Arbitration are obviously "new facts".

Third, a conflict between the Award and the award in the Previous Arbitration cannot form the basis of a violation of the principles of reasonableness, fairness and good faith, it is an issue on the merits of this dispute, within the tribunal's jurisdiction based on the relevant facts and law, there can be no ground to set aside the award, let alone there is simply no such conflict between the two arbitrations as alleged by SIPC.

SIPC submits, "the substance of the Award is in conflict with the award in the Previous Arbitration, it completely overrules the holding of the award in the Previous Arbitration, contravenes the fair and reasonable principle under Article 7 of the Arbitration Law and the good faith principle under Article 9 of the Arbitration Rules, is not in accordance with law and the arbitral procedural requirements under the Arbitration Rules, according to Article 70 of the Arbitration Law and Article 274(3) of the Civil Procedure Law, the Award should be set aside", such submission is completely without legal and factual support.

(First)   The tribunals in the two arbitrations, on the basis of facts, adjudication in the case, and correctly applied law, made their decisions.    No circumstances exist in contravention of the arbitral procedure or the Arbitration Rules, the awards in the two arbitrations are also not contradictory.

(Second)     Whether the two arbitrations are in conflict is an issue on the merits in the arbitration, completely irrelevant to the regulations on the arbitration procedure under Article 274(3) of the Civil Procedure and the Arbitration rules.

(Third)  Regardless of whether the substance of the two awards are in conflict, the tribunal in this arbitration

[*Page 25 of Chinese Original*]

did not violate the principles of reasonableness, fairness and good faith.

First, the opinion of the tribunal in the award in the Previous Arbitration is not per se binding on the current arbitration.

Second, there is no support to SIPC's submission that a conflict between the two awards constitutes the violation of the principles of fairness and reasonableness.   The fair and reasonable principle is under Article 7 of the Arbitration Law, or the CIETAC Arbitration Rules, specifically Article 35(1) of the Arbitration Rules that "The arbitral tribunal shall examine the case in any way it deems appropriate unless otherwise agreed by the parties. Under all circumstances, the arbitral tribunal shall act impartially and fairly and shall afford a reasonable opportunity to both parties to present their case."   Such principle concerns the arbitration procedure, it is unrelated to the substance of the award on the merits.

Third, there is no support for SIPC's submission that a conflict between the two awards constitutes a violation of the good faith principle.   Article 9 of the CIETAC Arbitration Rules provides, "Arbitration participants shall proceed with the arbitration in good faith."   Thus, the subject matter of the good faith principle is the arbitration procedure, it is unrelated to the substance of the award on the merits.

Fourth, in this case, on the basis of fact and law, in compliance with the good faith principle, the tribunal's objective and fair award was made ultimately, after affording the parties fair treatment and ample reasonable opportunity to present their case.

Thus, SIPC's submission that "a conflict between the two arbitration awards" constitutes a violation of the reasonableness, fairness and good faith principles cannot stand at all and should be rejected.   But for the sake of clarity, and to point out the ulterior motive in bad faith delaying the enforcement of the Award, UNI-TOP summarily rebuts SIPC's submission that the two awards are in conflict below.

(Fourth)There is no conflict between the two awards in this case as alleged by SIPC.

[*Page 26 of Chinese Original*]

1. The two awards both recognize that the Agency Agreement is an agency contract, SIPC is obliged to pay UNI-TOP the commission and is obliged to facilitate the satisfaction of the condition to the payment of the commission, there is no conflict as alleged by SIPC.

Because the award in the Previous Arbitration characterizes the Agency Agreement as an agency contract, SIPC submits, as the principal, it has no obligation to complete agency business, namely that it has no legal or contractual obligation to facilitate the completion of the transaction or to enforce its rights against CNPC.   And because the tribunal in this case held that SIPC has an obligation to facilitate the satisfaction of the condition, such is a modification to the award in the Previous Arbitration.   SIPC's submission is nothing but a sleight of hand, misrepresenting the facts.

First, the tribunals in the two arbitrations both confirm that the Agency Agreement is an agency contract.

Second, the tribunal in the Previous Arbitration did not find that SIPC has no obligation to complete agency business and no obligation to facilitate the transaction or to enforce its rights against CNPC.   This submission is a subjective speculation of SIPC.   On the contrary, the tribunal in the Previous Arbitration recognises that SIPC has an obligation to seek to recover the shareholding of PK or compensation against CNPC, and subsequently assessed whether it was delaying its efforts in such recovery.

2. The holdings of the tribunals in the two arbitrations are not in conflict in relation to the issue of the condition for the payment of the commission.

SIPC submits, the award in the Previous Arbitration finds that the condition for the payment of commission is that SIPC "in fact receives PK's shareholding or related rights and compensation", and the Award in this case, that regardless of whether the cause was SIPC or some other third party, leading to the need to pay the commission to UNI-TOP despite SIPC not having in fact received the shareholding in PK and not having achieved the objective of the agency, conflicts with the award in the Previous Arbitration.   In fact, the awards in the two arbitrations are not in conflict on the assessment of the condition for the payment of the commission.

First, the tribunals in the two arbitrations both confirm that the condition for the payment of commission is that SIPC

[*Page 27 of Chinese Original*]

receives PK's shareholding or related rights and compensation.

Second, the Award in this case confirms, after the award in the Previous Arbitration, SIPC did delay the enforcement of its rights, preventing the satisfaction of the condition in bad faith, the condition should be deemed satisfied.

Third, on the basis of the abovementioned holdings, the tribunal in this case assumes, even if SIPC did not delay the enforcement of its rights, in situations where UNI-TOP has already completed the agency business, and the non-satisfaction of condition was caused by a third party, SIPC should be responsible for the breach, namely to pay the commission.   Obviously, the tribunal having made this decision in this case does not mean that it modified the finding of the award in the Previous Arbitration on the condition for the payment of the commission.

3. The holdings of the tribunals in the two arbitrations are not in conflict in relation to the issue of whether SIPC delayed the enforcement of its rights.

As described above, the award in the Previous Arbitration is based on the adjudication and evidence in the Previous Arbitration, finding that prior to the award in the Previous Arbitration, SIPC did not delay the enforcement of its rights.   But the Award in this case is based on facts and evidence after the award in the Previous Arbitration, finding that SIPC did delay the enforcement of its rights after the award in the Previous Arbitration, preventing the satisfaction of the condition for the payment of commission in bad faith.   There is no conflict between the two.

Furthermore, UNI-TOP notices that there is extensive coverage on "Article 45 of the Contract Law is inapplicable, even if applicable, the holdings in the Award cannot stand" at pp 8-10 of SIPC's Application to Set Aside an Arbitration Award.   Such submission blatantly cannot stand.   On this, UNI-TOP has already rebutted in detail in its Respondent's Agency Opinion, the Award in this case has also carefully addressed such arguments at pp. 41-45.   At the same time, considering that this is an issue on the merits, not a ground to set aside an award, UNI-TOP will not repeat its submissions here.

In conclusion, UNI-TOP submits, SIPC's request to set aside the arbitration Award

[*Page 28 of Chinese Original*]

lacks factual and legal bases, no situations justifying its setting aside under Article 70 of the Arbitration Law and Article 274 of the Civil Procedure Law exist in relation to the Award, and respectfully requests the court to refuse the application for setting aside.

Finding after review that, on March 4, 2005, SIPC and UNI-TOP entered into the Agency Agreement, under which SIPC appointed UNI-TOP and UNI-TOP so agreed to be appointed as SIPC's exclusive agent to assist SIPC in acquiring the shares of PK, in accordance with applicable laws and regulations, directly or indirectly through SIPC's affiliated companies, and in obtaining relevant government approvals for the acquisition (hereinafter "Completion of the Transaction"). The Agreement was effective for 2 years.   Upon Completion of the Transaction, UNI-TOP would cease to act as an agent for PK in transporting crude oil produced by PK to the Chinese market and would not charge commissions thereon.   For sales outside China in respect of crude oil produced by PK, both parties agreed to appoint UNI-TOP as a sales agent on terms to be separately agreed.

Both parties agreed that any dispute arising from the Agency Agreement shall be submitted to a three-member CIETAC tribunal in Beijing according to its relevant rules. The arbitration proceedings shall be conducted in Chinese.   The agreement shall be governed by PRC law.

Subsequently, the way the acquisition of PK was conducted shifted to the public-bidding process.   On August 15, 2005, CNPC won the bid of 100% shares of PK at US$ 4.18 billion. On October 26, 2005, the abovementioned acquisition was approved by a Canadian court and completed.

On July 5, 2006, the Kazakhstani Government exercised its legal preemptive right, CNPC sold 33% of to the JSC National Company Kazmunaigaz.   CNPC possessed 67% of PK's shares.

On March 2, 2007, SIPC and UNI-TOP executed the Extension Agreement,

[*Page 29 of Chinese Original*]

according to which the parties agreed to extend the term of the Agency Agreement to March 6, 2008 as required by the project.

On May 17, 2007, CNPC and SINOPEC signed the Special Meeting Minutes, according to which CNPC and SINOPEC agreed to organize a working group to handle the transfer of PK's shares.

On March 14, 2008, SIPC and UNI-TOP signed the Second Extension Agreement.   Article 7.2 of the Agency Agreement was revised as follows: for crude oil produced by PK to be sold outside China, both parties agree that SIPC shall, on terms to be agreed separately, entrust UNI-TOP as a sales agent.   The term of the Agency Agreement was extended to December 31, 2008. On June 13, 2008, the parties executed another Extension Agreement; and signed the Supplemental Agreement at the same time, which additionally provided that UNI-TOP shall assist SINOPEC in coordinating with the Kazakhstani Government.

Situations related to the first arbitration.

On August 30, 2012, UNI-TOP applied for arbitration at CIETAC.   The claims in the arbitration were: SIPC to pay US$ 17,049,000 as agency commission, loss of US$ 14,586,366.67 as interest due to late payment (provisionally calculated as at August 31, 2012 at annual interest rate of 14%), loss of anticipated profit, loss deriving from the exchange rate, attorney fees, and costs of arbitration.

On February 6, 2013, UNI-TOP amended its claims by requesting SIPC to pay US$ 21,540,000 as agency commission, loss of US$ 16,934,628.33 as interest due to late payment (provisionally calculated as of August 31, 2012), and US$ 27,760,000 as loss of anticipated profits.   Meanwhile, UNI-TOP requested SIPC to continue to perform the Agency Agreement and to grant UNI-TOP the agency right of selling PK's crude oil outside China.

The award in the Previous Arbitration held that: CIETAC had jurisdiction over the dispute. PRC law should apply as stipulated in the agreement.   The Agency Agreement was valid.   Both parties had standings to participate in the arbitral proceedings.   UNI-TOP's requests were not outside of

[*Page 30 of Chinese Original*]

the statute of limitations.   The nature of the Agency Agreement was a commission contract under the Contract Law.   The tribunal found that the payment of the commission was conditional.   The condition for the payment of commission was the Completion of the Transaction.   The parties expressed no objection to such finding.   The tribunal determined: whether the objective of the Agency Agreement was achieved depends only on whether the parties to the agreement achieved the expected results in the signed version of the Agency Agreement.   Without support of concrete evidence, any expanded or extended interpretation of the contract would not be accepted by the tribunal.   As of today, there is no concrete evidence showing that, in the course of the acquisition of PK, CNPC and SINOPEC established a written legal relationship in respect of the acquisition of PK, specifying allocation of rights and obligations, undertaking of risks and responsibilities, sharing of financing fees etc.   Although there are indications that SINOPEC made a claim or claims against CNPC for its right after CNPC completed the acquisition of PK, without clear evidence of collusion between the two abovementioned companies, the tribunal could not conclude there was a joint bid or joint acquisition.

No matter how much work UNI-TOP did in the acquisition, SIPC did not acquire PK's shares or alternative compensation in accordance with the Agency Agreement. The purpose of the Agency Agreement was not achieved.   There are no legal or contractual bases to require SIPC to perform its contractual obligation.

As to whether SIPC delayed to exercise /obtain its right and interest or had given up its right and interest, both parties admitted the fact in the hearing that SIPC had made claims against CNPC in respect of the acquisition, and SIPC stated that it did not give up efforts in pursuing such interest against CNPC.   As a corporation, SIPC, from the perspective of corporate management and the pursuit of the best interest, giving up huge economic interest available to it simply to evade its obligation to pay commission to UNI-TOP

[*Page 31 of Chinese Original*]

is extremely absurd.

UNI-TOP's allegation that SIPC delayed exercising or had given up on its right was illogical and lacked factual support.

In summary, the tribunal did not believe that the condition for payment of the agency commission provided under the Agency Agreement was satisfied.   Until SIPC actually obtained the rights and interests in relation to the acquisition of the PK shares or compensation on those rights and interests, the tribunal could not support UNI-TOP's claim for commission due to lack of legal basis.   Yet, after SIPC actually obtained rights and interests in relation to the acquisition of the PK shares or compensation on those rights and interests, UNI-TOP would be entitled to claim for the commission and SIPC would be obliged to pay such commission under the Agency Agreement.   Therefore, the tribunal was not able to support UNI-TOP's other claims under the Agency Agreement which were based on the claim for the agency commission.

On December 30, 2013, the CIETAC tribunal made its award dismissing all of UNI-TOP's claims in the arbitration.

Situations related to the second arbitration.

On September 30, 2015, UNI-TOP applied for another CIETAC arbitration.   The ground alleged by UNI-TOP was that there were new facts after the first arbitration. The so-called "new facts" referred to: on February 2, 2015, UNI-TOP's appointed attorney wrote to SIPC and SINOPEC demanding disclosure of whether they had made claims after the Previous Arbitration, and on the same day, UNI-TOP's appointed attorney wrote to CNPC demanding disclosure of its negotiation with SIPC with respect to the PK project.

Between August and October 2015, Hong Kong law firm Tony Kan & Co. thrice wrote to PetroChina Company

[*Page 32 of Chinese Original*]

Limited, pointing out that the PK project-related assets held by PetroChina involved SINOPEC's rights and interests, and PetroChina should disclose and explain the fact that SINOPEC had rights and obligations in the PK project.   PetroChina replied that it had satisfied the legal requirement for disclosure when acquiring the PK project in 2006 and there was no information that should be disclosed but hadn't been disclosed.

UNI-TOP submitted that the said reply showed that SIPC delayed the performance of obligations under the Agency Agreement since 2006, never claimed for PK's shares or other compensation against CNPC, deliberately prevented the satisfaction of the condition for payment to UNI-TOP.

UNI-TOP's claims in the arbitration were: 1. To declare that the condition for the payment of the commission under the Agency Agreement entered into between UNI-TOP and SIPC on 4 March 2005 had been satisfied; 2. To order SIPC to pay the agency commission under the Agency Agreement in an amount of US$ 21,540,000 and the overdue interest until the date of actual payment, from August 14, 2014 to August 14, 2016 as US$ 3,239,715.42 (50% above the benchmark lending rate of the People's Bank of China); 3. To order SIPC to compensate loss of the sales agency in an amount of US$ 133,634,359.5 under the Agency Agreement; 4. To order SIPC to bear the attorney fees including: RMB 300,000, HK$ 259,865, and 10% of the amount of the compensation UNI-TOP receives from SIPC; 5. To order SIPC to bear all of the arbitration costs; and 6. To order any other relief the tribunal may consider appropriate.

On April 18, 2016, the CIETAC delivered the Notice of Arbitration and its attachments, together with the Request for Arbitration, a copy of the CIETAC Rules and CIETAC's Panel of Arbitrator, to SIPC through EMS [China Post Express Mail Service], informing SIPC of the acceptance of the case and requiring SIPC to nominate an arbitrator.   The address of the recipient was Building 1, A6 HuiXin Dong Street, Chaoyang District, where SIPC was domiciled. The name of the recipient was "ZHANG, Yaocang, the legal representative/other person in charge, Tel: 010-69165136",

[*Page 33 of Chinese Original*]

the content of the parcel was "Request for Arbitration and Attachments", the sender was "Xinmin Cui (Tel: 010-82217788), CIETAC".   On June 1, CIETAC sent the Notice of Constitution of the Arbitral Tribunal.   On June 23the CIETAC sent the Notice of Hearing.   Both notices were delivered to the same address as mentioned above, and the names of the recipient remained the same as well.

The abovementioned letters were shown as properly delivered, with SIPC mail room's signature and seal.   SIPC said that its mail room did receive the documents at that time, but argued that as the recipient was ZHANG, Yaocang, who had already retired from SINOPEC, the abovementioned documents were returned to the EMS personnel to be diverted by them to SINOPEC.   SIPC did not in fact receive and review the abovementioned materials.   On April 18, 2016, when CIETAC sent the documents to SIPC, ZHANG, Yaocang was not the legal representative, the main person in charge, other person in charge, or employee of SIPC. ZHANG, Yaocang had retired from SINOPEC and was detained and interrogated due to violations of the party's disciplines.   The above-mentioned mails were taken into consolidated custody by the general office of SINOPEC.

On August 3, 2016, CIETAC sent SIPC a post-hearing letter and the Notice of Arbitration Fees.   The recipient was: FENG, Zhiqiang / the legal representative/ other person in charge. This letter was received by SIPC.   SIPC subsequently raised a procedural objection to CIETAC, requesting the termination of proceedings, re-service of process, and re-appointment of arbitrators.   The request was rejected by the tribunal.

On December 23, 2016, the tribunal held the second hearing.   Representatives of both sides attended the hearing and made submissions.   After the tribunal's inquiry, SIPC confirmed that it had no objection towards the constitution of the tribunal, but reserved its objections to the arbitral procedure.

The Award held:

1.   Regarding whether this case violated the "final and binding award" principle

Although the parties, the subject matter of the dispute, and the arbitration claims in this case were nearly the same as those of the Previous Arbitration, UNI-TOP's claims in this case were based on the facts that occurred after the award in the Previous Arbitration, namely SIPC delayed claiming for the PK shares and other relevant rights

[*Page 34 of Chinese Original*]

and interests against CNPC.   Such facts and relevant evidence should be regarded as "new facts" under Article 248 of the Judicial Interpretations of the Civil Procedure Law. UNI-TOP's claims in this arbitration do not violate the *res judicata* principle, not within the scope of the "final and binding award" principle.   The tribunal decided to hear this case.

2.   Decision on whether SIPC should pay the agency commission to UNI-TOP

The award in the Previous Arbitration did not deny UNI-TOP's right to claim for the agency commission against SIPC when the condition for such payment is satisfied in the future.   The expiration of the Agency Agreement did not affect SIPC's obligation to pay the agency commission.   UNI-TOP already performed its obligations as the agent in accordance with the Agency Agreement.   UNI-TOP was entitled to claim for the agency commission against SIPC. The payment of the commission was conditional.   The condition should be deemed satisfied since SIPC prevented the satisfaction of the condition.   Article 45(2) of the Contract Law is substantively application to circumstances where there was a condition for the validity of a contract. In the present case, the condition for the payment of agency commission was a condition for performance of a contract.   However, based on the legal reasoning behind Article 45(2) of the Contract Law, Article 45(2) could be applied to a condition for performance of a contract by analogy.   Article 45(2) of the Contract Law reflects the specific protection of the legitimate expectation of the parties, as well as to impose sanctions against any party acting in bad faith by presuming satisfaction of a condition.   Regardless of whether the condition precedent is to the validity of the contract or to the performance of contractual obligations, the legitimate expectation of the contractual parties should be equally safeguarded by law.   SIPC delayed its recourse against CNPC for its relevant rights in relation to PK, and therefore it improperly prevented the satisfaction of the condition for the payment of the commission.   Applying Article 45(2) of the Contract Law by analogy, the tribunal found that the condition for the payment of the commission should be deemed satisfied. Separately, according to the doctrine of privity of contract, SIPC

[*Page 35 of Chinese Original*]

shall perform the contractual obligations of paying UNI-TOP the commission of US$ 21,540,000 in accordance with the agreement.

3. The tribunal found that SIPC do not need to compensate UNI-TOP for loss of the anticipated profit arising from the failure to grant the agency right.

4. Regarding whether the upfront fees which had been paid shall be set off against the commission to be paid by SIPC

According to the stipulations of the Agency Agreement, the upfront fees shall be fully set off against the commission at the Completion of the Transaction.   Despite SIPC not having raised a counterclaim or a set off request on this issue, UNI-TOP's claims in the arbitration are directly related to that stipulation, that provision is of significant impact to determine the amount of the commission claimed by UNI-TOP, the tribunal does not need SIPC to file a counterclaim and should proactively set off the upfront fees of US$ 159,898.

On June 30, 2017, CIETAC issued its award ([2017] CIETAC BJ AWARD NO. 0836) holding that: (i) the condition for the payment of the agency commission under the Agency Agreement entered into between UNI-TOP and SIPC on March 4, 2005 had been satisfied; (ii) SIPC shall pay UNI-TOP the agency commission under the Agency Agreement of USD 21,380,102 and overdue interest arising therefrom and calculated from August 14, 2014 till the date of the actual payment with the applicable interest as the benchmark lending interest rate published by the People's Bank of China; (iii) SIPC shall compensate UNI-TOP the legal fees in amounts of RMB 300,000 and HK$ 259,865; (iv) rejecting the other claims raised by the UNI-TOP; (v) that the total arbitration fee was of US$ 848,329, 70% of which, i.e., US$ 593,830.30, shall be borne by UNI-TOP, while 30% of which, i.e., US$ 254,498.70, shall be borne by SIPC. Such a fee shall be set off against the advance on costs paid by UNI-TOP, and SIPC shall separately pay US$ 254,498.7 to UNI-TOP to make up for the arbitration fee paid in advance by SIPC [*sic*] on its behalf.

[*Page 36 of the Chinese Original*]

This court holds that UNI-TOP is an enterprise registered outside the People's Republic of China, so the award in question is a foreign-related award made by the CIETAC according to its foreign-related arbitral procedure.   According to Paragraph 3, Article 1 of the Provisions regarding Jurisdiction of the Beijing No.4 Intermediate People's Court issued by the Beijing Higher People's Court, the Beijing No.4 Intermediate People's Court shall have jurisdiction over the following cases: … (3) cases where a claimant applies to confirm the validity of an arbitration agreement or to set aside an arbitral award (excluding employment disputes).   Therefore, this court has jurisdiction over the current case.

As to foreign-related awards, Article 70 of the PRC Arbitration Law provides that "*if a party presents evidence proving that a foreign-related arbitral award involves one of the circumstances set forth in Paragraph 1, Article 260 of the Civil Procedure Law (now Article 274 of the amended Civil Procedure Law in 2012), a people's court shall, after examination and verification by a collegial bench, rule to set aside the award.*" Paragraph 1, Article 274 of the PRC Civil Procedural Law (2012 version) provides that "*where a respondent proves any of the following circumstances, a people's court shall, upon examination and verification by a collegial bench, issue a ruling not to enforce the award: (1) the contract between the parties does not include an arbitration clause or after disputes arose the parties have not reached any written arbitration agreement; (2) the respondent is not notified of the appointment of arbitrators or the arbitral proceedings, or the respondent fails to present its case due to the reason that is not attributable to the respondent; (3) the composition of the arbitral tribunal or the arbitration procedure does not conform to the arbitration rules; and (4) the matters arbitrated are outside the scope of the arbitration agreement, or the arbitral institution has no authority to arbitrate.*"   These provisions prescribe the legal grounds for a people's court to set aside a foreign-related award.

[*Page 37 of Chinese Original*]

In relation to the setting aside circumstances in this case, there are two focused questions: the first is whether the service procedure violates the Arbitration Rules, i.e., whether the respondent SIPC was not notified of the appointment of arbitrators and the arbitral proceedings or for reasons which SIPC is not responsible, unable to present its case; the second is whether the arbitration in dispute violates the "final and binding award" principle in Article 9 of the PRC Arbitration Law, i.e., whether the matters arbitrated are outside the scope of the arbitration agreement, or whether the arbitral institution has no authority to arbitrate.

1.  Regarding the issue of service

According to the Arbitration Rules, any arbitration correspondence to a party or its representative(s) shall be deemed to have been properly served on the party if delivered to the addressee or sent to the addressee's place of business, place of registration, domicile, habitual residence or mailing address.   CIETAC delivered the arbitration documents to SIPC's domicile through EMS before August 2018.   The arbitration documents were received by the mail room of SIPC, and the postal receipt showed successful delivery.   Although ZHANG, Yaocang was not the legal representative or person in charge of SIPC at that time, the arbitration documents were properly served on SIPC when they were delivered to SIPC's domicile or place of business based on the CIETAC arbitration rules.   Therefore, whether SIPC believed that the arbitration documents were ZHANG, Yaocang's private letters or whether SIPC actually reviewed the arbitration documents do not affect the legality of service.   This court concludes that the service procedure complies with the regulations of the Arbitration Rules.

2.  Regarding whether the award in dispute violates the "final and binding award" principle

Article 9 of the PRC Arbitration Law provides that "*a system of final and binding arbitral award shall apply to arbitration. If a party applies for arbitration to an arbitration commission or institutes an action in a people's court regarding the same dispute after an arbitration award has been rendered, the arbitration commission or the people's court shall not accept the case. If the arbitration award is set aside or is order not to enforce by a people's court in accordance with the law, the parties may, in accordance with a new arbitration agreement between them in respect of the dispute, apply for arbitration or initiate legal proceedings with the people's court.*" According to this provision, the "final and binding award" principle shall be enforced, with respect to "the same dispute", once it has been adjudicated in an arbitration and

[*Page 38 of the Chinese Original*]

an award is made, arbitration requests based on that dispute shall no longer be accepted.   The core issue is how to assess "the same dispute". Courts may refer to the principle of *res judicata* and its elements in Article 247 of the Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law and analyze from three aspects, i.e., the parties, the subject matter, and the arbitration claims.

Firstly, the analysis of whether the two arbitrations is "the same dispute" is as follows:

First, as to the parties, the parties in the award in the Previous Arbitration and the Award in this arbitration are the same, i.e., UNI-TOP and SIPC.   Second, as to the subject matter, both arbitrations have the same subject matter.   UNI-TOP's arbitration claims in both arbitrations arose from the Agency Agreement dated March 4, 2005, the subsequent Extension Agreement and the Supplemental Agreement, which all belong to the principal-agent relationship.   Third, as to the arbitration claims, the claims in two arbitrations were basically the same.   The core content of UNI-TOP's claims in the two arbitrations were the commission of US$ 21,540,000 under the Agency Agreement, the respective interests and the loss of the anticipated profit.

Second, whether UNI-TOP's allegation that SIPC delayed in exercising its claims against CNPC for relevant rights and interests constitutes "new facts."   According to the standard set forth in the Civil Procedural Law, assessment on "new facts" mainly depends on whether such "new facts" have created rights and obligations between the parties and whether such rights and obligations created by the "new facts" are subject to a decision in a previous adjudication. Consulting the abovementioned standard, in this case, according to the provisions of the Agency Agreement, the condition for the commission is a condition for the performance of the contract, which is "upon completion of the transaction within the anticipated price range ascertained by SIPC".   The objective standard of the Completion of the Transaction has been confirmed by the effective award in the Previous Arbitration, i.e. SIPC "actually acquires" PK's shares or other rights and interests.   As there is no legal conduct to satisfy the condition,

[*Page 39 of Chinese Original*]

so the issue of satisfaction of a condition does not arise, and there can be no issue with respect to whether the condition was "deemed satisfied".   SIPC has not "actually acquired" PK's shares or other rights and interests, there is no new change to the "rights and responsibilities" between UNI-TOP and SIPC since the award in the Previous Arbitration.   Therefore, there is no "new facts" after the award in the Previous Arbitration.

In addition, the issue of whether the two arbitrations fall within the meaning of "the same dispute" under the Arbitration Law can be addressed through procedural review of the parties, the subject matter at issue, and the arbitration claims.   Such review does not fall within the scope of the merits of the arbitration.

In light of the above, the two arbitrations are "the same dispute," but CIETAC made two awards on December 30, 2013 and June 30, 2017 respectively.   This situation clearly violates the "final and binding award" principle under Article 9 of the Arbitration Law.   The Award shall be set aside.

According to the Relevant Provisions of the Supreme People's Court on Issues concerning Applications for Verification of Arbitration Cases under Judicial Review, this court reported to the Beijing Higher People's Court with respect to the proposal to set aside the award in dispute, and then the Beijing Higher People's court reported the same to the Supreme People's Court. After review, the Supreme People's Court rendered its Reply to Request for Instructions on Sinopec International Petroleum Exploration and Production Corporation's Application to Set Aside an Arbitral Award Rendered by the China International Economic and Trade Arbitration Commission, the responses are as follows: first, based on the facts stated in the request for instructions, on August 30, 2012, UNI-TOP filed a request for arbitration with CIETAC against SIPC claiming the commission, its interest, the loss of profits, SIPC's continuous performance of the Agency Agreement, and grant UNI-TOP of the right of selling PK's crude oil outside China. On December 30, 2013, CIETAC rendered an award dismissing all of UNI-TOP's claims. On September 30, 2015, UNI-TOP again commenced an arbitration against SIPC before CIETAC. CIETAC accepted the case and delivered the Award in this case. CIETAC

[*Page 40 of Chinese Original*]

made two awards between the same parties, the same subject matters and the same arbitration claims which are the same dispute.   Article 9 of the PRC Arbitration Law provides that "*a system of final and binding arbitral award shall apply to arbitration. If a party applies for arbitration to an arbitration commission or institutes an action in a people's court regarding the same dispute after an arbitration award has been rendered, the arbitration commission or the people's court shall not accept the case.*"   CIETAC's conduct of rendering two awards on the same dispute violates the "final and binding award" principle.   In addition, the continuation of the objective circumstances of SIPC not having actually acquired PK's shares does not result in any change in the parties' rights and obligations, so SIPC's delay in exercising its relevant rights and interests alleged by UNI-TOP does not constitute "new facts".   Article 248 of the Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law, which provides that "*where new facts occur after a judgment/ruling comes into legal effect, and the party concerned files a new lawsuit, the competent people's court shall accept the new lawsuit in accordance with the law*", applies to court proceedings, not to arbitral proceedings.   The PRC Arbitration Law does not empower an arbitration institution to conduct another arbitration after occurrence of "new facts". Summarizing the above, the award in dispute shall be set aside according to Article 9 and Article 70 of the Arbitration Law and Paragraph 1(4), Article 274 of the Civil Procedure Law.

Summarizing the above, the award in dispute ([2017] CIETAC BJ AWARD No. 0836) violates the "final and binding award" principle prescribed by Article 9 of the Arbitration Law and falls in the circumstances prescribed by Paragraph 1(4), Article 274 of the Civil Procedure Law that is "the matters arbitrated are outside the scope of the arbitration agreement, or the arbitral institution has no authority to arbitrate."   UNI-TOP's argument that this court's examination of the violation of the "final and binding award" principle falls outside the scope of judicial review is untenable.   SIPC's application is legitimate and well-founded, which this court supports.   Based on Article 9 and Article 70 of the PRC Arbitration Law and

[*Page 41 of Chinese Original*]

Paragraph 1(4), Article 274 of the PRC Civil Procedure Law, this court rules as follows:

Set aside the CIETAC award ([2017] CIETAC BJ AWARD No. 0836).

The cost of the application of RMB 400 shall be borne by UNI-TOP (and shall be paid within seven days after service of this ruling).

Chief Judge: JI, Dong

Judge: GAO, Jing

Judge: CUI, Zhiyu

[Seal of the Beijing No.4 Intermediate People's Court]

This document is consistent with the original

April 27, 2020

Judge  Assistant:  WANG,  Jing

Clerk:  WANG,  Yuting

# 中华人民共和国
# 北京市第四中级人民法院
# 民事裁定书

(2017)京 04 民特 39 号

申请人：中国石化集团国际石油勘探开发有限公司，住所地中华人民共和国北京市海淀区北四环中路 263 号。

法定代表人：李勇，总经理。

委托诉讼代理人：戴月，北京市金杜律师事务所律师。

委托诉讼代理人：刘凌云，北京市金杜律师事务所律师。

被申请人：UNI-TOP Asia Investment Limited，注册地 OMC Chambers, Road Town, Tortola, British Virgin Islands。

负责人：刘方（LAU, Fong），董事。

委托诉讼代理人：邢媛，北京市环中律师事务所律师。

委托诉讼代理人：王雪华，北京市环中律师事务所律师。

申请人中国石化集团国际石油勘探开发有限公司(以下简称国勘公司)与被申请人 UNI-TOP Asia Investment Limited（以下简称 UNI-TOP 公司）申请撤销仲裁裁决一案，本院于 2017 年 7 月 24 日立案后进行了审查。现已审查终结。

申请人国勘公司称，请求：依法裁定撤销中国国际经济贸易仲裁委员会（以下简称贸仲）作出的〔2017〕中国贸仲京裁字第

- 1 -

0836 号裁决书；本案撤销仲裁裁决申请费由 UNI-TOP 公司承担。

事实和理由：〔2017〕中国贸仲京裁字第 0836 号裁决书（以下称《裁决书》）具有《中华人民共和国仲裁法》（以下简称《仲裁法》）第七十条和《中华人民共和国民事诉讼法》（以下简称《民事诉讼法》）第二百七十四条规定的撤销情形，应依法予以撤销。

一、贸仲没有依法向国勘公司有效送达本案仲裁通知等部分程序性文件，导致国勘公司没有得到指定仲裁员和进行第一次开庭程序的通知，本案仲裁庭的组成以及仲裁程序均与《中国国际经济贸易仲裁委员会仲裁规则(2015 版)》(以下简称《仲裁规则》)不符。

《裁决书》声称，贸仲依据 UNI-TOP 公司在仲裁申请书中提供的地址向国勘公司送达了本案仲裁通知、组庭通知和第一次开庭通知（以下称仲裁通知），已按照《仲裁规则》第八条的规定有效送达。然而，贸仲在向国勘公司寄送上述仲裁通知时，仅凭 UNI-TOP 公司故意提供的错误信息，将第一收件人错误地列为"张耀仓"，而张耀仓早在 2014 年就已经不再担任国勘公司的法定代表人，且已于 2015 年 10 月开始被纪检监察机关采取在规定时间和地点接受调查的措施（以下称双规），其信件受到特殊限制。张耀仓在本案仲裁时并非国勘公司的法定代表人或工作人员。上述情形导致仲裁庭所寄送的仲裁通知被视为张耀仓个人邮件，故未能有效送达给国勘公司。

国勘公司的法定代表人属于非常容易查知的公开信息，张耀

－ 2 －

仓在 2015 年被采取"双规"措施也是被广泛报道的消息，案外人张耀仓被贸仲列为上述仲裁通知的收件人明显错误。直至第一次庭审时，UNI-TOP 公司才提交了正确的国勘公司工商登记信息，此后的贸仲相关文书才被国勘公司收到。对此，国勘公司于 2016 年 8 月 10 日走访了贸仲，随后向仲裁庭提出了程序性异议，要求中止仲裁程序并重新给予选定仲裁员的期限。然而仲裁庭在明知未能有效送达的情况下驳回了国勘公司提出的程序异议，剥夺了申请人指定仲裁员这一在仲裁程序中最为根本和核心的权利。为避免进一步丧失实体权利，国勘公司只得按仲裁庭的要求参加了第二次开庭审理，但仍然明确向仲裁庭声明保留提出程序异议的权利。

总之，贸仲将与本案无关的人员填写在"收件人"一栏，导致本案最为重要的程序性文件寄送给了错误的接收人，使得国勘公司由于不可归责于自身原因而在客观上未收到仲裁通知，无法指定仲裁员和参加第一次开庭程序，本案仲裁程序明显违反了《仲裁法》第七十条和《民事诉讼法》第二百七十四条第（二）和（三）项的规定。

二、贸仲对 UNI-TOP 公司就同一纠纷提出的仲裁申请予以受理，仲裁庭就 UNI-TOP 公司提出的相同请求重复裁决，违反了"一裁终局"的法律规定以及《仲裁规则》，根据《仲裁法》第七十条和《民事诉讼法》第二百七十四条第（三）项的规定，《裁决书》应予撤销。

《仲裁法》第九条明确规定："仲裁实行一裁终局的制度。

裁决作出后，当事人就同一纠纷再申请仲裁或者向人民法院起诉的，仲裁委员会或者人民法院不予受理"。《仲裁规则》第四十九条"裁决的作出"规定："……（九）裁决是终局的，对双方当事人均有约束力。任何一方当事人均不得向法院起诉，也不得向其他任何机构提出变更仲裁裁决的请求"。

但是在本案中，UNI-TOP 公司曾于 2012 年 8 月 30 日基于本案所涉《代理协议》向贸仲申请仲裁，要求国勘公司支付代理酬金，并赔偿预期利益等损失，仲裁庭于 2013 年 12 月 30 日作出(2013)中国贸仲京裁字第 0907 号仲裁裁决书（以下称前案裁决），驳回了 UNI-TOP 公司全部仲裁请求（以下称前案，与本案所涉仲裁合称为两案）。在前案裁决作出后，贸仲对于 UNI-TOP 公司就同一纠纷提出的仲裁请求予以受理，仲裁庭对于 UNI-TOP 公司提出的相同请求重复裁决，明显违反了前述法律和《仲裁规则》确定的"一裁终局"的程序性规定。

《裁决书》认为，UNI-TOP 公司在本案中提出的仲裁请求是基于前案裁决作出以后发生的新的事实，即国勘公司怠于向中石油集团方面主张哈萨克斯坦 Petro Khazakstan 公司（以下简称 PK 公司）的股权或其他相关权益以及相应证据，应当属于《最高人民法院关于适用〈中华人民共和国民事诉讼法〉的解释》（以下简称《民诉法解释》）第二百四十八条规定的可以再次提起诉讼的"新事实"。因此，UNI-TOP 公司在本案中提起的仲裁请求不属于"一裁终局"的适用范围。国勘公司认为，该等主张明显不能成立：

首先，前案裁决已明确认定，代理酬金的支付是要完成对 PK 公司的收购并完成股权的受让和变更……国勘公司没有取得 PK 公司股权或者与此相关的其他权益，《代理协议》约定的目标就没有达到,UNI-TOP 公司依据协议的规定要求国勘公司履行义务就缺乏法律和合同基础……在国勘公司没有实际取得 PK 公司股权或者其他补偿之前，UNI-TOP 公司对代理酬金的索取缺乏法律依据。根据该等认定，无论国勘公司在前案裁决后是否怠于向中石油集团方面主张权益或者补偿，只要未实际取得 PK 公司股权或补偿，就不应当支付代理酬金。可见，前案裁决认定 UNI-TOP 公司主张代理酬金的请求权事实基础只能是国勘公司取得 PK 公司股权，《裁决书》所主张的"新事实"不仅不能成立，也不能成为其请求代理酬金和销售代理权益的事实基础，更不能改变和影响前案的裁决结果，根本无法作为仲裁庭突破"一裁终局"《仲裁规则》的依据。

其次，原裁决发生法律效力后，没有发生任何"新的事实"。《裁决书》所谓"怠于主张"的情况实际上在前案裁决期间、甚至 UNI-TOP 公司申请前案仲裁之前就已经存在,UNI-TOP 公司已然在前案仲裁中提出国勘公司怠于向中石油集团方面主张确定权益，视为恶意阻止付款条件成就，根据《中华人民共和国合同法》（以下简称《合同法》）的约定已达到付款条件的主张，该等理由已经前案仲裁实体审理，并被前案裁决完全否定，不属于《民诉法解释》第二百四十八条规定"发生新的事实"的范围，不应在本案仲裁中重新审理这一问题。虽然前案裁决提及国勘公司确实存

- 5 -

在着主张权益事实以及表示没有放弃追索权益的努力，但这仅仅是为了反驳 UNI-TOP 公司提出的关于国勘公司怠于或放弃主张权益的谬论。这绝不意味着前案裁决认定如果国勘公司怠于主张权益，那么就视为代理酬金付款条件已经成就。

再次，前案裁决的裁决事项为"驳回申请人的全部仲裁请求"，而非裁决国勘公司有义务向中石油集团主张权益或者补偿。因此，《裁决书》以国勘公司"怠于"向中石油集团主张权益或者补偿为由重复仲裁，是对前案裁决的曲解和误读。

最后，在前案中，仲裁庭已审理并确认本案争议所涉 PK 公司股权已于 2005 年 8 月由中石油集团取得，《代理协议》已于 2008 年 12 月 31 日终止，代理酬金支付条件在协议期限内确定未成就。至前案裁决作出时，所有影响《代理协议》项下酬金支付条件的事实均已经发生。根据双方《代理协议》约定、协议有效期内各方的履行内容及协议终止后的基本情况等已完全确定的事实，前案裁决认定了国勘公司没有取得 PK 公司股权或者其他补偿，就无需向 UNI-TOP 公司履行任何付款义务，《裁决书》认定本案存在"新的事实"，不符合前案裁决的基本认定。

三、《裁决书》的内容与前案裁决互相冲突，完全推翻了前案裁决结果，违反了《仲裁法》第七条规定的公平合理以及《仲裁规则》中第九条规定的诚实信用原则，不符合法律及《仲裁规则》中对仲裁程序的要求，根据《仲裁法》第七十条和《民事诉讼法》第二百七十四条第（三）项的规定，《裁决书》应予撤销。

（一）关于国勘公司在《代理协议》项下义务的问题。

前案裁决根据《代理协议》第 3 条和第 4 条的约定，认定 UNI-TOP 公司的代理义务包括完成协助国勘公司获得项目等，国勘公司的义务是提供确定合理心理价位的相关信息、提供合理建议、不得另行聘请顾问以及按约定支付代理酬金，并认定该等约定"与《合同法》中委托合同是委托人和受托人约定，由受托人处理委托人事务的合同以及受托人应当按照委托人的指示处理委托事务的规定并不相悖"。

《裁决书》却主张，就实现合同目的而言，合同双方当事人均有义务促成条件成就，就取得 PK 公司股权或者获得其他权益补偿而言，条件成就与否已经完全与 UNI-TOP 公司无关，其无法实施任何具有决定意义的行为，条件的成就与否完全取决于国勘公司。

国勘公司认为，《裁决书》直接变更了前案裁决的认定，毫无道理可言。根据《合同法》关于委托合同的相关规定 ，受托人负担完成受托事务的义务，委托人没有相应义务。本案《代理协议》系委托合同，国勘公司作为委托人，没有完成受托事务，即促成交易完成和向中石油集团主张权益的法定义务。按照《代理协议》第2.1条和第3条的规定，UNI-TOP 公司作为代理人，负有协助国勘公司取得 PK 公司股权等代理义务，国勘公司也没有促成交易完成和向中石油集团主张权益的合同义务。

《合同法》第四百一十条规定"委托人或者受托人可以随时解除委托合同"，委托人依法享有任意解除权，本案国勘公司作为委托人，享有任意终止《代理协议》的法定权利。按照《代理

- 7 -

协议》第 2.2 条和第 8.1 条的约定，国勘公司有权放弃或者终止收购项目。可见，国勘公司不仅没有促成条件成就的义务，反而享有任意终止《代理协议》的合同和法定权利。

（二）关于代理酬金支付前提的问题。

前案裁决认定，"代理酬金的支付是要完成对 PK 公司收购并完成股权的受让和变更"，"依据《代理协议》的约定，无论 UNI-TOP 公司在本案涉及到的股权收购案中做了多少工作，也并不能改变国勘公司没有取得《代理协议》约定其希望得到 PK 公司股权或者以与此相关的其他权益进行的补偿的事实"，"国勘公司没有取得 PK 公司股权或者与此相关的其他权益，《代理协议》约定的目标就没有达到，UNI-TOP 公司依据协议的规定要求国勘公司履行义务就缺乏法律和合同基础"，"在国勘公司没有实际取得 PK 公司股权或者其他补偿之前，UNI-TOP 公司对代理酬金的索取缺乏法律依据"。

《裁决书》却主张，根据《合同法》第三百九十九条和四百零五条的规定，若代理人按约定完成了代理事务，由于代理人以外的第三人的原因而导致被代理人未能取得约定的权利或者权益，代理人主观上并无任何过错，则不能影响或者排除代理人对代理佣金的请求权；即便因为国勘公司的原因或者任何第三人的原因，导致国勘公司没能成功获取 PK 公司的股权和实现代理目的，也应当向 UNI-TOP 公司支付代理酬金；中石油集团是否按照发改委的指示或者协调进行了相应的后续股权转让或者权益补偿，已与作为代理人的 UNI-TOP 公司没有任何关系，更非 UNI-TOP 公司所能

控制或影响的，国勘公司以此为由拒绝向 UNI-TOP 公司支付代理酬金于理不合。

国勘公司认为，根据《合同法》第四百零五条规定，受托人完成委托事务的，委托人应当向其支付报酬，因不可归责于受托人的事由，委托合同解除或者委托事务不能完成的，委托人应当向受托人支付相应的报酬。当事人另有约定的，按照其约定。本案《代理协议》约定的报酬事实上分为两个部分，即前期费用和代理酬金。其中，协议双方约定国勘公司自协议生效至放弃项目交易之时每月向代理人支付 1 万美元的前期费用，并规定在完成项目交易时前期费用全额冲抵酬金。同时，由于协议双方明知完成交易存在或然性，为了鼓励代理人积极履行代理行为促成协议目的的实现，《代理协议》约定只有在完成交易后，国勘公司才会向代理人支付与交易价格直接挂钩的酬金。《裁决书》亦认定："前期费用与后期代理行为完成后的酬金即代理佣金是不同的，前者属于代理人进行代理活动所需的成本费用由国勘公司预先支付，与代理活动成功与否无关，后者以代理活动完成并取得成功为条件"。因此，无论 UNI-TOP 公司是否按约定完成了代理事务，也无论是否由于第三人的原因而导致国勘公司未能取得 PK 公司股权，UNI-TOP 公司在主观上是否有过错，只要国勘公司未取得 PK 公司股权，就不应支付约定的代理酬金。《裁决书》的上述认定不仅与前案裁决直接冲突，而且完全违背了双方意思自治及合同约定，歪曲了基本事实和法律规定，完全不能成立。

实际上，国勘公司是《代理协议》项下的委托人，是相关委

托代理事项的权利人。UNI-TOP 公司是《代理协议》项下的代理人，是委托代理事项的义务人。国勘公司以约定的条件和期限取得 PK 公司的股权是《代理协议》的协议目的，是 UNI-TOP 公司完成代理事项的标志，是国勘公司支付代理酬金的前提。

（三）关于国勘公司是否怠于向中石油集团追索 PK 公司的股权及相关权益导致酬金支付条件成就的问题。

前案裁决没有采纳 UNI-TOP 公司关于国勘公司怠于向中石油集团方面追索确定权益视为恶意阻止付款条件成就、根据《合同法》已达到付款条件的主张，明确认定：从实践来看，国勘公司作为一个企业，从公司经营管理、追求公司的最大利益的角度出发，放弃对其可以获得的巨大权益以规避对申请人支付代理酬金的责任是十分荒唐的。UNI-TOP 公司指责国勘公司怠于履行或放弃权利的说法不符合逻辑。

《裁决书》却认为，国勘公司在前案裁决后应当向中石油集团追索 PK 公司的相关权益而怠于追索，属于不正当的阻止代理酬金支付条件的成就。

国勘公司认为，《裁决书》关于国勘公司怠于向中石油集团方面主张权益或者补偿，不正当的阻止条件成就，根据《合同法》第四十五条规定付款条件应视为已经成就的说法毫无道理：

首先，《裁决书》指责国勘公司怠于主张权益或者补偿的前提是国勘公司有义务向中石油集团方面主张权益或者补偿。然而，国勘公司作为委托人，无论是依据相关法律规定，还是依据《代理协议》，均具有商业自主性，有权随时终止收购 PK 项目，无需

不计代价地完成收购，根本不受 UNI-TOP 公司的制约和限制，不可能构成怠于主张权益或者补偿。UNI-TOP 公司为了代理酬金等自身经济利益，企图"绑架"委托人国勘公司，企图恶意"驱使"委托人国勘公司完成本应由其作为代理人所完成的委托事务，完全属于本末倒置。

其次，《合同法》第四十五条规定，当事人对合同的效力可以约定附条件。附生效条件的合同，自条件成就时生效……当事人为自己的利益不正当地阻止条件成就的，视为条件已成就。根据全国人大法工委关于《合同法》第四十五条规定的释义，该条款适用对象是合同本身附有生效条件，不适用于当事人约定的付款条件。本案《代理协议》未附生效条件，其中代理酬金的支付条件实质是付款条件，根本不能适用《合同法》第四十五条的规定。

最后，即使本案适用《合同法》第四十五条的规定，《裁决书》的主张也不能成立：

1. 《合同法》第四十五条中第二款前段适用要件之一是当事人必须"不正当"地阻止条件成就，当事人一方在不作为的情况下必须有义务促成条件成就，才有可能构成法律上的"不正当"。国勘公司作为《代理协议》项下的委托人，不仅没有在前案裁决后向中石油集团方面主张权益或者补偿的任何约定或者法定义务，反而享有任意终止 PK 项目的法定和合同权利，UNI-TOP 公司不能将其在《代理协议》项下应完成的委托事项转为由委托人国勘公司承担。因此，国勘公司在前案裁决生效后未向中石油集团方面

协商股权转让事宜，既不违约，也不违法，完全合理正当，没有为了自己的利益不正当地阻止条件成就。

2．《合同法》第四十五条中第二款前段适用要件之二是当事人必须是"为了自己的利益"阻止条件成就。从事实上看，国勘公司至今没有因为 UNI-TOP 公司工作取得任何权益，如果不向中石油集团方面主张权益，那么只能是丧失自己的利益，而不可能是为了自己的利益。并且，如 UNI-TOP 公司所述，中石油集团方面竞得 PK 公司股权后获益巨大，仅 2007 年和 2008 年的净利润就分别达到 60 多亿美元，国勘公司实际上也不可能为了规避本案的代理酬金而放弃 PK 公司股权巨大利益，根本不会为了自己的利益而不向中石油集团方面主张权益。

3．《合同法》第四十五条中第二款前段适用要件之三是当事人必须是"阻止"条件成就，主要是指当事人为了自身利益，在能够履行合同义务的情况下，积极恶意的采取各种手段规避条件成就。然而，国勘公司从未拒绝接受 PK 公司权益，甚至为此尝试与中石油集团方面进行沟通，完全不存在任何所谓阻止条件成就的行为。

4．UNI-TOP 公司没有完成《代理协议》约定的义务，没有协助国勘公司通过协商谈判取得 PK 公司股权。前案裁决认定，本案"没有确凿的证据表明中石油集团公司方面在收购 PK 公司股权的过程中与中石化集团双方已经建立了针对 PK 公司股权收购的书面的法律关系"。在中石油集团方面竞标成功后，虽然中石化方面有协商讨论 PK 公司股权转让的情形，但是最终没有与中石油集团

方面形成具有强制执行力的合同。由此，虽然国勘公司曾经尝试继续向中石油集团方面追索，但确实无法取得 PK 公司股权或者其他权益。因此，本案代理酬金支付前提在客观上尚未达到，与国勘公司之间没有任何因果关系。

5. 国勘公司取得 PK 公司股权，既是本案代理酬金付款前提，也是 UNI-TOP 公司的主要合同义务。即使国勘公司怠于追索 PK 公司股权，也不能视为 UNI-TOP 公司履行了其在《代理协议》项下的合同义务，更不能视为国勘公司已经获得了委托利益，不能满足酬金支付前提。

此外，《裁决书》还存在第四项撤销仲裁的理由，即超出了仲裁协议的范围，违反了《仲裁规则》第七十条及《民事诉讼法》第二百七十四条第（四）项的规定。《裁决书》认定国勘公司对于案外人中石油公司享有合同权益，然而中石油公司是案外人，不是本案的当事人，不存在仲裁协议，所以《裁决书》超出了本案审理的范围。

综上所述，由于国勘公司未能被给予指定仲裁员的权利，且贸仲受理了 UNI-TOP 公司就前案裁决已裁决的事实和请求提出的仲裁申请，而仲裁庭没有依据基本事实和法律规定，违反了公平合理和诚实信用等最为根本的仲裁程序原则，本案《裁决书》符合《仲裁法》和《民事诉讼法》规定的应予撤销的情形，国勘公司恳请法院立即撤销《裁决书》，以维护国勘公司的合法权益。

UNI-TOP 公司称，国勘公司的主张和请求既不符合事实，也无法律依据，完全不能成立，本案仲裁裁决不具备任何法定撤销事

由。国勘公司的撤裁申请纯属恶意拖延仲裁裁决的执行，UNI-TOP 公司恳请贵院立即驳回国勘公司的申请，及时维护 UNI-TOP 公司的合法权益。

具体理由如下：

一、本案项下仲裁程序文件显示，仲裁文件均已合法送达给国勘公司。贸仲仲裁文件送达程序完全符合法律规定和仲裁规则，国勘公司未在规定的期限内行使选任仲裁员等程序性权利，应自行承担不利后果。国勘公司在仲裁过程中明确向仲裁庭表示就仲裁庭组成不持异议。

国勘公司主张"贸仲没有依法向国勘公司有效送达本案仲裁通知等部分程序性文件，导致国勘公司没有得到指定仲裁员和进行第一次开庭程序的通知，本案仲裁庭的组成以及仲裁程序均与仲裁规则不符"，显然与事实相悖。

（一）关于文件送达及仲裁员指定问题，国勘公司曾在仲裁过程中提出相同的主张，因其主张完全不能成立，被贸仲全部驳回。

本案项下，贸仲寄往国勘公司的仲裁通知于 2016 年 4 月 18 日寄出，于 2016 年 4 月 20 日妥投；组庭通知于 2016 年 6 月 1 日寄出，于 2016 年 6 月 4 日妥投；第一次开庭通知于 2016 年 6 月 23 日寄出，于 2016 年 6 月 25 日妥投。上述文件送达后，国勘公司未在规定期限内指定仲裁员，未进行答辩，亦未参加开庭。

2016 年 8 月 2 日第一次开庭后，国勘公司提交了落款日期为 2016 年 8 月 15 日的函件《关于：E20160333 号仲裁案要求重新送

达文件、选定仲裁员，并中止仲裁程序事宜》（以下简称《程序异议函》）。在该函中，国勘公司要求：1.重新向国勘公司送达案件相关的全部文件；2.重新给予国勘公司选定仲裁员的期限；3.中止案件相关正在进行的仲裁程序。收到该《程序异议函》后，UNI-TOP 公司提交了落款日期为 2016 年 8 月 30 日的《对被申请人程序异议及相关文件的反驳意见》，对国勘公司的主张作出了详细的反驳，指出国勘公司关于没有收到仲裁文件的主张属于明目张胆的撒谎，并附上了贸仲向国勘公司寄送文件的快递单及送达记录作为证据。UNI-TOP 公司同时指出，国勘公司违反贸仲《仲裁规则》和诚信原则，应自行承担不利后果。国勘公司要求重新送达、重新指定仲裁员并中止仲裁程序的请求不应得到支持。

随后，国勘公司提交了落款日期为 2016 年 9 月 14 日的《关于：〈被申请人程序异议及相关文件的反驳意见〉的回复意见》。在该意见中，国勘公司承认，其"未就妥投记录、签收人或者寄送地址提出异议"，这意味着国勘公司承认收到了本案项下的全部仲裁文件。2016 年 9 月 27 日，UNI-TOP 公司提交了"对《关于：〈被申请人程序异议及相关文件的反驳意见〉的回复意见》的评论意见"，指出在国勘公司承认收到本案全部仲裁文件的情况下，"如果贵院同意给予被申请人重新指定仲裁员的机会，那么本案的程序就会严重违反法律和仲裁规则，而且对申请人是极不公平的，《仲裁法》第七条规定的'依据事实、符合法律，公平合理解决纠纷'的目的就没有实现，是对法律和规则的践踏。如果仲裁院给予被申请人重新开始仲裁包括指定仲裁员的机会，被申请

人和贵院之间将上演'农夫和蛇'的故事，不排除被申请人在本案裁决后主张本案程序不合法、不符合规则而申请人民法院撤销仲裁裁决的可能"，并强调"公平仲裁是任何仲裁的前提，即便被申请人是国营企业，也必须遵守法律，没有法外特权"。

2016 年 10 月 12 日，贸仲在"（2016）中国贸仲京字第 038481 号"通知中，作出如下决定："此前仲裁委员会已经按照《仲裁规则》的规定向被申请人寄送了包括仲裁通知、申请人的仲裁申请书、组庭通知、开庭通知等在内的本案全部函件及相关资料。快递公司查单显示，上述文件均已由被申请人签收并加盖邮件收发章。因此，对于被申请人提出的重新送达文件、重新选定仲裁员、中止程序的要求不予同意，本案仲裁程序将继续进行"。

随后，国勘公司提交了落款日期为 2016 年 11 月 11 日的《关于：（2016）中国贸仲京字第 038481 号通知的答复》，声称其"丧失了指定仲裁员这一仲裁程序中最为核心和重要的权利"，"无法获知申请人提交的仲裁申请书及其证据，以及后续补充证据的相关内容"，"保留就仲裁程序提出进一步抗辩的权利"。

对此，贸仲于 2016 年 11 月 15 日作出编号为"（2016）中国贸仲京字第 043674 号"的通知，指出国勘公司所主张的"被申请人无法获知申请人提交的仲裁申请书及其证据，以及后续补充证据的相关内容"不成立。

针对国勘公司的不实指控，UNI-TOP 公司提交了落款日期为 2016 年 11 月 29 日的"对被申请人日期为 2016 年 11 月 11 日的《关于：（2016）中国贸仲京字第 038481 号通知的答复》的评论意见"，

指出本案所有仲裁文件均已合法送达，贸仲作出的决定符合贸仲《仲裁规则》，符合我国法律，完全正确。国勘公司声称做出所谓权利保留的行为，没有任何事实和法律依据。此外，国勘公司收到了全部仲裁文件，拒不参与仲裁程序，反而在第一次开庭后无理要求重新送达仲裁文件、重新指定仲裁员和中止仲裁程序，明显就是在故意拖延案件程序，达到其不可告人的目的。

2016 年 12 月 23 日，贸仲对本案进行第二次开庭。在庭审中，经仲裁庭询问，国勘公司亦表示对本案三位仲裁员组成的仲裁庭没有异议。

尽管 UNI-TOP 公司在仲裁过程中已就国勘公司的上述主张进行了详细充分的反驳，为澄清事实，方便法院审理，仍在以下部分简要总结国勘公司的观点并进行反驳。

（二）根据贸仲《仲裁规则》及我国法律规定，本案仲裁文件均已合法送达给国勘公司，且国勘公司亦承认收到了这些文件。

本案仲裁中，贸仲以特快专递的方式，将仲裁通知寄送至国勘公司的营业地址（北京市朝阳区惠新东街甲 6 号 1 楼），快递均已妥投。《裁决书》亦确认，寄送给国勘公司的前述文件均已妥投。

国勘公司在仲裁过程中亦明确表示，其对妥投记录、签收人或寄送地址并无异议。这也意味着国勘公司承认收到了本案项下的全部仲裁文件。

根据贸仲《仲裁规则》第八条第（三）款的规定，"向一方当事人或其仲裁代理人发送的仲裁文件，如经当面递交收件人或

发送至收件人的营业地、注册地、住所地、惯常居住地或通讯地址，……即视为有效送达"，本案全部仲裁文件均已有效送达。

此外，快递信息显示，贸仲寄出的所有仲裁文件都已经被国勘公司收妥，均盖有国勘公司的单位收发章。根据《最高人民法院关于以法院专递方式邮寄送达民事诉讼文书的若干规定》第九条第（三）款的规定，"有下列情形之一的，即为送达：……（三）受送达人是法人或者其他组织，其法人的法定代表人、该组织的主要负责人或者办公室、收发室、值班室的工作人员签收的；受送达人的诉讼代理人签收的；……"，贸仲向国勘公司寄出的特快专递均被收妥并加盖了国勘公司单位收发章，已依法送达给国勘公司。

此外，在仲裁过程中，国勘公司曾在《程序异议函》中称，"对1014139410120号快递文件，要求邮政单位转投至中石化集团"。如果该陈述属实，根据《最高人民法院关于以法院专递方式邮寄送达民事诉讼文书的若干规定》第九条第五款的规定，"有下列情形之一的，即为送达：……（五）受送达人指定的代收人签收的；……"，国勘公司指定中石化集团作为代收人，中石化集团收到该文件，亦为合法送达。

（三）尽管国勘公司承认贸仲向其发送的前述仲裁文件已全部妥投，但却以原法定代表人张耀仓被有关部门调查，信件受到特殊限制为由，主张其客观上未收到仲裁通知等文件，纯属歪曲事实，混淆视听，不能成立。

1. 贸仲寄出的快递单上显示，寄件人是贸仲，收件人是"张

耀仓／法定代表人／主要负责人／其他负责人”，文件品名写明了涉案的案号、文件编号、文件名称（如仲裁通知、组庭通知、开庭通知等），并标注"重要文件"，显然这是一封寄给国勘公司的公函，而非寄给张耀仓个人的私人信函。

2. 快递单的收件人一栏不仅列明张耀仓，还列明了"法定代表人"、"主要负责人"、"其他负责人"，如果国勘公司的法定代表人不再由张耀仓担任，其新法定代表人、主要负责人、其他负责人也被送达了上述仲裁文件。国勘公司收到贸仲的文件后如何处理，都不影响仲裁文件已经被有效送达的事实。

3. 本案仲裁中的一方当事人是"中国石化集团国际石油勘探开发有限公司"法人实体，而非"张耀仓／法定代表人／主要负责人／其他负责人"等自然人。在国勘公司签收了贸仲的上述文件后，应视为该等文件已有效送达。至于前述个人是否收到或亲自看到这些文件，对文件是否送达的事实并无影响。因此，以前述自然人被"双规""其信件受到特殊限制"为由主张贸仲寄送的文件未能有效送达，没有任何法律依据。

（四）本案仲裁中，国勘公司获得了充分的陈述意见的机会，更不存在国勘公司被剥夺选定仲裁员权利的情况。国勘公司在第二次开庭时表示其对仲裁庭的组成并无异议。国勘公司在收到仲裁通知等程序文件后，未在规定的期限内答辩，未参加开庭等，这是其对自身仲裁程序权利的处分和放弃，应自行承担不利后果。贸仲驳回其所谓的程序异议，合理合法。并且，尽管国勘公司的主张完全不能成立，贸仲及仲裁庭仍安排了第二次开庭，给予国

勘公司充分的陈述案件的机会。国勘公司在第二次庭审时亦表示对仲裁庭的组成无异议，其在裁决作出后又以未能指定仲裁员为由申请撤裁，显然纯属借口。

综上所述，在文件送达及仲裁员指定问题上，完全不存在国勘公司主张的仲裁庭的组成与仲裁程序均与《仲裁规则》不符的情况，国勘公司的撤裁理由不能成立。

二、本案仲裁庭基于前案裁决作出后的"新的事实"作出裁决，并不违反"一裁终局"，并且是否违反"一裁终局"属于仲裁庭实体审理范围，并不是撤裁的法定事由。

国勘公司主张"贸仲对 UNI-TOP 公司就同一纠纷提出的仲裁申请予以受理，仲裁庭就 UNI-TOP 公司提出的相同请求重复裁决，违反了'一裁终局'的法律规定以及《仲裁规则》，根据《仲裁法》第七十条和《民事诉讼法》第二百七十四条第（三）项的规定，《裁决书》应予撤销"。该等主张严重缺乏事实和法律依据，不能成立。

（一）是否违反"一裁终局"的认定，属于仲裁庭实体审理范围，不属于人民法院审查撤销仲裁裁决案件的范围。

根据《仲裁法》第九条的规定，"仲裁实行一裁终局的制度。裁决作出后，当事人就同一纠纷再申请仲裁或者向人民法院起诉的，仲裁委员会或者人民法院不予受理"，是否违反一裁终局，需对是否构成"同一纠纷"进行判断。而判断是否为"同一纠纷"，需要仲裁庭综合考虑仲裁请求、案件事实、证据、庭审情况等各项因素后方可认定，这明显属于仲裁庭对于案件的实体审理范围。

- 20 -

　　我国相关司法实践中，人民法院亦认为，仲裁庭根据双方证据及庭审查明情况，对于当事人仲裁请求的性质认定以及是否违反"一裁终局"的认定，应属于仲裁庭对于案件的实体审理范围，不属于人民法院审查撤销仲裁裁决案件的范围。国勘公司认为违反"一裁终局"即构成《仲裁法》第七十条和《民事诉讼法》第二百七十四条第一款第（三）项中规定的撤裁事由，纯属生拉硬拽，不能成立。

　　在"肖丰与北京瑞宝利热能科技有限公司申请撤销仲裁裁决"一案〔（2016）京 03 民特 302 号〕中，北京市第三中级人民法院明确指出，"关于肖丰主张其在（2012）京仲裁字第 0809 号仲裁案件与本案中的请求并非同一请求，亦非基于同一事实，未违反《仲裁法》规定的'一裁终局'制度，仲裁庭认定本案系违反'一裁终局'制度，因仲裁庭根据双方证据及庭审查明情况，对于当事人仲裁请求的性质认定以及是否违反'一裁终局'制度的认定均属于仲裁庭对于案件的实体审理范围，不属于人民法院审查撤仲案件的范围。肖丰以此作为申请撤销仲裁裁决的理由缺乏依据，本院不予采信"。

　　至此，国勘公司基于"一裁终局"提出的撤裁请求已经完全不能成立，应予驳回。但为进一步澄清事实，指出国勘公司恶意拖延《裁决书》履行的真实目的，对于国勘公司关于《裁决书》违反"一裁终局"的主张，UNI-TOP 公司仍将在以下内容中进行简要反驳。

　　（二）是否违反"一裁终局"的认定，属于仲裁庭实体审理

范围，不属于人民法院审查撤销仲裁裁决案件的范围。本案仲裁庭亦认定,UNI-TOP 公司基于前案裁决作出以后发生的新事实提起仲裁，不属于重复仲裁，不违反"一裁终局"的规定。仲裁庭的这一认定是完全正确的。

国勘公司曾在仲裁《答辩书》、《代理意见》及其他文件中，主张 UNI-TOP 公司对同一纠纷提出相同请求，申请重复仲裁，违反"一裁终局"和"一事不再理"。其理由与其《撤销仲裁裁决申请书》中提出的主张完全相同。

对于国勘公司的主张，UNI-TOP 公司在其提交的《申请人代理意见》中，基于本案的事实，并结合相关法律，进行了详细的反驳。UNI-TOP 公司认为本案并不存在"一裁终局"和"一事不再理"的情况。

关于这一点，本案仲裁庭认为："一裁终局制度依据的法律原理是程序规则当中的'一事不再理'原则，由于《民事诉讼法》及其相关司法解释就'一事不再理'原则应当如何适用制定了具体规则，因此对该原则在《仲裁法》中的理解和适用应当参照《民事诉讼法》及其相关司法解释的具体规定"，并进一步认定，"虽然本案当中的仲裁当事人、争议标的、仲裁请求与前案的基本一致，但申请人在本案中提出的仲裁请求是基于前案裁决作出以后发生的事实，即被申请人怠于向中石油集团方面主张 PK 公司的股权或其他相关权益，以及相应的证据，应当属于《民诉法司法解释》第二百四十八条规定的可以再次提起诉讼的'新事实'。申请人在本案中提起的仲裁请求不违反'一事不再理'原则，不属

- 22 -

于'一裁终局'的适用范围，仲裁庭决定对本案进行审理"。

从上述事实亦可看出，国勘公司关于违反"一裁终局"的主张无法成立，也被本案仲裁庭驳回。并且，不论是双方当事人还是仲裁庭，在论证是否违反"一裁终局"和"一事不再理"时，均援引了大量的案件事实和法律规定。该问题的认定，明显属于实体问题，不属于撤裁的事由。

（三）尽管本案仲裁庭已认定，UNI-TOP 公司系基于前案裁决作出后发生的事实提出本案仲裁请求，不违反"一裁终局"的规定，国勘公司在《撤裁申请书》中仍认为前案裁决作出后，没有发生任何新的事实。国勘公司这一主张是完全错误的。对比本案与前案仲裁可发现，前案裁决作出后显然发生了新事实。

国勘公司声称，关于国勘公司怠于主张权利，恶意阻碍酬金支付条件成就，应视为条件已成就的主张，在前案仲裁中已被实体审理，并被前案裁决完全否定，不属本案仲裁中的"新事实"，其这一主张完全是错误的。

对比两案可知，前案裁决作出后显然发生了新的事实。

前案仲裁庭认定，UNI-TOP 公司有权要求国勘公司根据《代理协议》的约定支付代理酬金，但认为支付条件在该案仲裁当时尚未成就，且国勘公司没有怠于履行合同义务，阻碍酬金支付条件的成就，因此未支持"申请人现在就依据《代理协议》的相关规定"索要酬金。

本案仲裁庭则是基于前案裁决书中对酬金支付条件的认定，以及前案裁决作出之后的事实，认定国勘公司"怠于向中石油集

团主张 PK 公司的股权或其他相关补偿的行为，阻止代理酬金支付条件的成就，代理酬金的支付条件应当视为已经成就"。

显而易见，两案仲裁庭是基于各自案件的事实情况及相关证据，分别就前案裁决作出前、前案裁决作出后，是否存在怠于追索权益的事实进行了认定。前案裁决作出后发生的事实，显然属于"新事实"。

三、本案《裁决书》与前案裁决是否冲突，属于仲裁庭基于事实和法律，对案件实体进行审理的问题，不构成对公平合理和诚实信用原则的违反，不构成撤销仲裁裁决的事由，更何况两案裁决之间根本就不存在国勘公司所声称的冲突。

国勘公司主张，"《裁决书》的内容与前案裁决互相冲突，完全推翻了前案裁决结果，违反了《仲裁法》第七条规定的'公平合理'以及《仲裁规则》中第九条规定的'诚实信用'原则，不符合法律和《仲裁规则》对仲裁程序的要求，根据《仲裁法》第七十条和《民事诉讼法》第二百七十四条第（三）款的规定，《裁决书》应予撤销"，其这一主张完全没有事实和法律依据。

（一）两案仲裁庭理应基于案件事实，对案件进行实体审理，并正确适用法律，做出裁决，不存在任何违反仲裁程序和《仲裁规则》的情形，两案裁决也不存在任何冲突。

（二）两案裁决是否冲突，属于裁决实体内容的问题，与《民事诉讼法》第二百七十四条第（三）款规定的仲裁程序与《仲裁规则》不符的情形风马牛不相及。

（三）不论两案裁决的内容是否冲突，本案仲裁庭均不存在

- 24 -

违反公平合理和诚实信用原则的情形。

第一，前案裁决中仲裁庭的意见，并不当然对本案仲裁具有约束力。

第二，国勘公司以两案裁决相冲突为由，主张违反公平合理原则，没有依据。《仲裁法》第七条规定的公平合理原则，具体到贸仲《仲裁规则》中，指《仲裁规则》第三十五条第（一）款的规定，即"除非当事人另有约定，仲裁庭可以按照其认为适当的方式审理案件。在任何情形下，仲裁庭均应公平和公正地行事，给予双方当事人陈述与辩论的合理机会。"该等内容仅涉及案件审理程序，与裁决实体内容无任何关系。

第三，国勘公司以两案裁决相冲突为由，主张违反诚实信用原则，没有依据。贸仲《仲裁规则》第九条规定，"仲裁参与人应遵循诚实信用原则，进行仲裁程序"。可见，诚实信用原则适用的对象是仲裁程序，与仲裁裁决的实体内容无任何关系。

第四，本案项下，仲裁庭基于事实和法律，遵守诚实信用原则，公平对待双方当事人，给予了双方充分陈述意见的合理机会，并最终作出了客观公正的裁决。

至此，国勘公司基于"两案裁决互相冲突"，违反公平合理和诚实信用原则为由提出撤裁请求完全不能成立，应予驳回。但为进一步澄清事实，指出国勘公司恶意拖延《裁决书》履行的真实目的，对于国勘公司关于两份裁决存在冲突的主张，UNI-TOP公司仍将予以简要反驳。

（四）本案中并不存在国勘公司所声称的两案裁决相冲突的

问题。

1. 两案裁决均认定《代理协议》属于委托合同，国勘公司有义务向 UNI-TOP 公司支付代理酬金，有义务促进酬金支付条件成就，不存在国勘公司所声称的矛盾。

由于前案裁决认定《代理协议》为委托合同，国勘公司主张，其作为委托人，没有义务完成受托事务，即没有促成交易完成或向中石油集团主张权益的法定义务和合同义务。而本案仲裁庭认定国勘公司有义务促成条件成就，属于对前案裁决的变更。国勘公司的这一主张，纯属偷换概念，歪曲事实。

第一，两案仲裁庭均认定《代理协议》属于委托合同。

第二，前案仲裁庭并未认定，国勘公司无义务完成受托事务，无义务促成交易或向中石油集团主张权益。这一主张属于国勘公司的主观臆断。相反地，前案仲裁庭认为国勘公司有义务向中石油集团追索 PK 公司股权或补偿，并进一步就其是否怠于追索权益进行了分析。

2. 关于酬金支付条件，两案仲裁庭的认定并无冲突。

国勘公司主张，前案裁决认为，酬金支付条件是国勘公司"实际取得 PK 公司股权或者其他补偿"，而本案《裁决书》认定，即便因为国勘公司的原因或任何第三人的原因，导致国勘公司没能成功获取 PK 公司的股权和实现代理目的，也应当向 UNI-TOP 公司支付代理酬金，与前案裁决相冲突。实际上，在酬金支付条件的认定上，两案裁决亦无冲突。

第一，两案仲裁庭都认为，代理酬金的支付条件是国勘公司

取得 PK 公司股权或其他相关补偿。

第二，本案《裁决书》认定，前案裁决作出后，国勘公司存在怠于主张权益，恶意阻碍条件成就的情形，应视为条件已成就。

第三，在前述认定的基础上，本案仲裁庭假定，即使国勘公司没有怠于主张权益，在 UNI-TOP 公司已经完成了代理工作的情况下，因第三人原因导致代理酬金支付条件无法实现的，国勘公司也应当承担违约责任，即支付代理酬金。显然，本案仲裁庭作出此项认定，并不代表其变更了前案裁决所认定的酬金支付条件。

3．关于国勘公司是否怠于主张权益，两案裁决的认定也并无冲突。

如前所述，前案裁决是基于前案审理情况及证据，认定在前案裁决作出之前，国勘公司并不存在怠于主张权益的情况。而本案《裁决书》是基于前案裁决作出后的事实及证据，认定前案裁决作出后国勘公司怠于追索权益，恶意阻止代理酬金支付条件的成就。二者并无任何冲突。

此外，UNI-TOP 公司注意到，国勘公司在《撤销仲裁裁决申请书》第 8-10 页采用大量篇幅论述"《合同法》第四十五条不应适用，或即使应予适用，《裁决书》的主张也不能成立"。该主张显然不能成立。对此，UNI-TOP 公司已于《申请人代理意见》中作出详细反驳，本案《裁决书》第 41-45 页也进行了严谨的论述。同时，考虑到这属于实体问题，并非撤裁的法定事由，UNI-TOP 公司在此不再赘述。

综上所述，UNI-TOP 公司认为，国勘公司申请撤销仲裁裁决的

请求缺乏事实根据和法律依据，本案《裁决书》不存在《仲裁法》第七十条和《民事诉讼法》第二百七十四条规定的应予撤销的情形，恳请法院依法驳回其撤裁请求。

经审查查明，2005 年 3 月 4 日，国勘公司与 UNI-TOP 公司签订《代理协议》，约定国勘公司委托 UNI-TOP 公司且 UNI-TOP 公司同意作为国勘公司的排他的代理人，协助国勘公司根据相关法律或规定直接或通过国勘公司的关联公司间接获得 PK 公司股份，并协助国勘公司得到相关政府批准（下称完成交易）。协议有效期两年。完成交易后，UNI-TOP 公司不再作为将 PK 公司产出原油运往中国市场的代理，并不得收取任何代理费用。PK 公司产出的原油在中国以外地区销售的部分，双方同意根据另行商定的条件，由国勘公司委托 UNI-TOP 公司作为销售代理商。

双方约定，由此产生的争端由贸仲的三名仲裁员根据其相关规则在北京予以仲裁。仲裁程序中使用的文字为中文。本协议适用中国法。

后来，PK 公司收购项目改为以公开招标方式进行。2005 年 8 月 15 日，中石油集团以 41.8 亿美元中标收购 PK 公司 100%股份。2005 年 10 月 26 日，上述收购行为得到了加拿大法院的批准，完成收购。

2006 年 7 月 5 日，哈萨克斯坦政府行使法定优先权，中石油集团将其持有的 PK 公司已发行股本总额的 33%出售给哈萨克斯坦国石油公司，中石油集团持有 PK 公司 67%股份。

2007 年 3 月 2 日，国勘公司与 UNI-TOP 公司签订《延期协议》，

约定根据项目需要，双方协商一致同意将原协议的有效期延长至
2008 年 3 月 6 日。

2007 年 5 月 17 日，中石化集团和中石油集团签署《专题会议
纪要》，同意就 PK 公司股权转让事宜成立工作小组。

2008 年 3 月 14 日国勘公司与 UNI-TOP 公司签署《第二次延期
协议》，将《代理协议》第 7.2 条更正为：PK 公司产出的原油在
中国以外地区销售的部分，双方同意根据另外商定的条件，由国
勘公司委托代理人作为销售代理商。将协议有效期延长至 2008 年
12 月 31 日。2008 年 6 月 13 日，双方再次签署《延期协议》；同
时签订《补充协议》，增加约定 UNI-TOP 公司为中石化集团方面
开展哈萨克斯坦政府方面的协调工作。

关于第一次仲裁的情况。

2012 年 8 月 30 日，UNI-TOP 公司向贸仲申请仲裁。仲裁请求
为：国勘公司支付代理酬金 1704.9 万美元，逾期付款利息损失
1458.636667 万美元（暂计算至到 2012 年 8 月 31 日，按年利率
14%计算），预期利益损失，汇率损失，律师费和仲裁费。

2013 年 2 月 6 日 UNI-TOP 公司变更仲裁请求为：国勘公司支
付代理酬金 2154 万美元，逾期利息损失 1693.462833 美元（暂计
算至 2012 年 8 月 31 日），预期利益损失 2776 万美元，国勘公司
继续履行《代理协议》，由 UNI-TOP 公司享有 PK 公司在中国以外
地区销售原油的代理权。

前案裁决认定：贸仲对本案有管辖权，按约定适用中国法，
《代理协议》有效，双方主体适格，UNI-TOP 公司的请求没有超过

诉讼时效。《代理协议》的性质为《合同法》中的委托合同。仲裁庭认定：酬金的支付是有条件的。代理事项即完成交易就是酬金支付应该成就的条件。对此双方均表示无异议。仲裁庭认为：对于本案《代理协议》中确定的目的是否达到应该仅限于对本案协议中规定的当事人是否取得其签署本《代理协议》希望取得的结果。任何对协议规定的扩大解释，在没有确凿证据的情况下，仲裁庭不能接受这类扩大或延伸的解释。迄今为止，没有确凿证据表明中石油在收购PK公司股权过程中与中石化集团已经建立了针对PK公司股权收购相关的书面的法律关系，对各自的权利义务划分、风险责任的承担、金融财务费用的分担等作出了约定。虽有迹象表明中石油集团完成收购后中石化集团有索求权益的行为，但没有明确证据显示上述两家集团公司存在联合情况下，仲裁庭不能认定本案存在联合竞标或联合收购的结论。

不论 UNI-TOP 公司做了多少工作，国勘公司没有根据《代理协议》的约定取得 PK 公司股权或其他权益补偿，协议约定的目标就没有达到，要依据协议规定要求国勘公司履行协议义务缺乏法律和合同基础。

对于国勘公司是否怠于或放弃应得权益的问题，庭审双方均认可本案确实存在国勘公司根据本案涉及的收购案向中石油集团方面主张权益的事实且国勘公司表示在本案审理过程中其仍然没有放弃向中石油集团方面追索权益的努力。国勘公司作为一个企业，从公司经营管理、追求公司最大利益的角度出发，放弃对其可以获得的巨大权益以规避对 UNI-TOP 公司支付代理酬金的责任

是十分荒唐的。

UNI-TOP 公司指责国勘公司怠于履行或放弃权利的说法不符合逻辑也没有事实基础。

综上所述，仲裁庭不认为《代理协议》规定的酬金支付条件已经成就。在国勘公司没有实际取得因本案涉及的 PK 公司的股权收购所应得的权益或与以此相关的其他权益进行的补偿之前，UNI-TOP 公司对代理酬金的索取缺乏法律依据，仲裁庭不能给予支持。但是，在国勘公司实际取得因本案涉及的 PK 公司的股权收购所应得的权益或与此相关的其他权益进行补偿之后，UNI-TOP 公司有权对代理酬金进行索取，国勘公司也有义务向 UNI-TOP 公司支付代理协议约定的酬金。由此，仲裁庭对于 UNI-TOP 公司现在就依据《代理协议》的相关规定对酬金支付而产生的其他赔偿请求，也不能给予认可。

2013 年 12 月 30 日，贸仲作出裁决：驳回 UNI-TOP 公司的全部仲裁请求。

关于第二次仲裁的情况：

2015 年 9 月 30 日，UNI-TOP 公司再次向贸仲提起仲裁。UNI-TOP 公司的理由是，前案裁决后有"新的事实"，所谓"新的事实"是指：2015 年 2 月 2 日，UNI-TOP 公司委托律师向国勘公司和中石化集团发函，要求披露前案裁决后，国勘公司是否主张权利。同日，UNI-TOP 公司委托律师向中石油集团发函，要求其披露就 PK 项目与国勘公司协商情况。

2015 年 8 月至 10 月，香港简松年律师行三次致函中石油股份

公司,指出中石油股份持有的 PK 项目资产涉及中石化集团的权益,中石油股份应披露和说明中石化集团对 PK 项目拥有权益的情况。中石油股份回复,2006 年收购时已经履行了法定信息披露程序,不存在应披露未披露的情形。

UNI-TOP 公司认为,该回复表明,从 2006 年起,国勘公司怠于履行《代理协议》的义务,根本没有向中石油集团追索 PK 公司股权和其他权益补偿,刻意阻碍对 UNI-TOP 公司给付义务的成就。

UNI-TOP 公司的仲裁请求为:1. 确认 UNI-TOP 公司与国勘公司于 2005 年 3 月 4 日签订的《代理协议》约定的酬金支付条件已经成就;2. 国勘公司向 UNI-TOP 公司支付《代理协议》项下的酬金 2154 万美元及自 2014 年 8 月 14 日起至国勘公司实际支付日止的利息,暂计至 2016 年 8 月 14 日的利息为 3 239 715.42 美元(人民银行基准贷款利率上浮 50%);3. 国勘公司赔偿 UNI-TOP 公司《代理协议》项下 UNI-TOP 公司销售代理权益的损失 133 634 359.5 美元;4. 国勘公司承担 UNI-TOP 公司本案项下的律师费用,由三部分组成,人民币 30 万,港币 259865 元,UNI-TOP 公司实际获得赔偿部分的 10%;5. 国勘公司承担全部仲裁费用;6. 给予 UNI-TOP 公司仲裁庭认为可以给予的其他救济。

2016 年 4 月 18 日,贸仲以 EMS 形式给国勘公司发送仲裁通知及附件,通知国勘公司仲裁案件受理情况,送达仲裁申请书、贸仲《仲裁规则》、《仲裁员名册》,通知国勘公司选定仲裁员等。收信地址是朝阳区惠新东街甲 6 号 1 楼,为国勘公司的住所地,收件人:张耀仓 / 法定代表人 / 其他负责人,电话 010—69165136,

邮件内容是"仲通及附"，寄件人是贸仲，崔新民（电话 010—82217788）。6 月 1 日贸仲发组庭通知、6 月 23 日发开庭通知都是按照上述地址发送，收件人的填写情形也与上述情形一致。

以上邮件均显示妥投，国勘公司收发室签章。国勘公司称，当时公司收发室确实收到上述文件，但是认为收件人是张耀仓，而张耀仓此时已经从中石化集团退休，因此将上述材料退回 EMS 工作人员，由其转投到中石化集团，国勘公司实际并未收取和查阅上述材料。2016 年 4 月 18 日贸仲向国勘公司寄送材料时，张耀仓并非国勘公司的法定代表人、主要负责人、其他负责人或普通员工，此时张耀仓已经从中石化集团退休，并正被"双规"期间。上述邮件由中石化集团办公厅统一保管。

2016 年 8 月 3 日，贸仲给国勘公司发送庭后函和缴费通知。收件人为：冯志强／法定代表人／其他负责人。该邮件国勘公司收到。国勘公司随后向贸仲提出程序异议，要求中止审理，重新送达，选定仲裁员。该请求被仲裁庭驳回。

2016 年 12 月 23 日，仲裁庭第二次开庭。双方均派人出庭，并陈述意见。经仲裁庭询问，国勘公司表示对仲裁庭组成没有异议，但对仲裁程序保留异议。

《裁决书》认为：

1. 关于本案是否违反"一裁终局"制度的分析与认定

虽然本案仲裁当事人、争议标的、仲裁请求与前案基本一致，但 UNI-TOP 公司在本案中提出的仲裁请求是基于前案裁决作出以后发生的事实，即国勘公司怠于向中石油集团方面主张 PK 公司的

股权或其他相关权益以及相应的证据，应当属于《民诉法解释》第二百四十八条规定的可以再次提起诉讼的"新的事实"。UNI-TOP公司在本案中提起的仲裁请求不违反"一事不再理"原则，不属于"一裁终局"的适用范围，仲裁庭决定对本案进行审理。

2. 国勘公司是否应当向 UNI-TOP 公司支付代理酬金的认定

前案裁决没有否定 UNI-TOP 公司将来在支付条件成就之时，可以向国勘公司主张代理酬金的权利。《代理协议》的有效期届满，不影响国勘公司履行支付代理酬金的义务。UNI-TOP公司已经按照《代理协议》的约定履行了代理义务。UNI-TOP公司有权利向国勘公司主张代理酬金。代理酬金的支付是附条件的，国勘公司阻止代理酬金支付条件的成就，代理酬金的支付条件视为已成就。《合同法》第四十五条第二款虽然是对附生效条件合同效力的具体规定，当中的法律拟制针对的是合同效力问题，而本案中代理酬金的支付条件实际上是合同履行的条件，但根据《合同法》第四十五条第二款背后的法理，该条款可以类推适用于合同的履行条件。《合同法》第四十五条第二款反映了合同生效前法律对当事人期待权的特别保护，以及通过反向推定条件成就或不成就来对恶意当事人进行法律的制裁。无论是合同的生效条件还是合同的履行条件，合同当事人对条件成就的期待权都应当同样的受到法律的保护。国勘公司应当向中石油集团追索 PK 公司的相关权益而怠于追索，该行为属于不正当地阻止代理酬金支付条件的成就。根据《合同法》第四十五条第二款的类推适用，仲裁庭认定代理酬金的支付条件已经成就。另外，根据合同的相对性原则，国勘

公司应当向 UNI-TOP 公司履行支付代理酬金的合同义务，按约定应为 2154 万美元。

3．仲裁庭认为，国勘公司无须赔偿 UNI-TOP 公司因未被授予代理权而遭受的预期权益损失。

4．关于前期已经支付的代理费是否应当抵扣的问题

依据《代理协议》的约定，在完成项目交易时前期费用全额冲抵酬金。尽管国勘公司在本案中未就此问题提出反请求或冲抵申请，但 UNI-TOP 公司的仲裁请求与该约定直接相关，该款约定对 UNI-TOP 公司仲裁请求中代理佣金的数额确定具有重大意义，故仲裁庭认为并不需要国勘公司提出仲裁反请求而应当主动按照合同约定予以冲抵前期费用 159 898 美元。

2017 年 6 月 30 日，贸仲作出（2017）中国贸仲京裁字第 0836 号裁决：（一）确认 UNI-TOP 公司与国勘公司于 2005 年 3 月 4 日签订的《代理协议》约定的酬金支付条件已经成就；（二）国勘公司向 UNI-TOP 公司支付《代理协议》项下的酬金 21 380 102 美元，及以 21 380 102 美元为本金、自 2014 年 8 月 14 日起至国勘公司实际支付日止的利息，利率按照中国人民银行同期贷款利率计算；（三）国勘公司向 UNI-TOP 公司补偿其律师费人民币 300 000 元，港币 259 865 元；（四）驳回 UNI-TOP 公司的其他仲裁请求；（五）本案仲裁费 848 329 美元，由 UNI-TOP 公司承担 70%，即 593 830.3 美元，由国勘公司承担 30%，即 254 498.7 美元。该笔费用由 UNI-TOP 公司预缴的等额仲裁预付金予以冲抵，国勘公司还应向 UNI-TOP 公司支付 254 498.7 美元以补偿国勘公司为其垫

付的仲裁费。

本院认为，UNI-TOP 公司系在中华人民共和国领域外注册的企业，涉案仲裁裁决系贸仲按涉外仲裁程序作出的涉外裁决。《北京市高级人民法院关于北京市第四中级人民法院案件管辖的规定》（2018 年修订）第一条第（三）款规定，北京市第四中级人民法院（北京铁路运输中级法院）管辖下列案件：……（三）应由本市人民法院管辖的申请确认仲裁协议效力案件、申请撤销仲裁裁决案件（不含申请撤销劳动争议仲裁裁决案件）……，故本院对本案享有管辖权。

关于涉外仲裁裁决，《中华人民共和国仲裁法》第七十条规定，"当事人提出证据证明涉外仲裁裁决有民事诉讼法第二百六十条（该法 2012 年修正后的第二百七十四条）第一款规定的情形之一的，经人民法院组成合议庭审查核实，裁定撤销。"《中华人民共和国民事诉讼法》（2012 年修正）第二百七十四条第一款规定："对中华人民共和国涉外仲裁机构作出的裁决，被申请人提出证据证明仲裁裁决有下列情形之一的，经人民法院组成合议庭审查核实，裁定不予执行：（一）当事人在合同中没有订有仲裁条款或者事后没有达成书面仲裁协议的；（二）被申请人没有得到指定仲裁员或者进行仲裁程序的通知，或者由于其他不属于被申请人负责的原因未能陈述意见的；（三）仲裁庭的组成或者仲裁的程序与仲裁规则不符的；（四）裁决的事项不属于仲裁协议的范围或者仲裁机构无权仲裁的。"上述规定是人民法院撤销涉外仲裁裁决的法定事由。

对于本案所涉撤销情形，焦点问题有两个：一是本案送达程序是否违反了《仲裁规则》的规定，即被申请人国勘公司没有得到指定仲裁员或者进行仲裁程序的通知，或者由于其他不属于被申请人国勘公司负责的原因未能陈述意见的情形；二是本案仲裁是否违反了《仲裁法》第九条关于"一裁终局"的规定，即裁决的事项不属于仲裁协议的范围或者仲裁机构无权仲裁的情形。

（一）关于送达问题

《仲裁规则》规定，仲裁文件发送至收件人的营业地、注册地、住所地、惯常居住地或通讯地址，即视为有效送达。贸仲在2016年8月之前以EMS形式向国勘公司的住所地发送的仲裁文件，国勘公司收发室均予以签章，回单显示妥投。虽然此时张耀仓不是国勘公司的法定代表人和其他负责人，但按照《仲裁规则》规定，上述文件投递到国勘公司的住所地或营业地，即视为有效送达。因此，国勘公司是否将上述文件当做张耀仓的私人信件予以处理，是否实际查阅了文件内容，均不影响贸仲有效送达的法律效果。因此，本案仲裁送达程序符合《仲裁规则》的规定。

（二）关于本案裁决是否违反了"一裁终局"的问题

《仲裁法》第九条规定："仲裁实行一裁终局的制度。裁决作出后，当事人就同一纠纷再申请仲裁或者向人民法院起诉的，仲裁委员会或者人民法院不予受理。裁决被人民法院依法裁定撤销或者不予执行的，当事人就该纠纷可以根据双方重新达成的仲裁协议申请仲裁，也可以向人民法院起诉。"依据该条规定，仲裁施行"一裁终局"制度，即对于"同一纠纷"，仲裁审理并作

出裁决后，不再受理当事人基于该纠纷的仲裁申请，其核心是对"同一纠纷"的判断。对此，可以参照最高人民法院关于适用《中华人民共和国民事诉讼法》的解释第二百四十七条关于"一事不再理"原则及判断标准的规定，从当事人、诉讼标的、仲裁请求三个方面予以分析认定。

首先，就两案是否属于"同一纠纷"分析如下：

第一，关于当事人，前案裁决与本案裁决的当事人相同，均为 UNI-TOP 公司和国勘公司。第二，关于争议标的，两案的争议标的相同。在两个仲裁案件中，UNI-TOP 公司的请求所依据的均是其与国勘公司于 2005 年 3 月 4 日签订的《代理协议》以及后来签订的《延期协议》、《补充协议》，均属于委托合同关系。第三，关于仲裁请求，两案的仲裁请求基本一致。UNI-TOP 公司在前后两案的仲裁请求中，核心内容均是要求国勘公司支付《代理协议》项下的酬金 2154 万美元、相应的利息及预期利益损失。

其次，UNI-TOP 公司所称的国勘公司怠于追索相关权益的情况是否属于"新的事实"。是否属于"新事实"，按照民事诉讼法的相应标准，主要看该"新事实"是否具有在当事人之间产生"权利义务"的法律效果，并且基于该"新事实"所产生的权利义务不受前案判决效力的约束。参照上述标准来看，本案中，依照《代理协议》的约定，酬金支付条件就是合同的履行条件，该条件是"在国勘公司确定的心理价位范围内完成交易"。关于"完成交易"的客观标准，生效的前案裁决已确认：国勘公司"实际取得"了 PK 公司股权或其他权益。由于本案中不存在附条件的法律行为，

所以不涉及到条件成就问题，也就不存在条件成就与不成就的"拟制情形"。国勘公司至今并未"实际取得"PK 公司的股权或相关其他权益，前案裁决后，UNI-TOP 公司与国勘公司之间的"权利义务"并无新的变化。所以前案裁决后并无"新的事实"。

此外，两案是否属于《仲裁法》中规定的"同一纠纷"，根据案件当事人、争议标的、仲裁请求等进行程序性审查即可做出判断，并不属于案件实体审理范围。

综上，从上述情形看，两案应属于"同一纠纷"，但贸仲分别于 2013 年 12 月 30 日和 2017 年 6 月 30 日作出了两次裁决，该情形明显违反了《仲裁法》第九条规定的"一裁终局"制度，应当予以撤销。

按照《最高人民法院关于仲裁司法审查案件报核问题的有关规定》，我院就本案裁决拟撤销的意见向北京市高级人民法院进行了报核，北京市高级人民法院按照规定向最高人民法院进行了报核。最高人民法院审核后作出《关于中国石化集团国际石油勘探开发有限公司申请撤销中国国际经济贸易仲裁委员会仲裁裁决一案请示的复函》，答复如下：首先，根据请示报告所述事实，2012 年 8 月 30 日，UNI-TOP 公司向贸仲申请仲裁，请求裁决国勘公司支付代理酬金、逾期利息损失以及逾期利益损失；国勘公司继续履行《代理协议》；由 UNI-TOP 公司享有 PK 公司在中国以外地区销售原油的代理权。贸仲于 2013 年 12 月 30 日作出裁决，驳回了 UNI-TOP 公司的全部仲裁请求。2015 年 9 月 30 日，UNI-TOP 公司再次向贸仲提起仲裁，贸仲予以受理，并做出本案裁决。贸

仲前后两次仲裁裁决所涉当事人相同、争议标的相同、仲裁请求相同，属于同一纠纷。《仲裁法》第九条规定："仲裁实行一裁终局的制度。裁决作出后，当事人就同一纠纷再申请仲裁或者向人民法院起诉的，仲裁委员会或者人民法院不予受理。"贸仲对同一纠纷进行了两次裁决的行为，违反了"一裁终局"的法律制度。其次，国勘公司未取得 PK 公司股权这一客观状态的延续并未使任何一方的权利义务产生新的变化，故 UNI-TOP 公司所称的国勘公司急于追索相关权益的情况并不属于"新的事实"。《最高人民法院关于适用〈中华人民共和国民事诉讼法〉的解释》第二百四十八条关于"裁判发生法律效力后，发生新的事实，当事人再次提起诉讼的，人民法院应当依法受理"的规定针对的是民事诉讼程序，不适用于仲裁程序。《仲裁法》并未规定仲裁机构有权在发生"新的事实"后再次仲裁。综上，依据《仲裁法》第九条、第七十条和《民事诉讼法》第二百七十四条第一款第(四)项的规定，本案仲裁裁决应予撤销。

综上，贸仲作出的〔2017〕中国贸仲京裁字第 0836 号裁决违反了《仲裁法》第九条规定的"一裁终局"制度，符合《民事诉讼法》第二百七十四条第一款第（四）项规定的"裁决的事项不属于仲裁协议的范围或者仲裁机构无权仲裁的"情形。被申请人 UNI-TOP 公司所称裁决是否违反"一裁终局"不属于法院审查撤销仲裁裁决案件范围的抗辩意见不能成立。申请人国勘公司的申请合法有据，本院依法予以支持。依据《中华人民共和国仲裁法》第九条、第七十条和《中华人民共和国民事诉讼法》第二百七十

四条第一款第（四）项之规定，裁定如下：

　　撤销中国国际经济贸易仲裁委员会〔2017〕中国贸仲京裁字第 0836 号裁决。

　　申请费 400 元，由被申请人 UNI-TOP Asia Investment Limited 负担（于本裁定书送达后七日内交纳）。



审　　判　　长　　冀　东

审　　判　　员　　高　晶

审　　判　　员　　崔智瑜

二〇一〇年〇〇月〇〇日

**本件与原本核对无异**

法　官　助　理　　王　静

书　　记　　员　　王玉婷

