## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

UNI-TOP ASIA INVESTMENT LTD.,

       *Petitioner*,

    v.

SINOPEC INTERNATIONAL
PETROLEUM EXPLORATION AND
PRODUCTION CORP.,

       *Respondent.*

No. 20-cv-1770 (DLF)

---

## <u>MEMORANDUM ORDER AND OPINION</u>

In this case, Uni-Top Asia Investment Ltd. (Uni-Top) seeks to confirm a foreign arbitral award that it obtained against Sinopec International Petroleum Exploration and Production Corp. (SIPC). *See* Pet'r's Pet. to Confirm Arbitral Award ¶¶ 1–2, Dkt. 1. Before this Court is Uni-Top's Motion for Leave to Conduct Jurisdictional Discovery. Dkt. 30. For the following reasons, the Court will both deny the motion in part and order briefing on why the remainder of the case should not be dismissed for improper venue.

## I.      BACKGROUND

Uni-Top is an oil and gas company that is organized under the laws of the British Virgin Islands. *See* Pet. ¶ 3; Pet'r's Mem. in Support of Pet. to Confirm at 6, Dkt. 1-1. SIPC is an oil and gas company that is organized under the laws of the People's Republic of China (PRC). *See* Pet. ¶ 4; Resp't's Mot. to Dismiss at 2–4, Dkt. 26-1 (citations omitted). In March 2005, Uni-Top entered an Agency Agreement with SIPC to assist it in acquiring shares of a Canadian oil and gas company. *See* Pet. ¶ 9. In return, Uni-Top would receive a commission upon "completion of the transaction within [SIPC's] target price." *See* Pet. Ex. B (Agency Agreement), at 5, Dkt. 1-3.

The Agreement required both parties resolve their disputes through arbitration before the China International Economic and Trade Arbitration Commission (CIETAC) and pursuant to Chinese law. *See id.* at 10–11.

Shortly after they entered the Agreement, the parties came to dispute whether Uni-Top had completed the condition necessary for receiving a commission. *See* Pet. ¶ 10; Pet'r's Mem. at 9–12. On December 30, 2013, a CIETAC tribunal held that the condition had not yet been satisfied. *See* Pet'r's Mem. at 10–11. On June 30, 2017, a second CIETAC tribunal reversed course based on "new facts [that had] occurred after the previous award was rendered," and ordered SIPC to pay Uni-Top a commission of $21,380,102. Pet. Ex. A (Arbitral Decision), at 9; *see* Pet'r's Mem. at 13. Then, on April 15, 2020, the Beijing Fourth Intermediate People's Court (Beijing Court) annulled the second tribunal's award for violating the principle of res judicata. *See* Pet'r's Mem. at 3, 14–15.

Uni-Top filed this action on June 29, 2020, in an effort to confirm the second tribunal's award. *See* Pet. ¶¶ 11–12. To that end, it invokes the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), a "multilateral treaty that addresses international arbitration," *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). *See* Pet. ¶¶ 1, 12. It also relies on that treaty's implementing legislation, which "grants federal courts jurisdiction over actions governed by the Convention" and "establishes venue for such actions," *Outokumpu*, 140 S. Ct. at 1644 (describing 9 U.S.C. §§ 203–204). *See* Pet. ¶¶ 5, 6. Under that legislation, federal district courts have original jurisdiction over all actions "falling under the Convention." 9 U.S.C. § 203. And those actions "may be brought" either in any district "designated in [an arbitration]

agreement" or in any court where an action "between the parties could be brought" "save for the arbitration agreement." *Id.* § 204.

In its petition, Uni-Top argues that this Court has personal jurisdiction over SIPC pursuant to 28 U.S.C. § 1330, which provides for personal jurisdiction in certain actions[1] against "foreign state[s]," as that term is "defined in section 1603(a) of [the same] title." Pet. ¶ 6. Section 1603(a), in turn, defines a "foreign state" to include "political subdivision[s]" and "agenc[ies] or instrumentalit[ies]" of foreign states. 28 U.S.C. § 1603(a). Uni-Top's argument under these provisions relies on SIPC's structure. SIPC represents that it is jointly owned by three entities, none of which is a majority shareholder. *See* Resp't's Mot. to Dismiss at 2–3 (citations omitted). Those entities are the China Chengtong Kechuang Investment Co., Ltd (CCKI), the China Reform Yuanbo Investment Co., Ltd (CRYI); and the Sinopec Group. *See id.* Each of those entities, in turn, is owned by the State Council of the PRC.[2] *See id.*

Uni-Top's petition also relies on SIPC's structure to establish venue. For that purpose, Uni-Top invokes 28 U.S.C. § 1391(f)(4), which allows civil actions to be brought in this District if they are "brought against a foreign state or political subdivision thereof," as those terms are used in "section 1603(a) of [the same] title." *See* Pet. ¶ 8. Uni-Top then argues that venue

---

[1] Section 1330 applies to "nonjury civil action[s] against a foreign state . . . [in] which the foreign state is not entitled to immunity either under [the Foreign Sovereign Immunities Act] or under any applicable international agreement." 28 U.S.C. § 1330(a). This action falls into that category, as the FSIA does not confer immunity against suits to confirm foreign arbitral awards. *See id.* § 1605(a)(6)(B).

[2] As SIPC explains, CCKI is a "wholly owned subsidiary of China Chengtong Holdings Group Co. Ltd." Resp't's Mot. to Dismiss at 3. CRYI is a "wholly owned subsidiary of China Reform Holdings Co. Ltd." *Id.* And "Chengtong Holdings Group Co. Ltd., China Reform Holdings Co. Ltd., and Sinopec Group are wholly owned by the State Council." *Id.*

would be proper under § 1391(f)(4) "save for the [parties'] arbitration agreement." 9 U.S.C.

§ 204. Uni-Top thus argues that venue is proper under § 204. *See* Pet. ¶ 8.

SIPC timely moved to dismiss the case on three grounds: first, that this Court lacks

personal jurisdiction because SIPC is not a "foreign state;" second, that venue is improper under

9 U.S.C. § 204; and third, that Uni-Top has failed to state a claim for which relief can be granted.

*See generally* Resp't's Mot. to Dismiss. Determining whether SIPC is a foreign state turns on

disputed questions of fact. Accordingly, Uni-Top moved to stay all proceedings on SIPC's

motion to dismiss pending the resolution of a forthcoming motion for jurisdictional discovery.

*See* Pet'r's Mot. to Stay Proceedings, Dkt. 28. The Court granted Uni-Top's motion for a stay,

*see* Minute Order of April 13, 2021, which SIPC did not oppose, *see* Pet'r's Mot. to Stay

Proceedings at 2. Because of that stay, Uni-Top never responded to SIPC's arguments on venue.

Uni-Top's motion for jurisdictional discovery is now ripe for review.

## II.     LEGAL STANDARD

To obtain jurisdictional discovery, "a plaintiff must have at least a good faith belief that

such discovery will enable it to show that the court has personal jurisdiction over the defendant."

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

The plaintiff must also make a "detailed showing of what discovery it wishes to conduct or what

results it thinks such discovery would produce." *NBC-USA Hous., Inc., Twenty-Six v. Donovan*,

774 F. Supp. 2d 277, 295 (D.D.C. 2011) (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F.

Supp. 2d 34, 53 (D.D.C. 2003)). "Where there is no showing of how jurisdictional discovery

would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the

burden and expense of discovery." *NBC-USA Hous.*, 744 F. Supp. 2d at 295 (quoting *Atlantigas*,

290 F. Supp. 2d at 53) (alterations in original)). Likewise, a plaintiff may "not use jurisdictional

discovery to 'conduct a fishing expedition in the hopes of discovering some basis of jurisdiction.'" *Nuevos Destinos, LLC v. Peck*, 2019 WL 78780, at *13 (D.D.C. Jan. 2, 2019) (quoting *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008)).

## III.    ANALYSIS

In its motion for jurisdictional discovery, Uni-Top offers four theories of how SIPC might qualify as a "foreign state." 28 U.S.C. § 1330. First, it argues that SIPC is an "agency or instrumentality" of the PRC because "it is majority-owned by [that] state or its political subdivision[s]." Pet'r's Mot. for Jurisdictional Discovery at 9, Dkt. 30-1 (citing 28 U.S.C § 1603(b)(2)). Second, it argues that SIPC is an "agency or instrumentality" because it is an "organ" of either the PRC or its political subdivisions. *Id.* at 14 (quoting 28 U.S.C. § 1603(b)(2)). Third, it argues that the SIPC is an "agency or instrumentality" because it is an "alter ego" of one of its shareholders, on the theory that the shareholder is also an agency or instrumentality of the PRC. *Id.* at 21. Finally, it argues that the SIPC is a "political subdivision" of the PRC because it is an "alter ego" of one of its shareholders, which are "political subdivision[s]" of the same. *Id.*

The Court will begin with the last theory: that SIPC is an alter ego of a political subdivision. Classifying SIPC as an alter ego is an uphill battle. The Supreme Court has held that "juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983). It has also emphasized, in a similar context, that "piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (citation omitted); *see also Transamerica*

*Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000) (requiring evidence of "supervisory control . . . [that] amounts to complete domination of the subsidiary").

To prevail on the above theory, Uni-Top must also show that SIPC's shareholders are political subdivisions of the PRC.  The D.C. Circuit has adopted a "categorical approach" to that classification: "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).  In determining whether a function is governmental, courts assess whether the function is "intertwined with [a state's] sovereign obligations" or are "necessary concomitants of sovereignty."  *Taylor v. Kingdom of Sweden*, 2019 WL 3536599, at *4 (D.D.C. Aug. 2, 2019) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994), and *Roeder*, 333 F.3d at 234).

Uni-Top has failed to establish a good faith belief that SIPC is an alter ego of one of its shareholders.  *See Caribbean Broad.*, 148 F.3d at 1090.  Although Uni-Top has presented evidence that SIPC's shareholders influence its operations and provide it financial support, *see* Pet'r's Mot. at 22–24, it is hardly unusual for parent companies to play those roles.  The fact that SIPC has "overlapping—if not identical—interests" with its shareholders is also unremarkable, *id.* at 22, as the same is also true for many parent-subsidiary relationships.  Moreover, this Court has previously noted that "some level of state control over an instrumentality's governing board does not automatically mean that the sovereign exercises 'complete domination' over the instrumentality."  *DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 215 (D.D.C. 2014).  And the evidence that multiple shareholders hold influence over SIPC weighs against the allegation that any one of them is SIPC's alter ego.  *See* Pet'r's Mot. at 22–24.  Uni-Top has thus

come nowhere close to showing what "amounts to complete domination," as the exceptional course of piercing the veil requires. *Transamerica*, 200 F.3d at 848.

Uni-Top has also failed to establish a good faith belief that one or more of SIPC's shareholders is a "political subdivision" of the PRC. 28 U.S.C. § 1603(a). On that point, Uni-Top argues that each of the shareholders is "so extensively managed and controlled by the [PRC] that it should be considered part of the PRC itself." Pet'r's Mot. at 11 (describing Sinopec); *see also id.* at 12–14 (addressing CCKI and CRYI). But Uni-Top also notes that Sinopec is an "oil refining, gas and petrochemical conglomerate[]," Pet. ¶ 4, and that CCKI and CRYI are holding companies, albeit with portfolios that are "strategically important to China's national security and economic development," Pet'r's Mot. at 12. Under the D.C. Circuit's "categorical approach," *Roeder*, 333 F.3d at 234, the core function of an oil and gas company is commercial, *see Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100, 110–11 (D.D.C. 2021); *see also NML Cap., Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530, 533 (S.D.N.Y. 2012) (holding that the functions of an Argentine energy company were predominately commercial even though it "performs [its] functions in accordance with the policies and goals of the [government]"). The same is true for asset managers that are "outside of the hierarchy" of a government, even if they are "owned by [that] government" and closely intertwined with national interests. *de Csepel v. Republic of Hungary*, 2020 WL 2343405, at *8 (D.D.C. May 11, 2020). Accordingly, even accepting Uni-Top's allegations of the PRC's influence, its proffered application of the core function test fails as a matter of law.

Finally, Uni-Top has failed to make a "detailed showing of what discovery it wishes to conduct" in support of its theory. *NBC-USA Hous.*, 774 F. Supp. 2d at 295 (citation omitted).

Only voluminous discovery could show that SIPC is an alter ego of one of its shareholders.[3]  But Uni-Top has provided no information on what kind of information it would request.  And although Uni-Top has offered to provide that information, *see* Pet'r's Reply at 21 n.89, Dkt. 33, any discovery request is likely to be futile as to whether SIPC's shareholders are "political subdivision[s]" of the PRC.  28 U.S.C. § 1603(a).  None of those shareholders is a party to this case.  None of them would be subject to jurisdictional discovery.  And Uni-Top has not indicated how discovery respecting SIPC would resolve the parties' factual dispute about the "core functions" of third parties.  *Compare, e.g.*, Pet'r's Mot. at 10–12 (arguing that Sinopec's core functions are governmental), *with* Resp't's Opp'n to Pet'r's Mot. for Jurisdictional Discovery at 27, Dkt. 32 (arguing that it is commercial).  The Court will thus deny jurisdictional discovery with respect to the theory that SIPC is an alter ego of a foreign political subdivision.

Uni-Top's remaining theories of personal jurisdiction, which all seek to classify SIPC as an "agency or instrumentality" of the PRC, are incompatible with its theory of venue.  28 U.S.C. § 1603(a).  As discussed above, Uni-Top argues that venue is proper in this District pursuant to the combination of 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).  Section 1391(f)(4) allows for venue in this District when a defendant is a "foreign state or political subdivision thereof."  To define those terms, it incorporates 28 U.S.C § 1603(a), which defines an entity as "foreign state" if it is the state itself, a "political subdivision" of that state, or an "agency or instrumentality" of the state.  Considering that definition, the best reading of "foreign state or political subdivision"

---

[3] Courts consider a wide array of factors in deciding whether one entity is an alter ego of another. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96–99 (D.C. Cir. 1982).  These include the "nature of the corporate ownership and control;" the "[f]ailure to maintain corporate minutes," "adequate corporate records," or certain "corporate formalities;" the "[c]ommingling of funds and other assets;" and the "diversion of the [purported alter ego]'s funds or assets." *Id.* at 97–99. Developing a record on these issues would require substantial discovery.

in § 1391(f)(4) excludes agencies or instrumentalities, such that § 1391(f)(4) does not provide venue for suits against those entities. *See OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*, 2020 WL 6342886, at *8–10 (D.D.C. Oct. 29, 2020) (explaining that the "broader FSIA statutory scheme" supports this conclusion).[4]  This produces a problem for Uni-Top:  If SIPC is an agency or instrumentality of the PRC, as opposed to a political subdivision of it, then § 1391(f)(4) does not provide for venue in this District.  And because Uni-Top has not identified another provision that allows litigation in this District, it appears that this case should be dismissed for improper venue.

This Court may resolve questions of venue before questions of personal jurisdiction. Dismissing an action for improper venue "does not entail any assumption by the court of substantive law-declaring power." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 424 (2007).  For the same reason, the Supreme Court has held that courts may dismiss a case under the *forum non conveniens* doctrine without first resolving a difficult jurisdictional issue.  *See id.* at 436; *see also id.* at 429 (noting that *forum non conveniens* is essentially  "a supervening venue provision").  And consistent with that holding, courts in this Circuit routinely address venue before either subject-matter or personal jurisdiction.  *See, e.g.*, *Producers of Renewables United for Integrity Truth & Transparency v. EPA*, 778 F. App'x 1, 4 (D.C. Cir. 2019); *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 82 (D.D.C. 2009); *Wei Lai Dev. LLC v. USCIS*, 2021 WL 2073403, at *6 (D.D.C. May 24, 2021).

---

[4] *OGI Corp.* notes that a provision adjacent to § 1391(f)(4) provides venue for suits against "agenc[ies] or instrumentalit[ies]" of foreign states but does not reference either those states themselves or their political subdivisions.  *See* 2020 WL 6342886 at *10 (citing 28 U.S.C. § 1391(f)(3)).  The meaningful variation between that provision and § 1391(f)(4) underscores that the latter does not apply to suits against agencies or instrumentalities.  *See id.*

Here, several considerations weigh against resolving the remainder of Uni-Top's motion without further briefing. SIPC objected to venue in its motion to dismiss. *See* Resp't's Mot. to Dismiss at 20–24; *see also Buchanan v. Manley*, 145 F.3d 386, 388 (D.C. Cir. 1998) (noting that venue is an affirmative defense that must be raised in a timely matter). The parties' Agreement does not designate this District as an appropriate forum for litigation. *See* 9 U.S.C. § 204; Agency Agreement at 10–11. This Court has previously read § 1391(f)(4) to foreclose venue under Uni-Top's remaining theories of personal jurisdiction, which all allege that SIPC is an agency or instrumentality of the PRC. *See OGI Grp.*, 2020 WL 6342886, at *8–10. And Uni-Top has not identified another provision under which venue would be proper under those theories. *See* Pet. ¶ 8. This Court will not order jurisdictional discovery if another threshold issue requires dismissing this case. Accordingly, Uni-Top is ordered to file additional briefing, on or before February 9, 2022, that addresses whether venue would be proper if SIPC is an "agency or instrumentality" of the PRC, 28 U.S.C. § 1603.

## CONCLUSION

Accordingly, it is

**ORDERED** that the petitioner's Motion for Leave to Conduct Jurisdictional Discovery, Dkt. 30, is **DENIED IN PART** with respect to the theory that the respondent is a "political subdivision" of the People's Republic of China, 28 U.S.C. § 1603(a). It is further

**ORDERED** that the petitioner shall file a supplemental brief, on or before February 9, 2022, that addresses why this case should not be dismissed for improper venue. The respondent shall file any response on or before February 16, 2022. Each brief shall be no longer than fifteen pages.

**SO ORDERED.**

_____
DABNEY L. FRIEDRICH
United States District Judge

January 26, 2022