# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNI-TOP ASIA INVESTMENT LTD.,

    *Petitioner*,

    v.

SINOPEC INTERNATIONAL
PETROLEUM EXPLORATION AND
PRODUCTION CORP.,

    *Respondent.*

No. 20-cv-1770 (DLF)

## MEMORANDUM OPINION

In this case, Uni-Top Asia Investment Ltd. (Uni-Top) seeks to confirm a foreign arbitral award that it obtained against Sinopec International Petroleum Exploration and Production Corp. (SIPC).  *See* Pet'r's Pet. to Confirm Arbitral Award ¶¶ 1–2, Dkt. 1.  SIPC has moved to dismiss for lack of jurisdiction, improper venue, and the failure to state a claim.  *See* Resp't's Mot. to Dismiss, Dkt. 26.  Uni-Top, in turn, has moved for jurisdictional discovery.  *See* Pet'r's Mot. for Jurisdictional Discovery, Dkt. 30.  In a previous opinion, this Court denied jurisdictional discovery with respect to the theory that SIPC is "political subdivision" of the People's Republic of China (PRC).  Mem. Op. of Jan. 26, 2022 at 10, Dkt. 34.  It also ordered supplementary briefing on whether venue would be proper in this District under Uni-Top's remaining theories of personal jurisdiction, which all require classifying SIPC as an "agency or instrumentality" of the PRC.  *Id.*  For the reasons that follow, the Court will hold that venue would be improper if SIPC were an "agency or instrumentality" of the PRC.  Accordingly, it will grant SIPC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) and deny Uni-Top's motion for jurisdictional discovery as moot.

## I.     BACKGROUND

Uni-Top is an oil and gas company that is organized under the laws of the British Virgin Islands.  *See* Pet. to Confirm ¶ 3; Pet'r's Mem. in Supp. of Pet. to Confirm at 6, Dkt. 1-1.  SIPC is an oil and gas company that is organized under the laws of the People's Republic of China (PRC).  *See* Pet. to Confirm ¶ 4; Resp't's Mem. in Supp. of Mot. to Dismiss at 2–4, Dkt. 26-1 (citations omitted).  As relevant here, the parties dispute whether Uni-Top is entitled to a commission under the terms of their Agency Agreement.  *See* Mem. Op. at 1–2.  That Agreement requires the parties to resolve their disputes through arbitration pursuant to Chinese law and before the China International Economic and Trade Arbitration Commission (CIETAC).  *See id.* at 2.  Although one CIETAC tribunal found that Uni-Top was entitled to the commission, the Beijing Fourth Intermediate People's Court (Beijing Court) annulled the tribunal's decision.  *See id.*

Uni-Top filed this action to confirm the CIETAC tribunal's decision.  *See* Pet. to Confirm ¶¶ 11–12.  In doing so, Uni-Top relies on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), a "multilateral treaty that addresses international arbitration," *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020).  *See* Pet. to Confirm ¶¶ 1, 12.  It also relies on that treaty's implementing legislation, which "grants federal courts jurisdiction over actions governed by the Convention" and "establishes venue for such actions," *Outokumpu*, 140 S. Ct. at 1644 (citation omitted).  *See* Pet. to Confirm ¶¶ 5, 6.  That legislation grants federal district courts original jurisdiction over all actions "falling under the Convention."  9 U.S.C. § 203.  It also provides that those actions "may be brought" either in any district "designated in [an

arbitration] agreement" or in any court where an action "between the parties could be brought" "save for the arbitration agreement." *Id.* § 204.

Uni-Top argues that this Court has personal jurisdiction over SIPC pursuant to 28 U.S.C. § 1330(a)–(b), which confers personal jurisdiction in certain actions[1] against "foreign state[s]," as that term is "defined in [28 U.S.C. §] 1603(a)." Pet. to Confirm ¶ 6. Section 1603(a), in turn, defines "foreign state[s]" to include both "political subdivision[s]" of those states and "agenc[ies] or instrumentalit[ies]" of the same. 28 U.S.C. § 1603(a). To invoke those provisions in this case, Uni-Top relies on SIPC's structure. SIPC represents that it is jointly owned by three entities: China Chengtong Kechuang Investment Co., Ltd (CCKI), China Reform Yuanbo Investment Co., Ltd (CRYI), and Sinopec Group. *See* Resp't's Mem. at 2–3 (citations omitted). It further represents that none of those entities is a majority shareholder, but that each of them is owned by the State Council of the PRC.[2] *See id.* Uni-Top argues that this structure, combined with additional information about the companies' relationship, suffices to classify SIPC as either a political subdivision or an agency or instrumentality of the PRC.

Uni-Top also relies on SIPC's structure to establish venue. In the petition to confirm its arbitration award, Uni-Top invoked 9 U.S.C. § 204, which provides that actions under the New York Convention may be brought in any court where the parties could have proceeded "save for [their] arbitration agreement." *Id.* § 204. It further invoked 28 U.S.C. § 1391(f)(4), which

---

[1] Section 1330 applies to "nonjury civil action[s] against a foreign state . . . [in] which the foreign state is not entitled to immunity either under [the Foreign Sovereign Immunities Act (FSIA)] or under any applicable international agreement." 28 U.S.C. § 1330(a). This action falls into that category, as the FSIA does not confer immunity against suits to confirm foreign arbitral awards. *See id.* § 1605(a)(6)(B).

[2] As SIPC explains, CCKI is a "wholly owned subsidiary of China Chengtong Holdings Group Co. Ltd." Resp't's Mot. to Dismiss at 3. CRYI is a "wholly owned subsidiary of China Reform Holdings Co. Ltd." *Id.* And "Chengtong Holdings Group Co. Ltd., China Reform Holdings Co. Ltd., and Sinopec Group are wholly owned by the State Council." *Id.*

allows civil actions to be brought in this District if they are "brought against a foreign state or political subdivision thereof," as those terms are used in "section 1603(a)." *See* Pet. to Confirm ¶ 8.  Uni-Top argued that the combination of those provisions allows its action to proceed here.

SIPC timely moved to dismiss the case on three grounds: first, that this Court lacks personal jurisdiction because SIPC is not a "foreign state;" second, that venue is improper under 9 U.S.C. § 1391(f)(4); and third, that Uni-Top has failed to state a claim for which relief can be granted.  *See generally* Resp't's Mot. to Dismiss.  Determining whether SIPC is a foreign state turns on disputed questions of fact.  Accordingly, Uni-Top moved to stay all proceedings on SIPC's motion to dismiss pending the resolution of its motion for jurisdictional discovery.  *See* Pet'r's Mot. to Stay Proceedings, Dkt. 28.  The Court granted Uni-Top's motion for a stay, *see* Minute Order of April 13, 2021, which SIPC did not oppose, *see* Pet'r's Mot. to Stay Proceedings at 2.  Because of that stay, Uni-Top postponed filing a response to SIPC's motion to dismiss.

In its motion for jurisdictional discovery, Uni-Top offers four theories for how SIPC could qualify as either a "political subdivision" or an "agency or instrumentality" of the PRC.  28 U.S.C. § 1330, 1603(a).  First, it argues that the SIPC is a "political subdivision" because it is an "alter ego" of one of its shareholders and because its shareholders are "political subdivision[s]" of the PRC.  Pet'r's Mem. in Supp. of Mot. for Jurisdictional Discovery at 21, Dkt. 30-1.  Second, it argues that SIPC is an "agency or instrumentality" because "it is majority-owned by [the PRC] or its political subdivision[s]."  *Id.* at 9 (citing 28 U.S.C § 1603(b)(2)).  Third, it argues that SIPC is an "agency or instrumentality" because it is an "organ" of either the PRC or its political subdivisions.  *Id.* at 14 (quoting 28 U.S.C. § 1603(b)(2)).  Finally, it argues that the

SIPC is an "agency or instrumentality" because it is an "alter ego" of one of its shareholders and because that shareholder is also an agency or instrumentality of the PRC.  *Id.* at 21.

In a previous opinion, this Court denied jurisdictional discovery with respect to the theory that SIPC is an alter ego of a "political subdivision" of the PRC  *See* Mem. Op. at 6–8.  The Court reasoned that Uni-Top had not "establish[ed] a good faith belief that SIPC is an alter ego of one of its shareholders."  *Id.* at 6 (citing *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998)).  It further reasoned that Uni-Top had failed to "establish a good faith belief that one or more of SIPC's shareholders is a 'political subdivision' of the PRC.  *Id.* at 7 (quoting 28 U.S.C. § 1603(a)).  Finally, it found that Uni-Top made no "'detailed showing of what discovery it wishe[d] to conduct' in support of its theory."  *Id.* at 8 (quoting *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011)).  As a result of that holding, Uni-Top may establish personal jurisdiction over SIPC only if it shows that the company is an "agency or instrumentality" of the PRC, 28 U.S.C. § 1603(a).

In that same opinion, this Court ordered supplemental briefing on whether venue would be proper if Uni-Top were an "agency or instrumentality."  *See* Mem. Op. at 8–10.  As discussed above, Uni-Top's initial theory of venue relied on 28 U.S.C. § 1391(f)(4), which allows civil actions to proceed in this District if they are "brought against a foreign state or political subdivision thereof."  *See supra.*  The Court interpreted that language to exclude actions brought against an "agency or instrumentality" of a foreign state.  *See* Mem. Op. at 8–9; *see also OGI Grp. Corp. v. Oil Projects Co. of Ministry of Oil*, No. 19-cv-2619 (APM), 2020 WL 6342886, at *8–10 (D.D.C. Oct. 29, 2020) (reaching the same conclusion).  The Court also noted that Uni-Top had "not identified another provision that allows litigation in this District."  Mem. Op. at 9.  Accordingly, the Court directed Uni-Top to file a supplemental brief on whether this action

should be dismissed for improper venue.  *See id.* at 10.  The Court also allowed SIPC to file a response.  *See id.*

In its supplemental brief, Uni-Top offers three additional theories of venue.  *See* Pet'r's Suppl. Br. at 8–12, Dkt. 35.  First, it invokes 28 U.S.C. § 1391(f)(3), which provides for venue "in any judicial district in which the agency or instrumentality is . . . doing business."  *See* Pet'r's Suppl. Br. at 8–10.  Second, it invokes 28 U.S.C. § 1391(c)(3), which provides that a "defendant not resident in the United States may be sued in any judicial district."  *See* Pet'r's Suppl. Br. at 11.  Finally, it invokes 28 U.S.C. § 1391(b)(3), which provides for venue in any district "in which any defendant is subject to the court's personal jurisdiction" if there is no district in which an action may otherwise be brought as provided in this section."  *See* Pet'r's Suppl. Br. at 11–12.  Uni-Top further requests leave, "if necessary," to conduct "venue-related discovery specifically tailored to whether SIPC conducts business within this District."  *Id.* at 15.

On account of the parties' supplemental briefing, SIPC's motion to dismiss for improper venue is now ripe for review.  *See* Resp't's Mem. at 20–25; Pet'r's Suppl. Br. at 8–15; Resp't's Suppl. Br. at 5–14, Dkt. 36.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) "instructs the court to dismiss or transfer a case if venue is improper" in a plaintiff or petitioner's chosen forum.  *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009).  The Court accepts the petitioner' well-pleaded allegations regarding venue as true and draws reasonable inferences from those allegations in its favor.  *See Abraham v. Burwell*, 110 F. Supp. 3d 25, 28 (D.D.C. 2015).  "The court need not, however, accept the [petitioner']s legal conclusions as true, and may consider material outside of the pleadings."  *Id.* (citations omitted).  Because venue is an affirmative

defense, the petitioner is not required to address venue in its pleadings. *See SEC v. Ernst & Young*, 775 F. Supp. 411, 412 (D.D.C. 1991). However, where a defendant or respondent has timely objected to venue, "the burden is on the [petitioner] to establish that the district [it] chose is a proper venue." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (citation omitted); *see also Sanchez-Mercedes v. Bureau of Prisons*, 2020 WL 1821131, at *4 (D.D.C. Apr. 10, 2020).

Where the propriety of venue turns on disputed questions of fact, courts may order corresponding discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Motions for venue discovery are subject to the same legal standards that apply to motions for jurisdictional discovery. *See Delta Sigma Theta Sorority, Inc. v. Bivins*, 215 F. Supp. 3d 12, 15–16 (D.D.C. 2013). To obtain venue discovery, the petitioner must therefore "have at least a good faith belief that such discovery will enable it to show [that venue is proper in this District]." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). The petitioner must also make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011) (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003)).

## III.   ANALYSIS

This Court has previously held that Uni-Top cannot establish personal jurisdiction over SIPC on the theory that the latter is a "political subdivision" of the PRC, 28 U.S.C. § 1603(a). *See* Mem. Op. at 6–8. To establish personal jurisdiction in this case, it must accordingly show that SIPC qualifies as an "agency or instrumentality" of the same. *See* 28 U.S.C. §§ 1330(a)–(b), 1603(a). For the following reasons, the Court will hold that venue would be improper in this

District if SIPC qualified as an "agency or instrumentality."  Accordingly, the Court will dismiss

this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

A.      **Uni-Top Has Failed to Show That SIPC Does Business in This District, as Necessary for Venue Under 28 U.S.C. § 1391(f)(3)**

Section 1391(f)(3) provides that venue for an action "brought against an agency or

instrumentality of a foreign state" is proper "in any judicial district in which the agency or

instrumentality is licensed to do business or is doing business."  28 U.S.C. § 1391(f)(3).  For this

purpose, an entity does business in a district if it "engag[es] in transactions there to such an

extent and of such a nature" that it could be required to "comply with [the local] licensing

scheme."  *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 721–22 (D.C. Cir. 1986) (citations

omitted).  In this case, the Court has identified no well-pleaded allegations regarding whether

SIPC does business in this District.  *See generally* Pet. to Confirm.  Accordingly, Uni-Top bears

the burden of establishing venue under § 1391(f)(3) based on its supplemental brief,

accompanying declaration, and supporting exhibits.  *See Abraham*, 110 F. Supp. 3d at 28 (noting

that courts may review "material outside of the pleadings" in assessing venue).

In its supplemental brief, Uni-Top argues that SIPC does business in this District "either

directly or through Sinopec Group, Sinopec America, Sinopec D.C. LLP, or other agents or

lobbyists that represent and do business on behalf of SIPC and its affiliates and subsidiaries."

*See* Pet'r's Suppl. Br. at 8.  But Uni-Top does not provide any evidence that SIPC does business

here directly, *see id.* at 8–10, so it cannot establish venue on that ground.  Moreover, although

Uni-Top presents some evidence that Sinopec Group and its affiliates conduct business in this

District, *see, e.g.*, Pet'r's Suppl. Br. Ex. F, Dkt. 35-8 (noting the registration of a lobbyist in the

District on behalf of "Sinopec Group through Sinopec D.C."), it has not established a sufficient connection between those entities and SIPC.

The Court begins with the plain text of § 1391(f)(3), which asks whether "the [defendant or respondent] agency or instrumentality . . . is doing business" in a particular district.  28 U.S.C. § 1391(f)(3).  That language is most naturally read to require a showing that SIPC itself does business in this District, not that one of its parent companies or affiliates does so.  *See id.*  This interpretation is consistent with the general practice of treating foreign juridical entities as "distinct and independent."  *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611, 626–27 (1983).  It is also consistent with the structure of § 1391(f), which distinguishes suits brought against "an agency or instrumentality," 28 U.S.C. § 1391(f)(3), from those brought against other juridical entities—namely, "a foreign state or political subdivision thereof," *id.* § 1391(f)(4).  *See OGI Grp.*, 2020 WL 6342886, at *10 (explaining this structural distinction).  Thus, because Uni-Top has not provided any evidence that SIPC itself "is doing business" in this District, it has not shown that venue is proper under § 1391(f)(3).

Uni-Top has two remaining arguments through which it attempts to establish venue under § 1391(f)(3).  First, it argues that the conduct of Sinopec Group is "attributable to SIPC" on the ground that the former is the latter's agent.  Pet'r's Suppl. Br. at 9; *see id.* ("[I]n assessing personal jurisdiction under either a constitutional due process standard or a statutory standard, courts may look to the contacts between the forum and agents of the defendant." (quoting *Mar. Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1105 (D.C. Cir. 1982))).  And second, consistent with its previous submissions, Uni-Top seeks to attribute Sinopec Group's conduct to SIPC on the ground that the latter is the former's alter ego.  Neither argument succeeds.

To begin, even assuming that § 1391(f)(3) incorporates some principles of agency law, Uni-Top has failed to establish the required "contacts between the forum and agents of the defendant," *Mar. Int'l*, 693 F.2d 1105.  Because certain actions of an agent may be attributed to its principal, *see Level the Playing Field v. FEC*, 961 F.3d 462, 467 (D.C. Cir. 2020), a principal could be said to "do[] business" in a district by directing its agent to "do[] business" there, 28 U.S.C. § 1391(f)(3).  As relevant to that inquiry, Uni-Top has shown that Sinopec Group conducts some business in this District.  *See* Pet'r's Suppl. Br. at 8–10.  It has also provided some evidence that this business benefits its subsidiaries, and it is plausible to think that SIPC receives some of those benefits.  *See id.* at 9–10.  But an agency relationship requires more than a mere benefit; it also requires that a principal have "the right to control the conduct of the agent with respect to matters entrusted to [it.]" *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000) (citation omitted).  And here, the record contains no evidence that SIPC exercises control over its parent company.  Uni-Top in fact took the opposite position in its motion for jurisdictional discovery, which argued that Sinopec Group exercises substantial control over SIPC.  *See* Pet'r's Mem. in Supp. of Jurisdictional Discovery at 22–23.  Further, the possibility that SIPC is an agent of Sinopec Group provides no support for attributing the latter's conduct to the former.  Although the actions of an agent may be attributed to its principal, *see Level the Playing Field*, 961 F.3d at 467, the actions of a principal are not ordinarily attributable to agent, *see Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 1, 12 (D.D.C. 2013) (citations omitted).  Uni-Top's argument from agency law accordingly fails.

Uni-Top has further failed to show that SIPC is an alter ego of Sinopec Group.  As the Court explained in its previous opinion, "[c]lassifying SIPC as an alter ego is an uphill battle." Mem. Op. at 5.  The Supreme Court has held that "juridical entities distinct and independent

from their sovereign should normally be treated as such." *Bancec*, 462 U.S. at 627.  It has also

emphasized, in a similar context, that "piercing the corporate veil . . . is the rare exception,

applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v.*

*Patrickson*, 538 U.S. 468, 475 (2003) (citation omitted).  For the reasons explained in its prior

opinion, this Court held that "Uni-Top has failed to establish a good faith belief that SIPC is an

alter ego of one of its shareholders," a category that includes Sinopec Group.  Mem. Op. at 6.

And because Uni-Top's supplemental filing contains no new evidence to support alter ego status,

the Court has no cause to reconsider its holding.

For the above reasons, Uni-Top has not shown that SIPC does business in the District, as

necessary to establish venue under § 1391(f)(3).  Nor has it shown a "good faith belief" that

venue discovery would allow it to make that showing.  *Caribbean Broad. Sys.*, 148 F.3d at 1090;

*see Delta Sigma Theta Sorority*, 215 F. Supp. 3d at 15–16.  As discussed above, Uni-Top has

presented no evidence that SIPC is itself doing business in this District, as necessary under

§ 1391(f)(3).  And although the bar for a "good faith belief" is not high, it requires more than a

reference to information and belief in an opposition brief, *see* Pet'r's Suppl. Br. at 8, and

unrelated evidence about other entities' conduct.  Accordingly, to the degree that Uni-Top's

supplemental briefing can be construed as a motion for venue discovery, that motion is denied.

## B.    Venue Is Improper Under 28 U.S.C. § 1391(b)(3), (c)(3) Because Those Provisions Do Not Apply to Suits Against Foreign States

Uni-Top next attempts to establish venue under 28 U.S.C. § 1391(b)(3) and § 1391(c)(3).

Section 1391(b)(3) provides that a "civil action may be brought in . . . any judicial district in

which any defendant is subject to the court's personal jurisdiction" "if there is no district in

which an action may otherwise be brought as provided in [§ 1391(b)(1)–(2)]." *Id.* § 1391(b)(3).

11

Section 1391(c)(3), in turn, provides "a defendant not resident in the United States may be sued in any judicial district." *Id.* § 1391(c)(3). Because neither of those provisions applies in actions "against a foreign state," *id.* § 1391(f), they do provide for venue in this case.

The Court begins with the text and structure of § 1391. Section 1391(b) provides that a general "civil action may be brought in" three kinds of districts: those identified by the defendants' residence, *see id.* § 1391(b)(1); those identified by the location of the events, omissions, or property at issue, *see id.* § 1391(b)(2); and those in which any defendant "is subject to the court's personal jurisdiction," *id.* § 1391(b)(3). It further provides that venue is proper under the third category only where there is "no federal district anywhere in the United States*"* that satisfies § 1391(b)(1), (b)(2). Wright & Miller, Federal Practice & Procedure § 3806.1 (4th ed. 2021) (emphasis omitted). From there, § 1391(c) governs the determination of residence "[f]or all venue purposes," 28 U.S.C. § 1391(c), and § 1391(d) governs the residence of corporations that are subject to personal jurisdiction in states with multiple districts, *see id.* § 1391(d). The remainder of § 1391 provides specific rules for narrow classes of civil actions. Section 1391(e) governs actions where the defendant is an officer or employee of the United States. *See id.* § 1391(e). Section 1391(f) governs suits "against [] foreign state[s]." *Id.* § 1391(f). Finally, § 1391(g) governs actions that arise from the narrow class of accidents described in 28 U.S.C. § 1369.[3] *See id.* § 1391(g).

Section 1391(f) provides in full that "[a] civil action against a foreign state as defined in section 1603(a) of this title may be brought:

---

[3] That provision concerns actions "involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. § 1369(a).

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
>
> (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;
>
> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or
>
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

*Id.* § 1391(f).

The text and structure of § 1391 make clear that venue for suits against foreign states is governed by § 1391(f), to the exclusion of § 1391(b) and § 1391(c). "[I]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation omitted). That canon applies not only where a specific provision contradicts a general one, but also where "a general authorization and a more limited, specific authorization exist side-by-side." *Id.* As described above, Congress has authorized venue for all civil suits in § 1391(b) and specifically authorized venue for suits against foreign states in § 1391(f). That structure suggests that "terms of the specific authorization must be complied with." *RadLAX*, 566 U.S. at 645. Moreover, a contrary conclusion would render part of § 1391(f) superfluous. Both § 1391(b)(2) and § 1391(f)(1) provide that venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. §§ 1391(b)(2), (f)(1). If the general provisions of § 1391(b) applied to suits against foreign states, § 1391(f)(1) would be entirely redundant. The Court will not construe § 1391 to create unnecessary surplusage. *See D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932).

13

Other federal courts have consistently treated § 1391(f) as the exclusive basis for venue in suits against foreign sovereigns.  The Second Circuit has explained that, when the defendant in an action to enforce a foreign arbitral award is a foreign state, "the FSIA's procedural mandates control, including the requirement[] that . . . venue be proper under 28 U.S.C. § 1391(f)."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 124 (2d Cir. 2017).[4]  The Fourth Circuit has said the same in dicta, *see Berg v. Kingdom of Netherlands*, 24 F.4th 987, 996 (4th Cir. 2022), and at least one other district court reached the same conclusion in a reasoned opinion, *see Rodriguez v. Pan Am. Health Org.*, 2020 WL 1666757, at *9 (S.D. Fla. 2020).  The conclusion also tracks the Supreme Court's holding that the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).  On the other side of things, Uni-Top has not identified any case in which a federal court has applied § 1391(b) or § 1391(c) in a suit against a foreign state.  Indeed, the only cases it submits in this context concern suits against foreign individuals or corporations, not foreign states.  *See Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 325 (D.D.C. 2018); *SEC v. Nielson*, 2020 WL 9439395, at *12 (D.D.C. Feb. 13, 2020).

Uni-Top's only textual argument also fails to persuade.  Uni-Top emphasizes that § 1391(f) uses the permissive word "may" to identify where suits against foreign states "may be brought."  *See* Pet'r's Suppl. Br. at 10–11 (quoting 28 U.S.C. § 1391(f)).  From that observation, it argues that "a party may bring an action against a foreign state in any of the venues set forth in

---

[4] *Mobil Cerro* concerned an action under the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States, *see Mobil Cerro*, 863 F.3d at 99, not the New York Convention.  The distinction is relevant only insofar as the New York Convention separately authorizes venue in any district "designated in [a covered arbitration] agreement."  9 U.S.C. § 204.

Section 1391(f) or in any other venue that federal law allows under Section 1391." *Id.*  But

although "may" is a permissive term, *see Bennett v. Panama Canal Co.*, 475 F.2d 1280, 1282

(D.C. Cir. 1973), it does not grant the degree of permission that Uni-Top suggests.  The word

"may" in § 1391(f) makes clear that plaintiffs can proceed under any one of the statute's four

subsections.  For example, a plaintiff "may" bring suit against a foreign state where the disputed

property is located, *id.* § 1391(f)(1), or he "may" bring suit in this District, *id.* § 1391(f)(4).

Because that reading of "may" gives effect to its permissive character, there is no reason to adopt

Uni-Top's more expansive reading of its scope, which would create the surplusage described

above.

Uni-Top's argument that the above approach creates a "venue gap" likewise falls short.

Pet'r's Suppl. Br. at 11 n.15.  Uni-Top contends that the approach prevents federal courts from

resolving certain suits under the New York Convention, for which Congress has specifically

created subject matter jurisdiction.  *See id.* (citing 9 U.S.C. § 203).  But it is unclear whether this

suit falls in that category.  This Court has had no occasion to decide whether venue is appropriate

in another district, which turns on whether SIPC does business elsewhere in the United States.

*See supra*.  Moreover, the only actions that fall within the venue gap are those against an agency

or instrumentality of a foreign state, *see* 28 U.S.C. § 1391(f)(4), that does no business in the

United States, *see id.* § 1391(f)(3), where the parties dispute foreign events, omissions, or

property, *see id.* § 1391(f)(1), and where the parties have agreed to arbitrate outside the United

States, *see* 9 U.S.C. § 904.  That is a small fraction of the actions contemplated under the New

York Convention and its implementing statutes.  Finally, Congress might have thought that such

actions would independently merit dismissal for *forum non conveniens*, which the Supreme

Court has described as "essentially, a supervening venue provision," *Sinochem Int'l Co. v.*

*Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).  *See In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 496 (2d Cir. 2002) (holding that the "doctrine of *forum non conviens*, a procedural rule, may be applied . . . under the provisions of the [New York] Convention").[5]  That Congress declined to provide venue for the actions in § 1391(f) is accordingly unremarkable.

For the reasons above, the Court hold that venue is improper under both § 1391(b)(3) and § 1391(c)(3).  Uni-Top has accordingly failed to show that venue is proper in this District.

## C.   This Court May Dismiss For Improper Venue Without Resolving the Remaining Jurisdictional Issues

This Court may dismiss this action for improper venue without resolving the parties' dispute over personal jurisdiction.  *See* Mem. Op. at 9–10.  Federal courts must ordinarily begin with their own jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  Because "[j]urisdiction is power to declare the law," the "requirement that [it] be established as a threshold matter springs from the nature and limits of the judicial power of the United States."  *Id.* at 94–95 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868), and *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  But dismissing an action for improper venue "does not entail any assumption by the court of substantive law-declaring power."  *Sinochem*, 549 U.S. at 424.  For the same reason, the Supreme Court has held that courts may dismiss a case for *forum non conveniens* without first resolving a difficult

---

[5] The D.C. Circuit has "held that the doctrine of *forum non conveniens* does not apply to actions in the United States to enforce arbitral awards against foreign nations."  *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016) (citing *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 303–04 (D.C. Cir. 2005)).  But that holding, which turned on the general principles of *forum non conveniens* rather than the text of any statute governing foreign arbitrations, sheds no light on what Congress would have anticipated when drafting § 1391(f).

jurisdictional issue.  *See id.* at 436; *see also id.* at 429 (noting that *forum non conveniens* is essentially  "a supervening venue provision").  And consistent with that holding, courts in this Circuit routinely address venue before either subject-matter or personal jurisdiction.  *See, e.g.*, *Producers of Renewables United for Integrity Truth & Transparency v. EPA*, 778 F. App'x 1, 4 (D.C. Cir. 2019); *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 82 (D.D.C. 2009); *Wei Lai Dev. LLC v. USCIS*, No. 21-cv-887 (RDM), 2021 WL 2073403, at *6 (D.D.C. May 24, 2021).  This Court will do the same here.

The Supreme Court's decision in *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), does not warrant a different approach.  *See* Pet'r's Suppl. Br. at 12–13.  That case noted that "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."  *Leroy*, 443 U.S. at 180.  It then remarked that "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties."  *See id.* (citations omitted).  Accordingly, it held that courts "may reverse the normal order of considering personal jurisdiction and venue" "when there is a sound prudential justification for doing so."[6]  *Id.*  Such is the case here.

Uni-Top requests that this Court first allow jurisdictional discovery on whether SIPC is an "agency or instrumentality" of the PRC, 28 U.S.C. § 1603(a).  *See* Pet'r's Suppl. Br. at 15.

---

[6] Following *Leroy*, the Court clarified that personal jurisdiction is a threshold issue that must ordinarily be decided before the merits.  *See Sinochem*, 549 U.S. at 430–31; *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  It also held, however, that courts may resolve certain threshold non-jurisdictional issues before their both subject-matter and personal jurisdiction.  *See Sinochem*, 549 U.S. at 432–36.  Accordingly, the Court's clarification regarding personal jurisdiction does not disturb *Leroy*'s holding regarding venue.

But because the Court assumed that SIPC qualified as such for the purpose of analyzing venue, it is not clear how any discovery on jurisdiction could alter that analysis.  Moreover, allowing jurisdictional discovery in this case would likely raise both challenging questions of law and delicate issues of comity.  First, the Court would need to decide whether to conduct discovery pursuant to the Federal Rules of Civil Procedure or the Hague Evidence Convention.  *See* Pet'r's Mem. in Supp. of Jurisdictional Discovery at 25–34; Resp't's Opp'n to Jurisdictional Discovery at 3–16, Dkt. 32.  That determination would require weighing the "particular facts" of the case, any "sovereign interests," and the "likelihood that resort to [the Hague Convention] procedures [would] prove effective."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 (1987).  Second, the Court would need to oversee discovery regarding the structure of the foreign defendant for the purpose of uncovering any connection to a foreign sovereign based principally on records and witnesses that are in a foreign country.  That would be a sensitive task.  Finally, the Court would need to make factual findings regarding such qualitative questions as whether SIPC is an "organ" of either the PRC or its political subdivisions, 28 U.S.C. § 1603(b)(2).  *See* Pet'r's Mem. in Supp. of Jurisdictional Discovery at 14.  Those findings could plausibly have foreign relations implications beyond the facts of this case.  Against that backdrop, which makes the analysis in this opinion appear straightforward in comparison, there is a "sound prudential justification" for resolving this action on the issue of venue.  *Leroy*, 443 U.S. at 180.

## CONCLUSION

For the foregoing reasons, the respondent's Motion for Dismiss is granted, the petitioner's Motion for Jurisdictional Discovery is denied as moot, and the petitioner's Petition to

Confirm Arbitration Award is dismissed for lack of venue.  A separate order consistent with this

decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

April 22, 2022